# Exhibit A

 CT Corporation

**Service of Process Transmittal**
01/05/2017
CT Log Number 530445766

TO: Wayne R Lewis
Dr Pepper Snapple Group
5301 Legacy Dr
Plano, TX 75024-3109

**RE: Process Served in California**

**FOR:** Dr Pepper Snapple Group, Inc.  (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | JACKIE FITZHENRY-RUSSELL AND ROBIN DALE, individuals, on behalf of themselves, the general public and those similarly situated, Pltfs. vs. Dr Pepper Snapple Group, Inc., etc., et al., Dfts. |
| **DOCUMENT(S) SERVED:** | Summons, Complaint, Exhibit(s), Cover Sheet, Attachment(s) |
| **COURT/AGENCY:** | Santa Cruz County - Superior Court - Santa Cruz, CA<br>Case # 16CV03345 |
| **NATURE OF ACTION:** | Product Liability Litigation - Manufacturing Defect - Canada Dry Ginger |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Los Angeles, CA |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 01/05/2017 at 11:42 |
| **JURISDICTION SERVED :** | California |
| **APPEARANCE OR ANSWER DUE:** | Within 30 days after service |
| **ATTORNEY(S) / SENDER(S):** | Adam J. Outride<br>Gutride Safier LLP<br>100 Pine Street, Suite 1250<br>San Francisco, CA 94111<br>415-271-6469 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 01/06/2017, Expected Purge Date: 01/11/2017<br><br>Image SOP<br><br>Email Notification,  Wayne R Lewis  wayne.lewis@dpsg.com<br><br>Email Notification,  Harold Busch  harold.busch@dpsg.com<br><br>Email Notification,  Janet Barrett  janet.barrett@dpsg.com |
| **SIGNED:** | C T Corporation System |
| **ADDRESS:** | 818 West Seventh Street<br>Los Angeles, CA 90017 |
| **TELEPHONE:** | 213-337-4615 |

Page 1 of  1 / DM

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

1/5/17   1142

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

DR. PEPPER SNAPPLE GROUP, INC. and its wholly owned
subsidiary, DR. PEPPER/SEVEN UP, INC., and DOES 1-50

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

JACKIE FITZHENRY-RUSSELL AND ROBIN DALE, individuals,
on behalf of themselves, the general public and those similarly situated,

**FOR COURT USE ONLY**
*(SOLO PARA USO DE LA CORTE)*

FILED
12/28/2016 9:59:17 AM
Alex Calvo, Clerk
By Amanda Lucas
Deputy, Santa Cruz County

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is: *(El nombre y dirección de la corte es):* | CASE NUMBER: *(Número del Caso)* 16CV03345 |
|---|---|

Santa Cruz Courthouse, 701 Ocean Street, Santa Cruz, CA 95060

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Kristen Simplicio, Gutride Safier LLP, 100 Pine St., Suite 1250, San Francisco CA 94111 (415) 992-7549

| DATE: *(Fecha)* 12/28/2016 | **ALEX CALVO** Clerk, by *(Secretario)* Amanda Lucas | , Deputy *(Adjunto)* |
|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☑ on behalf of *(specify):* DR. PEPPER SNAPPLE GROUP, INC. AND ITS WHOLLY OWNED SUBSIDIARY, DR. PEPPER/SEVEN UP, INC.

under: ☑ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation)          ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership)   ☐ CCP 416.90 (authorized person)
☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

| Form Adopted for Mandatory Use Judicial Council of California SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465 www.courtinfo.ca.gov |
|---|---|---|

**GUTRIDE SAFIER LLP**
ADAM J. GUTRIDE (State Bar No. 181446)
SETH A. SAFIER (State Bar No. 197427)
MARIE A. MCCRARY (State Bar No. 262670)
KRISTEN G. SIMPLICIO (State Bar No. 263291)
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 271-6469
Facsimile:  (415) 449-6469

Attorneys for Plaintiffs

FILED
12/28/2016 9:59:17 AM
Alex Calvo, Clerk
By: Amanda Lucas
Deputy   Santa Cruz County

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF SANTA CRUZ

| | |
|---|---|
| JACKIE FITZHENRY-RUSSELL AND ROBIN DALE, individuals, on behalf of themselves, the general public and those similarly situated,<br><br>    PlaintiffS,<br><br>               v.<br><br>DR. PEPPER SNAPPLE GROUP, INC. and its wholly owned subsidiary, DR. PEPPER/SEVEN UP, INC., and DOES 1-50,<br><br>    Defendants. | CASE NO. 16CV03345<br><br>UNLIMITED CIVIL CASE<br><br>COMPLAINT FOR VIOLATION OF THE CALIFORNIA CONSUMERS LEGAL REMEDIES ACT; FALSE ADVERTISING; FRAUD, DECEIT, AND/OR MISREPRESENTATION; AND UNFAIR BUSINESS PRACTICES<br><br>JURY TRIAL DEMANDED |

-1-

**INTRODUCTION**

1.      Plaintiffs Jackie Fitzhenry-Russell and Robin Dale, by and through their counsel, brings this class action against Defendants Dr. Pepper Snapple Group, Inc., its wholly owned subsidiary, Dr. Pepper/Seven Up, Inc., and Does 1-50, inclusive, on behalf of themselves, the general public, and those similarly situated, for violations of the Consumer Legal Remedies Act and Unfair Competition Law and false advertising, fraud, deceit and/or misrepresentation.  The following allegations are based upon information and belief, including the investigation of Plaintiffs' counsel, unless stated otherwise.

2.      This case concerns Defendants' false and deceptive labeling, advertising, marketing, and sale of the soft drink, Canada Dry Ginger Ale, as "MADE FROM REAL GINGER." This representation leads consumers to reasonably believe that Defendants' soft drink is made from, and contains, real ginger root, and that consumers who drink the soft drink will receive the health benefits associated with consuming real ginger root.

3.      In truth, Defendants' soft drink is not made from real ginger root. Instead, Canada Dry Ginger Ale is made from carbonated water, high fructose corn syrup, citric acid, preservatives, and a chemical flavor compound that is manufactured to mimic the taste of ginger, but provides none of the health benefits of real ginger root.

4.      Throughout the Class Period, Defendants prominently made the claim "MADE FROM REAL GINGER" on the front label panel of all of its Canada Dry Ginger Ale cans and bottles, cultivating a wholesome and healthful image in an effort to promote the sale of its soft drink and to compete with small batch ginger ales that do use real ginger root. Consumers value the representation "MADE FROM REAL GINGER" because studies have found that real ginger root has health benefits when consumed. Defendants' Canada Dry Ginger Ale product labels did not disclose that the soft drink contains no real ginger and that the ginger flavor in the soft drink was manufactured through an artificial process to create a chemical substance that tastes like ginger root. The result is a labeling scheme that is designed to mislead consumers, and which does so effectively.

**PARTIES**

5.     Jackie Fitzhenry-Russell ("Fitzhenry-Russell") is, and at all times alleged in this Class Action Complaint was, an individual and a resident of Santa Cruz, California.

6.     Robin Dale ("Dale") is, and at all times alleged in this Class Action Complaint was, an individual and a resident of Guernville, California. (Dale and Fitzhenry-Russell shall be collectively referred to as "Plaintiffs.")

7.     Defendant Dr. Pepper Snapple Group, Inc. ("DPS") is a corporation existing under the laws of the State of Delaware, having its principal place of business in Plano, Texas.

8.     Defendant Dr. Pepper/Seven Up, Inc ("DPSU") is a corporation existing under the laws of the State of Delaware, having its principal place of business in Plano, Texas. DPSU is a wholly-owned subsidiary of DPS.

9.     The true names and capacities of Defendants sued as Does 1 through 50, inclusive, are unknown to Plaintiffs, who therefore sue said Defendants by such fictitious names pursuant to section 474 of the California Code of Civil Procedure.  Plaintiffs will seek leave of Court to amend this Class Action Complaint when said true names and capacities have been ascertained.

10.     The Parties identified in paragraphs 6 - 8 of this Class Action Complaint are collectively referred to hereafter as "Defendants."

11.     At all times herein mentioned, each of the Defendants was the agent, servant, representative, officer, director, partner or employee of the other Defendants and, in doing the things herein alleged, was acting within the scope and course of his/her/its authority as such agent, servant, representative, officer, director, partner or employee, and with the permission and consent of each Defendant.

12.     At all times herein mentioned, each of the Defendants was a member of, and engaged in, a joint venture, partnership and common enterprise, and acted within the course and scope of, and in pursuance of, said joint venture, partnership and common enterprise.

13.     At all times herein mentioned, the acts and omissions of each of the Defendants concurred and contributed to the various acts and omissions of each and all of the other Defendants in proximately causing the injuries and damages as herein alleged.

14.     At all times herein mentioned, each of the Defendants ratified each and every act

1  or omission complained of herein.

2      15.    At all times herein mentioned, each of the Defendants aided and abetted the acts
3  and omissions of each and all of the other Defendants in proximately causing the damages, and
4  other injuries, as herein alleged.

5                              **JURISDICTION AND VENUE**

6      16.    This action is brought by Plaintiffs pursuant, *inter alia*, to the California Business
7  and Professions Code, section 17200, *et seq*.  Plaintiffs and Defendants are "persons" within the
8  meaning of the California Business and Professions Code, section 17201.

9      17.    The injuries, damages and/or harm upon which this action is based, occurred or
10  arose out of activities engaged in by Defendants within, affecting, and emanating from, the State
11  of California.  Defendants regularly conduct and/or solicit business in, engage in other persistent
12  courses of conduct in, and/or derive substantial revenue from products provided to persons in the
13  State of California.

14      18.    Defendants have engaged, and continue to engage, in substantial and continuous
15  business practices in the State of California, including in the County of Santa Cruz and County of
16  Sonoma.

17      19.    In accordance with California Civil Code Section 1780(d), Fitzhenry- Russell
18  concurrently files herewith a declaration establishing that, at various times throughout the class
19  period, she purchased Canada Dry Ginger Ale in Santa Cruz, California and Capitola, California.
20  ( Fitzhenry- Russell's declaration is attached hereto as Exhibit A.)

21      20.    Plaintiffs accordingly allege that jurisdiction and venue are proper in this Court.

22                              **SUBSTANTIVE ALLEGATIONS**

23  **Defendants' Ginger Ales.**

24      21.    Defendant DPS, through its wholly-owned subsidiary DPSU, manufactures,
25  distributes, markets, advertises, and sells soft drinks in the United States under several brand
26  names, including "Canada Dry." Defendants' packaging for the following varieties of Canada
27  Dry Ginger Ale predominately, uniformly, and consistently state on the principal display panel of
28  the product labels that they are "MADE FROM REAL GINGER" (referred to collectively herein

as the "Products"):

    a) Ginger Ale;

    b) Ginger Ale – Made With Real Sugar;

    c) Diet Ginger Ale;

    d) Blackberry Ginger Ale;

    e) Cranberry Ginger Ale; and

    f) Diet Cranberry Ginger Ale.

22. The representation that the Products are "MADE FROM REAL GINGER" was uniformly communicated to Plaintiffs and every other person who purchased any of the Products in California. An exemplar of each of the Products product label is attached hereto as Exhibit B. The same or substantially similar product label has appeared on each respective product (as those shown in Exhibit B) during the entirety of the Class Period.

23. As described in detail below, Defendants' advertising and labeling of the Products, as made from "REAL GINGER" is false, misleading, and intended to induce consumers to purchase the ginger ales, at a premium price, while ultimately failing to meet consumer expectations. These representations deceive and mislead reasonable consumers into believing that the Products are made from, and contain, real ginger root.

24. In fact, the Products are not made from real ginger. The Products are made from carbonated water, high fructose corn syrup, citric acid, preservatives, and "natural flavor," which is a chemical flavoring compound that is manufactured to mimic the taste of ginger, but does not contain ginger as a reasonable consumer understands it to mean and contains none of the health benefits of real ginger root.

**Consumer Demand for Real Ginger**

25. Many American consumers are health conscious and seek wholesome, natural foods to keep a healthy diet, so they routinely take nutrition information into consideration in selecting and purchasing food items. Product package labels convey nutrition information to consumers that they use to make purchasing decisions. As noted by FDA commissioner Margaret Hamburg during an October 2009 media briefing, "[s]tudies show that consumers trust and

1  believe the nutrition facts information and that many consumers use it to help them build a

2  healthy diet." Consumers attribute a myriad of benefits to ginger and foods made from real ginger

3  root.

4         26.    Ginger root has been used for thousands of years for the treatment of numerous

5  ailments, such as colds, nausea, arthritis, migraines, and hypertension. Scientific studies have

6  confirmed that ginger has anti-inflammatory effects and aids in relaxing muscles, is effective in

7  alleviating symptoms of nausea and vomiting, has anti-carcinogenic qualities, and appears to

8  reduce cholesterol and improve lipid metabolism, thereby helping to decrease the risk of

9  cardiovascular disease and diabetes. The benefits of consuming ginger have been widely

10  publicized to consumers in the United States in recent years.

11  **Federal and State Regulations Governing Food Labeling**

12         27.    The Food and Drug Administration has defined "natural flavor" to mean "the

13  essential oil, oleoresin, essence or extractive, protein hydrolysate, distillate, or any product of

14  roasting, heating or enzymolysis, which contains the flavoring constituents derived from a spice,

15  fruit or fruit juice, vegetable or vegetable juice, edible yeast, herb, bark, bud, root, leaf or similar

16  plant material, meat, seafood, poultry, eggs, dairy products, or fermentation products thereof,

17  whose significant function in food is flavoring rather than nutritional." 21 C.F.R. 501.22(a)(3). In

18  other words, a "natural flavor" is one that contains some oil, protein, or essence from a plant or

19  animal. But it bears little resemblance to the actual plant or animal from which it is derived.

20  Rather, natural flavors are made in a laboratory by scientists who make determinations on how to

21  replicate a flavor using chemicals found in nature.

22         28.    While it may be that ginger root is used in the creation of the natural flavor, it is

23  not ginger as a reasonable consumer would understand it. Rather, the scientists that created the

24  "natural flavor" added to the Products would have isolated proteins from the cells and tissue of

25  the ginger root or extracted oils or essences from the ginger root. But because those isolated

26  compounds may not actually taste like ginger, the scientist would have then combined those

27  extractions with any number of other extractions from other plants and animals to create a

28  flavoring substance that tastes like ginger. *See* https://www.scientificamerican.com/article/what-

1  is-the-difference-be-2002-07-29/ (describing the process for creating natural flavors) (last

2  accessed October 21, 2016).

3          29.     Identical federal and California laws regulate the content of labels on packaged

4  food and require truthful, accurate information on the labels of packaged foods. The requirements

5  of the federal Food, Drug & Cosmetic Act ("FDCA"), and its labeling regulations, including

6  those set forth in 21 C.F.R. §§ 101 and 102, were adopted by the California legislature in the

7  Sherman Food Drug & Cosmetic Law (the "Sherman Law"). California Health & Safety Code §

8  110100 ("All food labeling regulations and any amendments to those regulations adopted

9  pursuant to the federal act, in effect on January 1, 1993, or adopted on or after that date shall be

10  the food labeling regulations of this state."). The federal laws and regulations discussed below are

11  applicable nationwide to all sales of packaged food products. Additionally, no state imposes

12  different requirements on the labeling of packaged food for sale in the United States.

13          30.     Under both the Sherman Law and FDCA section 403(a), food is "misbranded" if

14  "its labeling is false or misleading in any particular," or if it does not contain certain information

15  on its label or in its labeling. California Health & Safety Code § 110660; 21 U.S.C. § 343(a).

16          31.     Under the FDCA, the term *false* has its usual meaning of "untruthful," while the

17  term *misleading* is a term of art that covers labels that are technically true, but are likely to

18  deceive consumers. Under the FDCA, if any single representation on the labeling is false or

19  misleading, the entire food is misbranded, and no other statement in the labeling can cure a

20  misleading statement.

21          32.     Further in addition to its blanket adoption of federal labeling requirements,

22  California has also enacted a number of laws and regulations that adopt and incorporate specific

23  enumerated federal food laws and regulations. *See* California Health & Safety Code § 110660

24  (misbranded if label is false and misleading); California Health & Safety Code § 110705

25  (misbranded if words, statements and other information required by the Sherman Law are either

26  missing or not sufficiently conspicuous); and California Health & Safety Code § 110740

27  (misbranded if contains artificial flavoring, artificial coloring and chemical preservatives but fails

28  to adequately disclose that fact on label).

33.     Under California law, a food product that is "misbranded" cannot legally be manufactured, advertised, distributed, sold, or possessed. Misbranded products have no economic value and are legally worthless.

34.     Representing that a soft drink is made from "real ginger" is a statement of fact, and use of this phrase on the labels of packaged food is limited by the aforementioned misbranding laws and regulations.

**Defendants' Marketing and Labeling of its Ginger Ales Violates State and Federal Food Labeling Laws**

35.     The Products are unlawful, misbranded and violate the Sherman Law, California Health & Safety Code § 110660, *et seq.*, because the Products' labels include the phrase "MADE WITH REAL GINGER," even though they are not made using real ginger. Instead, the Products are flavored with a complex chemical flavoring that is manufactured to mimic the taste of ginger, and was created not by using actual ginger root, but in a laboratory through the isolation of proteins, essences, and oils from the cells and tissues of plants and animals and combining them in such a way as to mimic the taste of ginger as a consumer would recognize it. The Products are not made from, and do not contain, real ginger as a reasonable consumer would understand it to mean, nor do the products contain any of the health benefits that would be obtained if real ginger root were used or present.

36.     Defendants' marketing, advertising, and sale of the Products violates the false advertising provisions of the Sherman Law (California Health & Safety Code § 110390, *et. seq.*), including but not limited to:

    a.  Section 110390, which makes it unlawful to disseminate false or misleading food advertisements that include statements on products and product packaging or labeling or any other medium used to directly or indirectly induce the purchase of a food product;

    b.  Section 110395, which makes it unlawful to manufacture, sell, deliver, hold or offer to sell any falsely or misleadingly advertised food; and

    c.  Sections 110398 and 110400, which make it unlawful to advertise misbranded

1    food or to deliver or proffer for delivery any food that has been falsely or

2    misleadingly advertised.

3    37.    Defendants' marketing, advertising, and sale of the Products violates the

4    misbranding provisions of the Sherman Law (California Health & Safety Code § 110660, *et.*

5    *seq.*), including but not limited to:

6        d.  Section 110665 (a food is misbranded if its labeling does not conform with the

7            requirements for nutrition labeling as set forth in 21 U.S.C. Sec. 343(q));

8        e.  Section 110705 (a food is misbranded if words, statements and other information

9            required by the Sherman Law to appear food labeling is either missing or not

10           sufficiently conspicuous);

11       f.  Section 110740 (a food is misbranded if it contains artificial flavoring, artificial

12           coloring and chemical preservatives but fail to adequately disclose that fact on

13           their labeling);

14       g.  Section 110760, which makes it unlawful for any person to manufacture, sell,

15           deliver, hold, or offer for sale any food that is misbranded;

16       h.  Section 110765, which makes it unlawful for any person to misbrand any food;

17           and

18       i.  Section 110770, which makes it unlawful for any person to receive in commerce

19           any food that is misbranded or to deliver or proffer for delivery any such food.

20   38.    Defendants have violated 21 U.S.C. § 343(a), and the standards set by FDA

21   regulations, including but not limited to 21 C.F.R. §§ 101.3, 101.13, 101.14, 101.22, and 101.65

22   which have been incorporated by reference in the Sherman Law, by failing to include on their

23   product labels the nutritional information required by law.

24   **Defendants' Marketing and Labeling of its Ginger Ales is False, Deceptive and Misleading**

25   39.    A reasonable consumer would expect that the Products contain what Defendants

26   identifies them to contain on the product labels. A reasonable consumer would expect that when

27   Defendants label the Products as being "MADE WITH REAL GINGER," the soft drinks are

28   made with, and contain, real ginger as commonly understood and would not be contrary to the

1 | policies or regulations of the State of California and/or the FDA.

2 |     40.    Moreover, Defendants do not disclose on the product labels that the Products are

3 | flavored with a chemical compound that was manufactured to mimic the flavor of ginger.

4 | Consumers lack the meaningful ability to test or independently ascertain the truthfulness of

5 | Defendants' food labeling claims, especially at the point of sale. Consumers would not know the

6 | true nature of the ginger flavoring merely by reading the ingredient label; its discovery requires

7 | investigation beyond the grocery store and knowledge of food chemistry beyond that of the

8 | average consumer. An average consumer does not have the specialized knowledge necessary to

9 | ascertain that the ginger flavor in the soft drink is not from the presence of real ginger in the soft

10 | drink but instead comes from the chemical compounded added to the drink to make it taste like

11 | ginger. That, combined with Defendants' active concealment in representing the Products as

12 | being "MADE FROM REAL GINGER," and not disclosing otherwise, gave the average

13 | reasonable consumer no reason to suspect that Defendants' representations on the packages were

14 | not true, and therefore consumers had no reason to investigate the soft drinks contained real

15 | ginger. Thus, reasonable consumers relied on Defendants' representations regarding the nature of

16 | the Products. Such reliance by consumers is also eminently reasonable, since food companies are

17 | prohibited from making false or misleading statements on their products under federal law.

18 |     41.    Defendants intend and know that consumers will and do rely upon food labeling

19 | statements in making their purchasing decisions. Label claims and other forms of advertising and

20 | marketing drive product sales, particularly if placed prominently on the front of product

21 | packaging, as Defendants have done with the "MADE WITH REAL GINGER" claim.

22 | **Defendants' Website and Other Marketing Confirms That Defendants Intends to Deceive**

23 | **Consumers**

24 |     42.    Defendants' own long standing advertising and marketing materials show that

25 | Defendants intended to deceive consumers into believing the false and deceptive packaging of the

26 | Products.

27 |     43.    For example, Defendants' website located at www.canadadry.com ("Defendants'

28 | Website") touts that its soft drinks are "MADE FROM REAL GINGER." In particular, the

homepage of Defendants' Website states *three times* that the soft drinks are "MADE FROM REAL GINGER." A screenshot of Defendants' Website's homepage appears below:



http://canadadry.com (last accessed July 17, 2016).

44.    Further, Defendants' advertising campaign emphasizes that the ginger ales are "MADE WITH REAL GINGER." They additionally emphasize that the ginger ales have the health benefits associated with real ginger, including, as discussed, above relaxation. In particular, Defendants' commercial depicts a bottle of Canada Dry Ginger Ale and "Jack's Ginger Farm." The voice-over narrates, "Find your way to relaxation with the crisp soothing taste of real ginger and bubbles. Canada Dry. The root of relaxation." This commercial, which was broadcast throughout the United States, including in California, and appears on Defendants' Website, is intended to emphasize and capitalize upon Defendants' representation that the Products are "MADE FROM REAL GINGER."

-10-

45.     Defendants also permit and encourage their marketing partners, including grocery stores, to advertise, market, advertise and sell the Products as a soft drink "MADE FROM REAL GINGER." Defendants provide their marketing partners information, including posters, signs, end cap displays, etc., that specifically represent that the Products are "MADE FROM REAL GINGER." Further, in sales sheets, sales presentations, and other marketing materials, Defendants state that the Products are "MADE FROM REAL GINGER."

46.     In short, Defendants' advertising and marketing campaign confirms that Defendants intend that consumers be effectively deceived by Defendants' misrepresentations on the Products' product labels.  More specifically, Defendants intend that consumers who read the Products' product labels believe that the Products are made from, and contain, real ginger.

**Defendants' Employ Misleading Marketing Their Ginger Ales To Increase Profits and Gain a Competitive Edge**

47.     Defendants do not use real ginger in their sodas as doing so is more expensive than using flavoring compound. In recent years, numerous studies have found the presence of lead in ginger, and manufacturers and retailers of other products containing ginger root, such as cookies and candies, have been sued by the California Attorney General. Thus, the diligent sourcing and testing procedures that would be required when using real ginger to ensure the product they are selling is safe are more expensive to adopt than simply using "natural flavor." In addition, the cost of real ginger has increased in recent years, due to changes in weather in China, which produces 75% of the world's ginger. *See* http://www.producenews.com/news-dep-menu/test-featured/9579-ginger-prices-skyrocket-on-shrinking-supply (last accessed October 21, 2016).

48.     In the last decade, in response to news reports about the dangers of high fructose corn syrup and soda's role in contributing to the increased rates of obesity and diabetes in this country, many consumers are drinking less soda, and are seeking out instead, healthier beverages, like iced teas and flavored waters. *See* http://www.nytimes.com/2015/10/04/upshot/soda-industry-struggles-as-consumer-tastes-change.html?_r=0 (last accessed October 21, 2016). And while soda sales are declining, one segment of the category is on the rise – small companies and brands that emphasize their use of natural ingredients, such as Reed's, Bruce Cost, Maine Root, and Grown

1  Up Soda have entered the market. In 2014, the Specialty Food Association noted that healthy
2  beverages were growing in popularity, as was the market for more sophisticated, specialty sodas
3  containing all natural ingredients. *See* https://www.specialtyfood.com/news/article/rise-healthy-
4  beverages/ (last accessed October 21, 2016). Thus, many small craft soda companies are
5  flourishing in response to increased consumer demand for alternatives to sodas made with high
6  fructose corn syrup, artificial ingredients, and preservatives. Facing a public hostile to "Big Soda"
7  and finding its sales dwindling due to the newer, healthier brands, Defendants have an incentive
8  to emphasize the presence of ginger in the Products to appeal to consumers seeking real
9  ingredients instead of a traditional soda.

10        49.      In making the false, misleading, and deceptive representations, Defendants
11  distinguish their ginger ales from their competitors' products. Defendants knew and intended that
12  consumers would purchase, and pay a premium for, ginger ales labeled as being made from
13  "REAL GINGER," over comparable ginger ales that do not contain these representations on the
14  product labels. By using this branding strategy, Defendants are stating that their ginger ales are
15  superior to, better than, and more nutritious and healthful than other brands of ginger ales that do
16  not proclaim to be made from "REAL GINGER." For example, other brands of ginger ales that
17  do not contain the false, misleading, and deceptive representation that they are made from "REAL
18  GINGER," include brands such as Dr. Brown's and Vernors.

19        50.      Further, Defendants knew and intended their representations to help them compete
20  with small batch bottling companies that do make ginger ales using real ginger root. Defendants
21  added the "MADE WITH REAL GINGER" representation to their product labels to compete with
22  such small batch bottling companies that have increased in popularity in recent years. For
23  example, Bruce Cost Ginger Ale is made with fresh whole ginger root and represents this fact to
24  consumers in its advertising and on its product packaging.

25        51.      Because consumers pay a price premium for products made with real ginger, by
26  labeling their products as containing real ginger without actually using the expensive ingredient,
27  Defendants are able to both increase their sales and retain more in profits.

28        52.      Defendants engaged in the practices complained of herein to further their private

interests of: (i) increasing sales their ginger ales, while decreasing the sales of ginger ales that do not claim to be made from real ginger and those ginger ales that are truthfully offered as made with real ginger by Defendants' competitors, and/or (ii) commanding a higher price for their ginger ales because consumers will pay more for these soft drinks due to the consumers' demand for products containing real ginger because of the perceived benefits.

**Defendants Intend to Continue To Market Beverages as Being Made with "Real Ginger" that Do Not Contain Ginger.**

53.     Because of the growing market described in paragraph 48 and because Defendants know consumers rely on representations about the presence of real ginger in beverages, Defendants have an incentive to continue to make such false representations. In addition, other trends suggest that Defendants have no incentive to change their labeling practices.

54.     For example, ginger ale is a particularly strong growing flavor in the healthy soda category. In December 2015, a brand manager for one of Defendants' brands, Schweppes, described ginger as a "growing flavor trend." *See* http://www.prnewswire.com/news-releases/schweppes-introduces-new-dark-ginger-ale-packed-with-a-refreshing-bolder-taste-300188635.html.

55.     To capitalize on the market, Defendants may not only continue to misleading advertise the Products, but they could seek to replicate the misrepresentation in other ways. For example, DPS owns the Schweppes brand, under which it markets and sells a ginger ale in retail stores around the country. While Schweppes does not currently advertise its ginger ale as being made with real ginger, Defendants have an incentive to replicate the successful misrepresentation on that product. That same Defendant also own the soda brand Stewart's, under which a ginger ale was previously sold. While Defendant only sells other kinds of Stewart's soda today, the booming market for ginger ales creates an incentive to do so, in which case Defendant could decide to falsely sell as containing real ginger.

56.     Defendants are also likely seeking to diversity their beverage portfolio in response to the changing market, the booming craft soda market, and the decreased demand for traditional sodas from big manufacturers. Recently, Coca-Cola Company purchased the small soda brands of

Blue Sky and Hansen's, which both make ginger ales. Defendants, who have in the past acquired

smaller companies that compete with their bigger brands (e.g. acquiring the fruit juice company

Nantucket Nectar despite selling a much larger fruit juice line under the Snapple brand name),

will likely desire to do the same to maintain their competitive edge and ensure they are offering

ginger ales at all segments of the market.

**PLAINTIFFS' EXPERIENCES**

<u>**Plaintiff Fitzhenry-Russell**</u>

57.    Fitzhenry-Russell has purchased several cases of the Products from Safeway,

located in Santa Cruz, CA, and a Lucky, located in Capitola, CA. Over the last two years,

Fitzhenry-Russell purchased approximately one case each year. For the two years prior to that,

she purchased  about one case per month. She typically purchased the original flavor of Canada

Dry ginger ale made by Defendants.

58.    Fitzhenry-Russell made each of her purchases of the Products after reading and

relying on the truthfulness of Defendants' product labels that promised that the Products were

"MADE WITH REAL GINGER." In addition, on several occasions over the past few years,

Fitzhenry-Russell saw the TV advertisement described in paragraph 44, which reinforced her

belief that Defendants' products actually contained ginger root and would provide the health

benefits of ginger.

59.    At the time of each purchase, Fitzhenry-Russell saw, read and relied on the

"MADE WITH REAL GINGER" statement on the front of the package of the ginger ale. She was

attracted to the Products because, when given a choice, she prefers to consume soft drinks made

with real ginger for health benefits, namely stomach calming or relaxation. But on each of the

Products purchased by Fitzhenry-Russell, Defendants misrepresented the contents of the product

as being "MADE WITH REAL GINGER" when they were not. Fitzhenry-Russell believed that

the statement meant that each of the Products that she purchased was made with, and contained,

real ginger. She reasonably relied on the labels and advertising Defendants placed on the primary

display panel of the product.

60.    At the time of each purchase of the Products, Fitzhenry-Russell did not know that

-14-

1 | the Products that she purchased were not made with real ginger, but instead were made with a
2 | chemical flavoring compound derived from ginger and manufactured to mimic the flavor of
3 | ginger and which does not contain any of the health benefits of real ginger. As a result of
4 | Defendants' misrepresentations and omissions, the Products have no, or, at, a minimum, a much
5 | lower, value to Fitzhenry-Russell.

6 | 61.    Fitzhenry-Russell not only purchased the Products because their label said that
7 | they were "MADE WITH REAL GINGER," but she also paid more money for the ginger ales
8 | than she would have paid for other a similar soft drink that was not labeled as containing real
9 | ginger.

10 | 62.    Had Defendants not misrepresented (by omission and commission) the true nature
11 | of the Products, Fitzhenry-Russell would not have purchased them or, at a very minimum, she
12 | would have paid less for the soft drink.

13 | **Plaintiff Dale**

14 | 63.    Dale has purchased a number of bottles of the Products from Safeway, located in
15 | Guernville, California. Over the last four years, Dale purchased two liter bottles regularly,
16 | typically one bottle every two or three months. She typically purchased the original flavor of
17 | Canada Dry ginger ale made by Defendants.

18 | 64.    Dale made each of her purchases of the Products after reading and relying on the
19 | truthfulness of Defendants' product labels that promised that the Products were "MADE WITH
20 | REAL GINGER."

21 | 65.    At the time of each purchase, Dale saw, read and relied on the "MADE WITH
22 | REAL GINGER" statement on the front of the package of the ginger ale. She was attracted to the
23 | Products because, when given a choice, she prefers to consume soft drinks made with real ginger
24 | for health benefits, namely stomach calming or relaxation. But on each of the Products purchased
25 | by Dale, Defendants misrepresented the contents of the product as being "MADE WITH REAL
26 | GINGER" when they were not. Dale believed that the statement meant that each of the Products
27 | that she purchased was made with, and contained, real ginger. She reasonably relied on the labels
28 | and advertising Defendants placed on the primary display panel of the product.

66.     At the time of each purchase of the Products, Dale did not know that the Products that she purchased were not made with real ginger, but instead were made with a chemical flavoring compound derived from ginger and manufactured to mimic the flavor of ginger and which does not contain any of the health benefits of real ginger. As a result of Defendants' misrepresentations and omissions, the Products have no, or, at, a minimum, a much lower, value to Dale.

67.     Dale not only purchased the Products because their label said that they were "MADE WITH REAL GINGER," but she also paid more money for the ginger ales than she would have paid for other a similar soft drink that was not labeled as containing real ginger.

68.     Had Defendants not misrepresented (by omission and commission) the true nature of the Products, Dale would not have purchased them or, at a very minimum, she would have paid less for the soft drink.

69.     Plaintiffs and members of the Class have been economically damaged by their purchase of the Products because the advertising for the Products was and is untrue and/or misleading under California law; therefore, the Products are worth less than what Plaintiffs and members of the Class paid for them and/or Plaintiffs and members of the Class did not receive what they reasonably intended to receive.

70.     As a direct and proximate result of Defendants' unfair and wrongful conduct, as set forth herein, Plaintiffs and the class members: (1) were misled into purchasing the Products; (2) received a product that failed to meet their reasonable expectations and Defendants' promises; (3) paid a premium sum of money for a product that was not as represented and, thus, were deprived of the benefit of the bargain because the purchased ginger ale had less value than what was represented by Defendants; and (4) ingested a substance that was other than what was represented by Defendants and that Plaintiffs and class members did not expect.

71.     Plaintiffs continue to desire to purchase ginger ale made with real ginger root, including brands marketed and sold by Defendants. Both Fitzhenry-Russell and Dale both regularly visit stores such as Safeway where Defendants' Products and other ginger ale beverages are sold. Because of changes in the market, neither Fitzhenry nor Dale know at any given time,

1    which brands are owned by Defendants and whether their representations as to the presence of

2    ginger are truthful. Thus, Plaintiffs are likely to be repeatedly presented with false or misleading

3    information when shopping for ginger ale, making it difficult to make informed purchasing

4    decisions. Should Defendants begin to market and sell a new brand of ginger ale, Plaintiffs could

5    be at risk for buying another one of Defendants' products in reliance on the same or similar

6    misrepresentation.

7                              **CLASS ALLEGATIONS**

8        72.    Plaintiffs bring this action against Defendants, on behalf of herself and all others

9    similarly situated, as a class action pursuant to section 1781 of the California Civil Code.

10   Plaintiffs seek to represent the following groups of similarly situated persons, defined as follows:

11              All persons who, between December 23, 2012 and the present, purchased any
                of Defendants' the Products.

12       73.    This action has been brought and may properly be maintained as a class action

13   against Defendants because there is a well-defined community of interest in the litigation and the

14   proposed class is easily ascertainable.

15       74.    Numerosity: Plaintiffs do not know the exact size the Class, but they are estimated

16   that it is composed of more than 100 persons. The persons in the Class are so numerous that the

17   joinder of all such persons is impracticable and the disposition of their claims in a class action

18   rather than in individual actions will benefit the parties and the courts.

19       75.    Common Questions Predominate: This action involves common questions of law

20   and fact to the potential classes because each class member's claim derives from the deceptive,

21   unlawful and/or unfair statements and omissions that led consumers to believe that the  Products

22   were made with, and contained, real ginger. The common questions of law and fact predominate

23   over individual questions, as proof of a common or single set of facts will establish the right of

24   each member of the Class to recover.  The questions of law and fact common to the Class are:

25              a)    whether the Products are "MADE WITH REAL GINGER;"

26              b)    whether Defendants unfairly, unlawfully and/or deceptively misrepresented

27                    that the Products are "MADE WITH REAL GINGER;"

28              c)    whether the use of the phrase "MADE WITH REAL GINGER" on the

                                        -17-

1    primary display panel of the Products violated Federal and/or California

2    state law;

3    d)    whether the advertising of the product as Made with Real Ginger causes it

4    to command a premium in the market as compared with similar products

5    that do not make such a claim;

6    e)    whether Defendants' advertising and marketing regarding the Products sold

7    to the class members was likely to deceive the class members and/or was

8    unfair;

9    f)    Whether a "MADE WITH REAL GINGER" claim on product packaging

10    and advertising is material to a reasonable consumer;

11    g)    whether Defendants engaged in the alleged conduct knowingly, recklessly,

12    or negligently;

13    h)    the amount of profits and revenues earned by Defendants as a result of the

14    conduct;

15    i)    whether class members are entitled to restitution, injunctive and other

16    equitable relief and, if so, what is the nature (and amount) of such relief;

17    and

18    j)    whether class members are entitled to payment of actual, incidental, .

19    consequential, exemplary and/or statutory damages plus interest thereon,

20    and if so, what is the nature of such relief.

21    76.    Typicality: Fitzhenry-Russell's claims are typical of the Class because she

22    purchased at least eight cases of the Products – in reliance on Defendants' misrepresentations and

23    omissions that they were "MADE WITH REAL GINGER." Dale's claims are typical of the Class

24    because she purchased at least twelve two liter bottles of the Products – in reliance on

25    Defendants' misrepresentations and omissions that they were "MADE WITH REAL GINGER."

26    Thus, Plaintiffs and the class members sustained the same injuries and damages arising out of

27    Defendants' conduct in violation of the law.  The injuries and damages of each class member

28    were caused directly by Defendants' wrongful conduct in violation of law as alleged.

77. Adequacy: Plaintiffs will fairly and adequately protect the interests of all class members because it is in their best interests to prosecute the claims alleged herein to obtain full compensation due to them for the unfair and illegal conduct of which they complain. Plaintiffs also have no interests that are in conflict with, or antagonistic to, the interests of class members. Plaintiffs have retained highly competent and experienced class action attorneys to represent them interests and that of the classes. By prevailing on their own claims, Plaintiffs will establish Defendants' liability to all class members. Plaintiffs and their counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiffs and counsel are aware of their fiduciary responsibilities to the class members and are determined to diligently discharge those duties by vigorously seeking the maximum possible recovery for class members.

78. Superiority: There is no plain, speedy, or adequate remedy other than by maintenance of this class action. The prosecution of individual remedies by members of the classes will tend to establish inconsistent standards of conduct for Defendants and result in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would engender. Furthermore, as the damages suffered by each individual member of the classes may be relatively small, the expenses and burden of individual litigation would make it difficult or impossible for individual members of the class to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action.

79. Plaintiffs are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

## CAUSES OF ACTION

Plaintiffs do not plead, and hereby disclaims, causes of action under the FDCA and regulations promulgated thereunder by the FDA. Plaintiffs rely on the FDCA and FDA regulations only to the extent such laws and regulations have been separately enacted as state law

-19-

1    or regulation or provide a predicate basis of liability under the state and common laws cited in the

2    following causes of action.

### PLAINTIFFS' FIRST CAUSE OF ACTION

**(Violation of the Consumers Legal Remedies Act (the "CLRA"), California Civil Code §**
**1750, *et seq.*)**
**On Behalf of Plaintiffs and the Class**

3

4

5

6        80.      Plaintiffs reallege and incorporate the paragraphs of this Class Action Complaint

7    as if set forth herein.

8        81.      Defendants' actions, representations and conduct have violated, and continue to

9    violate the CLRA, because they extend to transactions that are intended to result, or which have

10   resulted, in the sale or lease of goods or services to consumers.

11       82.      Plaintiffs and other class members are "consumers" as that term is defined by the

12   CLRA in California Civil Code § 1761(d).

13       83.      The Products that Plaintiffs (and other similarly situated class members) purchased

14   from Defendants were "goods" within the meaning of California Civil Code § 1761(a).

15       84.      Defendants' acts and practices, set forth in this Class Action Complain, led

16   customers to falsely believe that the Products were made with, and contained, real ginger.  By

17   engaging in the actions, representations and conduct set forth in this Class Action Complaint,

18   Defendants have violated, and continues to violate, § 1770(a)(2), § 1770(a)(5), § 1770(a)(7),

19   § 1770(a)(8), and § 1770(a)(9) of the CLRA. In violation of California Civil Code §1770(a)(2),

20   Defendants' acts and practices constitute improper representations regarding the source,

21   sponsorship, approval, or certification of the goods they sold. In violation of California Civil

22   Code §1770(a)(5), Defendants' acts and practices constitute improper representations that the

23   goods they sell have sponsorship, approval, characteristics, ingredients, uses, benefits, or

24   quantities, which they do not have. In violation of California Civil Code §1770(a)(7), Defendants'

25   acts and practices constitute improper representations that the goods they sell are of a particular

26   standard, quality, or grade, when they are of another. In violation of California Civil Code

27   §1770(a)(8), Defendants have disparaged the goods, services, or business of another by false or

28   misleading representation of fact.  In violation of California Civil Code §1770(a)(9), Defendants

1  have advertised goods or services with intent not to sell them as advertised. Finally, regarding

2  California Civil Code §1770(a)(8), Defendants falsely or deceptively market and advertise that,

3  unlike other soft drink manufacturers, it sells ginger ales that are made from "REAL GINGER."

4      85.    Plaintiffs request that this Court enjoin Defendants from continuing to employ the

5  unlawful methods, acts and practices alleged herein pursuant to California Civil Code

6  § 1780(a)(2).  If Defendants are not restrained from engaging in these types of practices in the

7  future, Plaintiffs and the other members of the Class will continue to suffer harm.

8      86.    **CLRA § 1782 NOTICE. Irrespective of any representations to the contrary in**

9  **this Class Action Complaint, Plaintiffs specifically disclaim, at this time, any request for**

10 **damages under any provision of the CLRA.** Plaintiffs, however, hereby provides Defendants

11 with notice and demand that within thirty (30) days from that date, Defendants correct, repair,

12 replace or otherwise rectify the unlawful, unfair, false and/or deceptive practices complained of

13 herein. Defendants' failure to do so will result in Plaintiffs amending this Class Action Complaint

14 to seek, pursuant to California Civil Code § 1780(a)(3), on behalf of themselves and those

15 similarly situated Class Members, compensatory damages, punitive damages and restitution of

16 any ill-gotten gains due to Defendants' acts and practices.

17     87.    Plaintiffs also requests that this Court award their costs and reasonable attorneys'

18 fees pursuant to California Civil Code § 1780(d).

19                  **PLAINTIFFS' SECOND CAUSE OF ACTION**
20     **(False Advertising, Business and Professions Code § 17500, *et seq*. ("FAL"))**
                        **On Behalf Plaintiffs and the Class**

21     88.    Plaintiffs reallege and incorporate by reference the paragraphs of this Class Action

22 Complaint as if set forth herein.

23     89.    Beginning at an exact date unknown to Plaintiffs, but within three (3) years

24 preceding the filing of the Class Action Complaint, Defendants made untrue, false, deceptive

25 and/or misleading statements in connection with the advertising and marketing of the Products.

26     90.    Defendants made representations and statements (by omission and commission)

27 that led reasonable customers to believe that the Products that they were purchasing were made

28 from, and contained, real ginger root.

91.     Plaintiffs and those similarly situated relied to their detriment on Defendants' false, misleading and deceptive advertising and marketing practices, including each of the misrepresentations and omissions set forth in paragraphs 22-24, 35-46, and 57-68 above.  Had Plaintiffs and those similarly situated been adequately informed and not intentionally deceived by Defendants, they would have acted differently by, without limitation, refraining from purchasing Defendants' ginger ales or paying less for them.

92.     Defendants' acts and omissions are likely to deceive the general public.

93.     Defendants engaged in these false, misleading and deceptive advertising and marketing practices to increase its profits.  Accordingly, Defendants have engaged in false advertising, as defined and prohibited by section 17500, *et seq.* of the California Business and Professions Code.

94.     The aforementioned practices, which Defendants used, and continue to use, to their significant financial gain, also constitutes unlawful competition and provides an unlawful advantage over Defendants' competitors as well as injury to the general public.

95.     As a direct and proximate result of such actions, Plaintiffs and the other class members have suffered, and continue to suffer, injury in fact and have lost money and/or property as a result of such false, deceptive and misleading advertising in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court.

96.     Plaintiffs seek, on behalf of themselves and those similarly situated, full restitution of monies, as necessary and according to proof, to restore any and all monies acquired by Defendants from Plaintiffs, the general public, or those similarly situated by means of the false, misleading and deceptive advertising and marketing practices complained of herein, plus interest thereon.

97.     Plaintiffs seek, on behalf of themselves and those similarly situated, a declaration that the above-described practices constitute false, misleading and deceptive advertising.

98.     Plaintiffs seek, on behalf of themselves and those similarly situated, an injunction to prohibit Defendants from continuing to engage in the false, misleading and deceptive advertising and marketing practices complained of herein. Such misconduct by Defendants,

1  unless and until enjoined and restrained by order of this Court, will continue to cause injury in

2  fact to the general public and the loss of money and property in that Defendants will continue to

3  violate the laws of California, unless specifically ordered to comply with the same. This

4  expectation of future violations will require current and future consumers to repeatedly and

5  continuously seek legal redress in order to recover monies paid to Defendants to which they are

6  not entitled.  Plaintiffs, those similarly situated and/or other consumers nationwide have no other

7  adequate remedy at law to ensure future compliance with the California Business and Professions

8  Code alleged to have been violated herein.

9              **PLAINTIFFS' THIRD CAUSE OF ACTION**
              **(Fraud, Deceit and/or Misrepresentation)**
10             **On Behalf of Plaintiffs and the Class**

11        99.    Plaintiffs reallege and incorporate by reference the paragraphs of this Class Action

12  Complaint as if set forth herein.

13        100.   Throughout the last four years, at weekly and monthly intervals, Defendants

14  fraudulently and deceptively informed Plaintiffs that the Products were "MADE WITH REAL

15  GINGER." Further, at weekly and monthly intervals over the last four years, Defendants failed to

16  inform Plaintiffs that the Products were not made with real ginger but instead were made from a

17  chemical compound manufactured to mimic the flavor of ginger.

18        101.   These misrepresentations and omissions were known exclusively to, and actively

19  concealed by, Defendants, not reasonably known to Plaintiffs, and material at the time they were

20  made. Defendants knew the composition of the Products, and they knew that the soft drinks were

21  flavored with a chemical compound intended to mimic the taste of ginger. Defendants'

22  misrepresentations and omissions concerned material facts that were essential to the analysis

23  undertaken by Plaintiffs as to whether to purchase Defendants' ginger ales.  In misleading

24  Plaintiffs and not so informing Plaintiffs, Defendants breached their duty to her. Defendants also

25  gained financially from, and as a result of, their breach.

26        102.   Plaintiffs and those similarly situated relied to their detriment on Defendants'

27  misrepresentations and fraudulent omissions. Had Plaintiffs and those similarly situated been

28  adequately informed and not intentionally deceived by Defendants, they would have acted

1  differently by, without limitation: (i) declining to purchase the Products, (ii) purchasing less of

2  them, or (iii) paying less for the Products.

3      103.    By and through such fraud, deceit, misrepresentations and/or omissions,

4  Defendants intended to induce Plaintiffs and those similarly situated to alter their position to their

5  detriment. Specifically, Defendants fraudulently and deceptively induced Plaintiffs and those

6  similarly situated to, without limitation, to purchase the Products.

7      104.    Plaintiffs and those similarly situated justifiably and reasonably relied on

8  Defendants' misrepresentations and omissions, and, accordingly, were damaged by Defendants.

9      105.    As a direct and proximate result of Defendants' misrepresentations and/or

10  omissions, Plaintiffs and those similarly situated have suffered damages, including, without

11  limitation, the amount they paid for the Products.

12      106.    Defendants' conduct as described herein was wilful and malicious and was

13  designed to maximize Defendants' profits even though Defendants knew that it would cause loss

14  and harm to Plaintiffs and those similarly situated.

15  **PLAINTIFFS' FOURTH CAUSE OF ACTION**

16  **(Unlawful, unfair, and fraudulent trade practices violation of Business and Professions Code § 17200, *et seq.*)**

17  **On Behalf of Plaintiffs and the Class**

18      107.    Plaintiffs reallege and incorporate by reference the paragraphs of this Class Action

19  Complaint as if set forth herein.

20      108.    Within four (4) years preceding the filing of this lawsuit, and at all times

21  mentioned herein, Defendants have engaged, and continues to engage, in unlawful, unfair, and

22  fraudulent trade practices in California by engaging in the unlawful, unfair, and fraudulent

23  business practices outlined in this complaint.

24      109.    In particular, Defendants have engaged, and continues to engage, in unlawful

25  practices by, without limitation, violating the following state and federal laws: (i) the CLRA as

26  described herein; (ii) the FAL as described herein; (iii) the advertising provisions of the Sherman

27  Law (Article 3), including without limitation, California Health & Safety Code §§ 110390,

28  110395, 110398 and 110400; (iv) the misbranded food provisions of the Sherman Law (Article

-24-

6), including without limitation, California Health & Safety Code §§ 110660, 110665, 110705, 110740, 110760, 110765, and 110770; and (v) and federal laws regulating the advertising and branding of food in 21 U.S.C. § 343(a), *et seq.* and FDA regulations, including but not limited to 21 C.F.R. 101.3, 101.4, 101.13, 101.14, and 101.22, which are incorporated into the Sherman Law (California Health & Safety Code §§ 110100(a), 110380, and 110505).

110.    In particular, Defendants have engaged, and continues to engage, in unfair and fraudulent practices by, without limitation, the following: (i) misrepresenting that the Products are made from, and contain, real ginger;" and (ii) failing to inform Plaintiff, and those similarly situated, that the Products that they purchased are made with a compound manufactured to mimic the flavor of ginger.

111.    Plaintiffs and those similarly situated relied to their detriment on Defendants' unlawful, unfair, and fraudulent business practices. Had Plaintiffs and those similarly situated been adequately informed and not deceived by Defendants, they would have acted differently by, without limitation: (i) declining to purchase the Products, (ii) purchasing less of the Products, or (iii) paying less for the Products.

112.    Defendants' acts and omissions are likely to deceive the general public.

113.    Defendants engaged in these deceptive and unlawful practices to increase their profits. Accordingly, Defendants have engaged in unlawful trade practices, as defined and prohibited by section 17200, *et seq.* of the California Business and Professions Code.

114.    The aforementioned practices, which Defendants have used to its significant financial gain, also constitute unlawful competition and provide an unlawful advantage over Defendants' competitors as well as injury to the general public.

115.    As a direct and proximate result of such actions, Plaintiffs and the other class members, have suffered and continue to suffer injury in fact and have lost money and/or property as a result of such deceptive and/or unlawful trade practices and unfair competition in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court. Among other things, Plaintiffs and the class members lost the amount they paid for the Products.

116.    As a direct and proximate result of such actions, Defendants have enjoyed, and

1  continues to enjoy, significant financial gain in an amount which will be proven at trial, but which

2  is in excess of the jurisdictional minimum of this Court.

3      117.   Plaintiffs seek, on behalf of themselves and those similarly situated, full restitution

4  of monies, as necessary and according to proof, to restore any and all monies acquired by

5  Defendants from Plaintiffs, the general public, or those similarly situated by means of the

6  deceptive and/or unlawful trade practices complained of herein, plus interest thereon.

7      118.   Plaintiffs seeks, on behalf of those similarly situated, a declaration that the above-

8  described trade practices are fraudulent, unfair, and/or unlawful.

9      119.   Plaintiffs seeks, on behalf of those similarly situated, an injunction to prohibit

10  Defendants from continuing to engage in the deceptive and/or unlawful trade practices

11  complained of herein.  Such misconduct by Defendants, unless and until enjoined and restrained

12  by order of this Court, will continue to cause injury in fact to the general public and the loss of

13  money and property in that Defendants will continue to violate the laws of California, unless

14  specifically ordered to comply with the same.  This expectation of future violations will require

15  current and future consumers to repeatedly and continuously seek legal redress in order to recover

16  monies paid to Defendants to which they were not entitled.  Plaintiff, those similarly situated

17  and/or other consumers nationwide have no other adequate remedy at law to ensure future

18  compliance with the California Business and Professions Code alleged to have been violated

19  herein.

20                              **PRAYER FOR RELIEF**

21      WHEREFORE, Plaintiffs prays for judgment as follows:

22  A.   On Cause of Action Number 1 (for violation of the Consumers Legal Remedies

23       Act), 2 (for violation of the False Advertising Law) and 4 (for violation of the

24       Unfair Competition Law) against Defendants and in favor of Plaintiffs and the

25       other members of the Class as follows:

26       1.   Declaring that Defendants' use of the phrase "Made with Real Ginger" on

27            the Products is unlawful and likely to deceive reasonable consumers;

28       2.   Enjoining Defendants, directly or through any corporation, partnership,

1    subsidiary, division, trade name, or other device, in connection with the

2    manufacturing, labeling, packaging, advertising, promotion, offering for

3    sale, sale, or distribution of any ginger beverage from making a "Made

4    with Real Ginger" claim unless the product contains real ginger;

5    3.    Enjoining Defendants, directly or through any corporation, partnership,

6    subsidiary, division, trade name, or other device, in connection with the

7    manufacturing, labeling, packaging, advertising, promotion, offering for

8    sale, sale, or distribution of any ginger beverage from making other claims

9    about the inclusion of real ginger in the product (such as "contains real

10   ginger") unless the representation is non-misleading; and

11   4.    Enjoining Defendants, directly or through any corporation, partnership,

12   subsidiary, division, or other device, in connection with the manufacturing,

13   labeling, packaging, advertising, promotion, offering for sale, sale, or

14   distribution of any soda to not provide to others the means and

15   instrumentalities with which to make any representation prohibited by the

16   above. For the purposes of this paragraph, "means and instrumentalities"

17   means any information, including, but not necessarily limited to, any

18   advertising, labeling, or promotional, sales training, or purported

19   substantiation materials, for use by trade customers in their marketing of

20   such product or service.

21   B.    On Causes of Action Numbers 2 (for violation of the False Advertising Law) and 4

22   (for violation of the Unfair Competition Law) against Defendants and in

23   favor of Plaintiffs and the other members of the Class:

24   1.    For restitution pursuant to, without limitation, the California Business &

25   Professions Code §§ 17200, *et seq.* and 17500, *et seq.*;

26   2.    For injunctive relief pursuant to, without limitation, the California Business

27   & Professions Code §§ 17200, *et seq.* and 17500, *et seq.*; and

28   3.    For a declaration that Defendants' above-described trade practices are

-27-

1    fraudulent and/or unlawful.

2    C.    On Cause of Action Number 3 (for fraud, deceit and/or misrepresentation) against

3          Defendants and in favor of Plaintiffs and the other members of the Class:

4          1.    An award of compensatory damages, the amount of which is to be

5                determined at trial; and

6          2.    An award of punitive damages, the amount of which is to be determined at

7                trial.

8    D.    On all Causes of Action against Defendants and in favor of Plaintiffs and the other

9          members of the Class:

10         1.    For reasonable attorneys' fees according to proof pursuant to, without

11               limitation, the California Legal Remedies Act and California Code of Civil

12               Procedure § 1021.5;

13         2.    For costs of suit incurred; and

14         3.    For such further relief as this Court may deem just and proper.

15                            **JURY TRIAL DEMANDED**

16   Plaintiffs hereby demand a trial by jury.

17   Dated: December 23, 2016                    **GUTRIDE SAFIER LLP**

18

19

20

21

22                                              Adam J. Gutride, Esq.
                                                Seth A. Safier, Esq.
23                                              Marie A. McCrary, Esq.
                                                Kristen G. Simplicio, Esq.
24                                              100 Pine Street, Suite 1250
                                                San Francisco, CA 94111
25
                                                **Attorneys for Plaintiffs**
26

27

28

# EXHIBIT A

## EXHIBIT A

I, Jackie Fitzhenry-Russell, declare:

1.     I am the Plaintiff in this action.   If called upon to testify, I could and would competently testify to the matters contained herein based upon my personal knowledge.

2.     I submit this Declaration pursuant to California Code of Civil Procedure section 2215.5 and California Civil Code section 1780(d).

3.     As set forth in my complaint, over the last four years, I purchased a number of cases of Canada Dry Ginger Ale from Safeway store in Santa Cruz, California and a Lucky store in Capitola, California.

4.     I later learned the Canada Dry Ginger Ale I purchased was not made with real ginger.

I declare under penalty of perjury under the laws of California that the foregoing is true and correct.

Executed this __22_ day of December 2016, in Santa Cruz, California.

Jackie Fitzhenry-Russell,
Jackie Fitzhenry-Russell

# EXHIBIT B



78000152463.jpg (600x600)





12/22/2016 • s0426972_sc7 (380x380)



12/22/2016      128654.jpg (460x284)



12/22/2016          ·          37bfe94c-bd64-426b-a5e2-5fb28c4d722f_1.e150eb3537b2c4384e652e3a1d550343.jpeg (3432x3432)





Canada-Dry-Cranberry-Ginger-Ale-Diet.jpg (235x459)







CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| ADAM J. GUTRIDE (#181116) SETH A. SAFIER (#197427)<br>MARIE A. MCCRARY (# 262670)  KRISTEN G. SIMPLICIO (# 263291)<br>Gutride Safier LLP 100 Pine Street, Suite 1250, San Francisco, CA 94111<br>TELEPHONE NO.: (415)271-6469        FAX NO. (415) 449-6469<br>ATTORNEY FOR (Name): PLAINTIFF JACKIE FITZHENRY-RUSSELL | FILED<br>12/28/2016 9:59:17 AM<br>Alex Calvo, Clerk<br>By: Armada Lucas<br>Deputy, Santa Cruz County |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  Santa Cruz
STREET ADDRESS: 701 Ocean Street
MAILING ADDRESS:
CITY AND ZIP CODE: Santa Cruz, CA 95060
BRANCH NAME  Santa Cruz Courthouse

CASE NAME:
Fitzhenry-Russell v. Dr. Pepper Snapple Group, et al

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER<br>16CV03345 |
|---|---|---|---|---|
| ☑ Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | ☐ Limited<br>(Amount<br>demanded is<br>$25,000 or less) | ☐ Counter  ☐ Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | | JUDGE:<br>DEPT: |

Items 1–6 below must be completed (see instructions on page 2).

1. Check one box below for the case type that best describes this case:

| Auto Tort | Contract | Provisionally Complex Civil Litigation<br>(Cal. Rules of Court, rules 3.400–3.403) |
|---|---|---|
| ☐ Auto (22)<br>☐ Uninsured motorist (46)<br>Other PI/PD/WD (Personal Injury/Property<br>Damage/Wrongful Death) Tort<br>☐ Asbestos (04)<br>☐ Product liability (24)<br>☐ Medical malpractice (45)<br>☐ Other PI/PD/WD (23)<br>Non-PI/PD/WD (Other) Tort<br>☐ Business tort/unfair business practice (07)<br>☐ Civil rights (08)<br>☐ Defamation (13)<br>☐ Fraud (16)<br>☐ Intellectual property (19)<br>☐ Professional negligence (25)<br>☐ Other non-PI/PD/WD tort (35)<br>Employment<br>☐ Wrongful termination (36)<br>☐ Other employment (15) | ☐ Breach of contract/warranty (06)<br>☐ Rule 3.740 collections (09)<br>☐ Other collections (09)<br>☐ Insurance coverage (18)<br>☐ Other contract (37)<br>Real Property<br>☐ Eminent domain/Inverse<br>condemnation (14)<br>☐ Wrongful eviction (33)<br>☐ Other real property (26)<br>Unlawful Detainer<br>☐ Commercial (31)<br>☐ Residential (32)<br>☐ Drugs (38)<br>Judicial Review<br>☐ Asset forfeiture (05)<br>☐ Petition re: arbitration award (11)<br>☐ Writ of mandate (02)<br>☐ Other judicial review (39) | ☐ Antitrust/Trade regulation (03)<br>☐ Construction defect (10)<br>☐ Mass tort (40)<br>☐ Securities litigation (28)<br>☐ Environmental/Toxic tort (30)<br>☐ Insurance coverage claims arising from the<br>above listed provisionally complex case<br>types (41)<br>Enforcement of Judgment<br>☐ Enforcement of judgment (20)<br>Miscellaneous Civil Complaint<br>☐ RICO (27)<br>☑ Other complaint (not specified above) (42)<br>Miscellaneous Civil Petition<br>☐ Partnership and corporate governance (21)<br>☐ Other petition (not specified above) (43) |

2. This case ☐ is  ☑ is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☐ Substantial amount of documentary evidence
   d. ☐ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a. ☑ monetary  b. ☑ nonmonetary; declaratory or injunctive relief  c. ☐ punitive
4. Number of causes of action (specify): four
5. This case ☑ is  ☐ is not  a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date:
December 23, 2016
_____
(TYPE OR PRINT NAME)                                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courtinfo.ca.gov

| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA CRUZ**<br>Santa Cruz Branch<br>701 Ocean Street, Room 110<br>Santa Cruz, CA 95060 | **FILED**<br>12/28/2016<br>Alex Calvo, Clerk<br>By: Amanda Lucas<br>Deputy, Santa Cruz County |
|---|---|
| Jackie Fitzhenry-Russell, et al<br><br>VS<br><br>Dr. Pepper Snapple Group, Inc., et al | |
| **CASE MANAGEMENT INFORMATION AND SETTING** | **CASE NO:**<br>16CV03345 |

This case is in Santa Cruz County's Case Management Program. It is the duty of each party to be familiar with the California Rules of Court and the date, time and place of the first case management conference.

This notice must be served with the summons on all defendants and cross-defendants. Notice of any other pending case management conference must be served on subsequently named defendants and cross-defendants.

Attention Defendant: You have 30 days after the summons is served on you to file a written response to the complaint with the court. The date below does not extend the time to file a response. See the summons for instructions for responding to the summons and complaint. A written response may not be necessary in all cases. To make this determination it is important to seek legal advice and information. See the referrals at the bottom of this form.

---

**The first Case Management Conference hearing date is:**

**Date:  04/28/2017**          **Time:  8:30**          **Santa Cruz Department 5**

Address of the Court: 701 Ocean Street, Santa Cruz, California

---

*Telephonic court appearances are provided through CourtCall to the court. To make arrangements to appear at the Case Management Conference by telephone, please call the program administrator for CourtCall at (888) 882-6878 at least five (5) court days prior to the hearing. DO NOT CALL THE COURT.*

If you are in need of legal advice or legal information on how to proceed in your case you may call or visit the following resources:

1. Santa Cruz County Bar Association Lawyer Referral Service: Phone 831-425-4755 (Fee based service).
2. Santa Cruz County Law Library: 701 Ocean Street, Room 70 Basement, Santa Cruz, CA 95060 Phone 831-454-2205, www.lawlibrary.org, for hours and other resources.
3. Santa Cruz Superior Court Self Help Center: 1 Second Street, Room 301, Watsonville, CA 95076 Phone 831-786-7200, option 4, www.santacruzcourt.org, for hours and workshop options.
4. Watsonville Law Center: 831-722-2845.