BAKER BOTTS L.L.P.
Jonathan A. Shapiro (SBN# 257199)
jonathan.shapiro@bakerbotts.com
101 California Street, Suite 3600
San Francisco, CA 94111
Telephone: (415) 291-6204
Facsimile: (415) 291-6304

Van H. Beckwith (*pro hac vice*)
van.beckwith@bakerbotts.com
Jessica E. Underwood (*pro hac vice*)
jessica.underwood@bakerbotts.com
2001 Ross Avenue, Suite 600
Dallas, TX 75201-2980
Telephone: (214) 953-6500
Facsimile: (214) 953-6503

Attorneys for Defendants
DR PEPPER SNAPPLE GROUP, INC. AND
DR PEPPER/SEVEN UP, INC.

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

JACKIE FITZHENRY-RUSSELL AND ROBIN DALE, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

DR PEPPER SNAPPLE GROUP, INC., DR PEPPER/SEVEN UP, INC., and DOES 1-50,

Defendants.

Case No. 5:17-CV-00564-NC

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS DR PEPPER SNAPPLE GROUP, INC. AND DR PEPPER/SEVEN UP, INC.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT UNDER RULES 12(B)(6) AND 9(B)

Date: Wednesday, July 26, 2017

Time: 1:00 p.m.

Courtroom: 7

Judge: Honorable Nathanael Cousins

# TABLE OF CONTENTS

Page

I. SUMMARY OF ARGUMENT ..... 1

II. SUMMARY OF ALLEGED FACTS ..... 3

III. APPLICABLE LEGAL STANDARDS ..... 4

A. Rule 12(b)(6) ..... 4

B. Rule 9(b) ..... 4

IV. ARGUMENTS AND AUTHORITIES ..... 5

A. The FAC Fails to State a Claim Based on DPSG's Website and Television Advertising. ..... 5

1. Plaintiffs Have Not Saved Their Non-Specific Advertising Claim. ..... 5

2. "Jack's Ginger Farm" TV Advertisements Are Inactionable Puffery. ..... 7

B. Plaintiffs Have Dropped Dr Pepper/Seven Up, Inc. From the FAC and Improperly Tried to Add a New Defendant—Canada Dry Mott's, Inc. ..... 8

C. Plaintiffs' FDA Labeling Claims Are Preempted and Also Fail for Other Reasons. ..... 8

V. CONCLUSION ..... 11

i

DEFENDANTS' MEMORANDUM
IN SUPPORT OF MOTION TO DISMISS FAC
CASE NO. 5:17-CV-00564-NC

## TABLE OF AUTHORITIES

Page(s)

CASES

*Ashcroft v. Iqbal*
556 U.S. 662 (2009) ....................4

*Backhaut v. Apple, Inc.*
74 F. Supp. 3d 1033 (N.D. Cal. 2014) ....................7

*Bell Atl. Corp. v. Twombly*
550 U.S. 544 (2007) ....................4, 8

*Buckland v. Threshold Enter., Ltd.*
155 Cal. App. 4th 798 (2007) ....................7

*Cattie v. Wal-Mart Stores, Inc.*
504 F. Supp. 2d 939 (S.D. Cal. 2007) ....................7

*Chae v. SLM Corp.*
593 F.3d 936 (9th Cir. 2010) ....................9

*Edwards v. Marin Park, Inc.*
356 F.3d 1058 (9th Cir. 2004) ....................5

*Hall v. Bristol-Myers Squibb, Co.*
2009 WL 5206144 (D.N.J. Dec. 30, 2009) ....................6

*Ham v. Hain Celestial Grp., Inc.*
70 F. Supp. 3d 1188 (N.D. Cal. 2014) ....................7

*Hendricks v. StarKist Co.*
30 F. Supp. 3d 917 (N.D. Cal. 2014) ....................11

*Ivie v. Kraft Foods Glob., Inc.*
No. 12-CV-02554-RMW, 2013 WL 685372 (N.D. Cal. Feb. 25, 2013) ....................9

*Katiki v. Taser Int'l, Inc.*
No. 12-CV-05519-NC, 2013 WL 163668 (N.D. Cal. Jan. 15, 2013) ....................5, 6

*Kearns v. Ford Motor Co.*
567 F.3d 1120 (9th Cir. 2009) ....................4, 5

*Laster v. T-Mobile USA, Inc.*
407 F. Supp. 2d 1181 (S.D. Cal. 2005) ....................7

*McKinnis v. Kellogg USA*
No. CV-2611 ABC, 2007 WL 4766060 (C.D. Cal. Sept. 19, 2007)..........8

*Murillo v. Aurora Loan Servs., LLC*
No. C 09-00504 JW, 2009 WL 2160580 (N.D. Cal. July 17, 2009)..........8

*People for the Ethical Treatment of Animals v. Whole Foods Market Cal. Inc.*
No. 15-cv-04301 NC, 2016 WL 1642577 (N.D. Cal. Apr. 26, 2016)..........7, 10

*Pratt v. Whole Foods Market Cal. Inc.*
No. 5:12-CV-05652-EJD, 2015 WL 5770799 (N.D. Cal. Sept. 30, 2015)..........11

*Ransom v. Lee*
No. CV 14-600-DSF (KK), 2017 WL 1024262 (C.D. Cal. Mar. 15, 2017)..........8, 9

*Reese v. Odwalla, Inc.*
No. 13-CV-00947-YGR, 2017 WL 565095 (N.D. Cal. Feb. 13, 2017)..........9, 11

*Spokeo, Inc. v. Robins*
136 S. Ct. 1540 (2016)..........11

*Starr v. Baca*
652 F.3d 1202 (9th Cir. 2011)..........4

*Stickrath v. Globalstar, Inc.*
527 F. Supp. 2d 992 (N.D. Cal. 2007)..........7

*Swearingen v. Amazon Partners, Inc.*
No. 13-CV-4402-WHO, 2014 WL 1100944 (N.D. Cal. Mar. 18, 2014)..........11

*Vess v. Ciba-Geigy Corp. USA*
317 F.3d 1097 (9th Cir. 2003)..........4

*Williams v. Gerber Prods. Co.*
439 F. Supp. 2d 1112 (S.D. Cal. 2006)..........7

FEDERAL STATUTES, REGULATIONS, AND COURT RULES

21 U.S.C. § 343-1(a)(3)..........9

21 U.S.C. § 343(k)..........9

21 C.F.R. § 101.22..........2, 10

21 C.F.R. § 501.22..........10

FED. R. CIV. P. 4..........8

FED. R. CIV. P. 9..........1, 4, 5, 6

FED. R. CIV. P. 12 ..........3, 4, 8

FED. R. CIV. P. 20 ..........8

CALIFORNIA STATUTES

Consumers Legal Remedies Act, CAL. CIV. CODE § 1750, *et. seq.* ..........3

Unfair Competition Law, CAL. BUS. & PROF. CODE § 17200, *et. seq*..........3

False Advertising Law, CAL. BUS. & PROF. CODE § 17500, *et. seq.* ..........3

Defendants Dr Pepper Snapple Group, Inc. and Dr Pepper/Seven Up, Inc. ("DPSG")[1] submit this memorandum of points and authorities in support of their motion to dismiss Plaintiffs' First Amended Complaint.[2]

## I. SUMMARY OF ARGUMENT

The First Amended Complaint ("FAC") does not fix a specific problem identified during colloquy with the Court in ruling on the Motion to Dismiss the original Complaint, and Plaintiffs have created new errors also requiring dismissal.

Specifically, in providing leave to amend, the Court was explicit about what Plaintiffs needed to do under Rule 9(b) to proceed with their off-label challenge to television and website advertising. Plaintiffs' counsel responded that they could amend to add the missing allegations necessary to plead reasonable reliance on specific advertisements, *see* Apr. 19, 2017 Hearing Transcript ("Tr.") at 30, ECF Docket No. 37. Plaintiffs have not done so. In fact, only one plaintiff—Ms. Fitzhenry-Russell—now even *attempts* to state such a claim, but does not allege *(i) what* commercials she actually saw (a mistake compounded by her admission that there were several possibilities); *(ii) when* she claims to have been duped by them (surmising vaguely that it was at least once within the last year); or *(iii) which* purchases she made in reliance on them (itself a two-tiered Rule 9(b) problem, because she also fails to plead *when* she made those purchases beyond a nonspecific allegation of "weekly" or "monthly" during the class period). Nor does the FAC plead *(iv) why* Ms. Fitzhenry-Russell's alleged reliance on whatever she can(not) recall about life on "Jack's Ginger Farm," a tongue-in-cheek place where carbonated beverages grow from the ground (and where none of the fictionalized farmers promised health benefits), was reasonable.

---

[1] As set forth *infra*, Plaintiffs have deleted all references to Dr Pepper/Seven Up, Inc. in the FAC, but have not filed a notice dismissing it from the case, nor requested to amend the caption. Instead, they have substituted Canada Dry Mott's, Inc., a Canadian subsidiary of DPSG, in the case caption of, and in a few paragraphs in, the FAC. In filing this motion, the undersigned are *not* appearing on behalf of Canada Dry Mott's, Inc., which has *not* been served.

[2] On May 23, 2017, Defendants filed a Motion to Consolidate an essentially identical class action, *Hashemi, et al. v. Dr Pepper Snapple Group, Inc., et al.*, Case No. 3:17-CV-2341-VC, with this case. The *Hashemi* Plaintiffs have since stipulated to consolidation. *Id.* at ECF Docket No. 52.

The superficiality of the website/commercial theory is confirmed by the FAC's supporting citations, which *repeatedly* acknowledge that all these allegations come from counsel's internet research from sites (mostly, YouTube) that reportedly were "last accessed on May 9, 2017," *i.e.*, the day before the FAC was filed. *See* FAC ¶ 44. (Left unsaid in the FAC's passive voice is the identity of *who* visited the website, *when* they "first" visited, and *why* anything *counsel* recently "visited" could save a FAC that does not allege what *Plaintiffs* personally saw and relied on prior to making their purchases.) Beyond those obvious deficiencies, Plaintiffs cannot state a fraud claim based on a fictionalized fanciful harvest of bottles of carbonated soft drinks: a textbook example of commercial puffery that, as a matter of law, would not mislead any *reasonable* adult.[3]

The FAC's amended explanation of the core falsity theory—that the product is falsely labeled as "Made From Real Ginger"—exposes their claims as preempted by the exceptionally detailed FDA regulations that govern "flavor labeling." Specifically, Canada Dry Ginger Ale is labeled pursuant to regulations applicable to beverages made from "natural flavor" (derived from ginger, among others), and is *not* subject to differing standards for "artificial flavor." *See* 21 C.F.R. § 101.22. Plaintiffs now seek to displace those controlling FDA regulations by claiming that Canada Dry's "natural flavor" label was rendered false by the allegedly concealed facts that the beverages were not sufficiently natural, *i.e.*, because they were crafted from a "chemical flavoring compound," an "extraction," and/or "isolated compound" that is a "flavoring substance" intended to mimic the taste of ginger, they do not sufficiently resemble real ginger. *See* FAC ¶¶ 23, 28. The FDA regulatory program preempts this attempt to judicially impose additional "flavor-labeling" disclosure requirements, and in the process, introduce differing and confusing terminology (about "chemicals," "compounds" and "extractions," etc.), to re-characterize Canada Dry's natural flavors, extracted from ginger, as artificial.

Finally, the FAC has now deleted the *only* allegations against Dr Pepper/Seven Up, Inc. that were previously found in the predecessor Complaint. As there are no longer any allegations against Dr Pepper/Seven Up, Inc., it should be dismissed. There also is no basis to sustain any

---

[3] The FAC does not salvage the claims against the Canada Dry website. *Neither* Plaintiff claims to have visited the website, and thus all claims based on the website should be dismissed.

claim against Canada Dry Mott's, Inc., which Plaintiffs purport to substitute for the now-omitted Dr Pepper/Seven Up, Inc. simply by including its name. Plaintiffs have not served Canada Dry Mott's, Inc. under Rule 4, nor sought leave to amend the caption.

## II.  SUMMARY OF ALLEGED FACTS

The crux of Plaintiffs' lawsuit remains their contention that they were led to believe that Defendants' products contained ground, powdered, or some other form of ginger or "ginger root," and as a result, would bestow certain "health benefits" on them. FAC ¶¶ 2–4, 23–26. They claim they reached that belief based on the label on six Canada Dry Ginger Ale beverages ("Canada Dry Ginger Ale"), which disclosed that the beverages contained "natural flavors" and were "Made From Real Ginger"—but notably said nothing about the products containing ground, powdered, or any other form of ginger root, and nothing about any "health benefits." *Id.* Plaintiffs also challenge an uncertain number of website and television commercials, which they say emphasized the "Made From Real Ginger" claim. Plaintiffs, however, do not allege that they (as opposed to counsel) visited any website.

Plaintiffs bring state law claims under California's Consumers Legal Remedies Act ("CLRA") (Count I), CAL. CIV. CODE § 1750, *et. seq.*, the False Advertising Law ("FAL") (Count II), CAL. BUS. & PROF. CODE § 17500, *et. seq.*, common law claims for fraud, deceit, and misrepresentation (Count III); and claims under the Unfair Competition Law ("UCL") (Count IV), CAL. BUS. & PROF. CODE § 17200, *et. seq*. Plaintiffs seek to litigate on behalf of themselves and a putative national class of anyone who, between December 28, 2012 and the present, purchased any of the Canada Dry Products, anywhere. *Id.* ¶ 72. Plaintiffs demand declaratory and injunctive relief, compensatory and punitive damages, restitution, and attorney's fees and costs. *See* Compl., Prayer at 28–32.

Defendants moved to dismiss the Complaint under Rules 12(b)(1), 12(b)(6), and 9(b). *See* Defs.' Notice of Motion and Motion to Dismiss, ECF Docket No. 16. On April 19, 2017, the

Court granted the motion in part and denied it in part, granting Plaintiffs leave to replead in light of the Court's colloquy with counsel.[4]

## III. APPLICABLE LEGAL STANDARDS

### A. Rule 12(b)(6)

A complaint must be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure unless it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although the Court accepts factual allegations as true for purposes of this motion, this is "inapplicable to legal conclusions." *Id.* After stripping away all "conclusory statements," the remaining factual allegations must do more than "create[] a suspicion of a legally cognizable right of action"; they must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted). To make this "context-specific" determination, the Court must "draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. This analysis serves a critical gatekeeping function, ensuring that claims are sufficiently plausible "such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

### B. Rule 9(b)

Federal Rule of Civil Procedure 9(b) requires the Plaintiffs to "state with particularity the circumstances constituting fraud." This standard specifically "appl[ies] to claims for violations of the CLRA and UCL," as well as the FAL, where, as here, based on a fraud theory. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003) ("[f]raud can be averred by specifically alleging fraud, or by alleging facts that necessarily constitute fraud," even if allegations do not use word "fraud"). The

---

[4] In filing this Motion to Dismiss, Defendants reserve their right to move to strike Plaintiffs' nationwide class claims as impermissibly overbroad during the class certification stage, as anticipated by the Court. *See* Tr. at 3. Defendants also reserve their right to contest Plaintiffs' constitutional standing to seek injunctive relief—a question of subject matter jurisdiction that cannot be waived.

Complaint must specifically allege "the 'who, what, when, where, and how' of the misconduct charged," *Kearns*, 567 F.3d at 1124 (citations omitted), and "the time, place, and specific content of the false representations," *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004) (citations omitted).

## IV. ARGUMENTS AND AUTHORITIES

### A. The FAC Fails to State a Claim Based on DPSG's Website and Television Advertising.

#### 1. Plaintiffs Have Not Saved Their Non-Specific Advertising Claim.

Like its predecessor, the FAC has not pleaded the challenge to DPSG's website and television advertising with the particularity demanded by Rule 9(b). *See* FAC ¶¶ 43–44. *See Katiki v. Taser Int'l, Inc.*, No. 12-CV-05519-NC, 2013 WL 163668, at *4 (N.D. Cal. Jan. 15, 2013) (Rule 9(b) requires particularized pleading of the "who, what, when, where, and why" of the alleged fraud).[5] The Court gave Plaintiffs an opportunity to replead their non-class claims based on DPSG's alleged television and website advertising to meet that standard. *See* Tr. at 30.

The FAC still fails—not just because of insufficient drafting, but also because it is clear that the allegations regarding the commercials and website were not materially relevant to these Plaintiffs' purchasing decisions. For starters, Plaintiffs' allegations about the allegedly fraudulent television advertising consist simply of counsel's summary of a "commercial [that] can be found on the internet" (in particular, "YouTube") that depicts a fictional harvest on "Jack's Ginger Farm." *See* FAC ¶ 44. According to the FAC, when someone (the pleading does not identify *who*) "last accessed" YouTube on May 9, 2017 (the day before the FAC was filed), he or she came across at least *four different* commercials set on Jack's farm. *Id.* Plaintiffs further surmise that those various commercials were aired "at least as early" as either 2011, 2013, and/or 2014, depending on the commercial. *Id.* These allegations wholly fail to explain *which* commercials in

[5] The FAC is "grounded in fraud," and thus subject to greater scrutiny under Rule 9(b), because Plaintiffs repeatedly challenge the labels as "false, deceptive and misleading," and assert a standalone "fraud" claim for the same alleged misconduct, *see, e.g.*, FAC ¶¶ 99–106 (Count III); *see also Kearns*, 567 F.3d at 1124–25 (quoting *Vess*, 317 F.3d at 1105).

particular were aired, *when* the commercials were aired (other than a blatantly non-particularized pleading of "no earlier date"), and *where* the commercials were allegedly broadcast.

Ms. Dale does not allege anything whatsoever about commercials, and the allegations with respect to Plaintiff Fitzhenry-Russell's reliance plainly fall short of Rule 9(b). Ms. Fitzhenry-Russell claims to have "viewed" the advertisements referenced in Paragraph 44, but she does not say *which* of the four referenced YouTube examples she personally saw. FAC ¶ 58. Nor does she plead *when* she supposedly was defrauded by never-specified commercials. *Id.*[6] All she alleges is that, "on at least five occasions over the past five years," she saw one and/or more of them, and that "at least one time approximately one year ago" she recalls seeing an ad with a "voice-over" narrative. *See id.* Such vague allegations are surely insufficient to satisfy Rule 9(b). *See Hall v. Bristol-Myers Squibb, Co.*, 2009 WL 5206144, at *9 (D.N.J. Dec. 30, 2009) (dismissing false advertising claim for failure to allege causation where complaint did not specifically identify *which* advertisements plaintiffs viewed, or *when* they were relied upon).

If Rule 9(b) means anything, it at least requires a plaintiff who claims to have been fraudulently deceived by a product statement—and then induced into purchasing "in reliance upon the truthfulness of the claims in th[at] advertisement"—to come forward with something more particular than that "approximately one year ago" she was defrauded by the never-specified statements. FAC ¶ 58. This is not a trivial problem. Because Ms. Fitzhenry-Russell's claims require causation—which, in a misrepresentation case, is tethered to the reliance element—Rule 9(b) requires her to plead *what* she purchased and *when* she allegedly did so at an inflated price in reliance on *which* particular statement. *Compare* FAC ¶ 58 *with Katiki*, 2013 WL 163668, at *4 (dismissing complaint where, as here, plaintiff failed to specify when she viewed false advertisement, and which statements she relied upon).

The allegations about the Canada Dry website are meaningless. Neither Plaintiff alleges that she even once *actually visited* the website, much less read and relied on anything on the

[6] The FAC does not even allege facts to buttress the blithe assertion that numerous commercials were aired "throughout California," much less on which dates any were aired in the media market where Ms. Fitzhenry-Russell resides. *See* FAC ¶ 44.

internet in connection with her purchases. *See* FAC ¶¶ 43, 57–71 (describing what counsel saw on www.canadadry.com, including a "screenshot," but never alleging that any Plaintiff actually visited that website).[7] As a matter of law, a never-read website, like a never-read statement, cannot fraudulently deceive anyone. *See Buckland v. Threshold Enter., Ltd.*, 155 Cal. App. 4th 798, 410 (2007) ("[P]laintiffs asserting CLRA claims sounding in fraud must establish that they actually relied on the relevant representations or omissions.").[8] Indeed, Plaintiffs have not only failed to state any claim against the website, they have failed to establish their standing to even assert one. *See Ham v. Hain Celestial Grp., Inc.*, 70 F. Supp. 3d 1188, 1197 (N.D. Cal. 2014) (holding plaintiff lacked standing to challenge advertisements she never saw).

**2. "Jack's Ginger Farm" TV Advertisements Are Inactionable Puffery.**

Even assuming (incorrectly) that Ms. Fitzhenry-Russell did view and rely on one of the television commercials found on YouTube, the FAC does not allege anything actionable about them. *See* FAC ¶ 44. The FAC's summary of the commercials is textbook "puffery." As a matter of law, "no reasonable consumer relies on puffery" like obviously tongue-in-cheek depictions of farmers pulling bottles of carbonated ginger ale from the ground. *See Stickrath v. Globalstar, Inc.*, 527 F. Supp. 2d 992, 998, 1000 (N.D. Cal. 2007) (quoting *Williams v. Gerber Prods. Co.*, 439 F. Supp. 2d 1112, 1115 (S.D. Cal. 2006)). These commercials do not promise anything in particular about Canada Dry Ginger Ale, much less amount to the sort of concrete and false product statement necessary for a sustainable fraud claim. *See People for the Ethical*

---

[7] As with the television commercials researched on YouTube, the only specific dates in the FAC concerning the website are those when some unspecified person "last accessed" the website.

[8] *See also Backhaut v. Apple, Inc.*, 74 F. Supp. 3d 1033, 1047 (N.D. Cal. 2014) ("California courts have held that when the 'unfair competition' underlying a plaintiff's UCL claim consists of a defendant's misrepresentation or omission, a plaintiff must have actually relied on the misrepresentation or omission, and suffered economic injury as a result of that reliance, to have standing to sue.") (emphasis added)); *Cattie v. Wal-Mart Stores, Inc.*, 504 F. Supp. 2d 939, 948 (S.D. Cal. 2007) (dismissing UCL claim alleging that thread count of linens was lower than advertised where plaintiff admitted she did not rely on any alleged misrepresentation when making her purchase); *Laster v. T-Mobile USA, Inc.*, 407 F. Supp. 2d 1181, 1183 (S.D. Cal. 2005) (dismissing false advertising claim where "none of the named Plaintiffs allege that they saw, read, or in any way relied on the advertisements").

*Treatment of Animals v. Whole Foods Market Cal. Inc.*, No. 15-cv-04301 NC, 2016 WL 1642577, at *2 (N.D. Cal. Apr. 26, 2016) (dismissing complaint based on marketing "puffery" where, as here, complaint contained no pleaded facts that defendant advertised products as having characteristics they lacked). The notion that a *reasonable* consumer might infer, from a farmer pulling bottles of ginger ale out of the ground, that the bottle contains a specific quantum of ginger root (or some amount of ginger powder) is a mockery of the "*reasonable*" consumer standard. *See McKinnis v. Kellogg USA*, No. CV-2611 ABC, 2007 WL 4766060, at *4 (C.D. Cal. Sept. 19, 2007). It simply does not make "common sense." *See Twombly*, 550 U.S. at 555.

**B. The FAC Has Dropped Dr Pepper/Seven Up, Inc. and Improperly Tried to Add a New Defendant—Canada Dry Mott's, Inc.**

The FAC has deleted the earlier allegations against Dr Pepper/Seven Up, Inc., which previously were found in paragraphs 1, 8, and 21. In its place, and in the caption, the FAC has purported to substitute a new defendant, Canada Dry Mott's, Inc. FAC ¶¶ 1, 8, 21. This is not the correct way to substitute named defendants and, as such, if the Court sustains any claim at all, it should only be those alleged against Dr Pepper Snapple Group, Inc.[9]

Specifically, the Court should dismiss Dr Pepper/Seven Up, Inc., and order its removal from the caption, because there are no longer any allegations against it. *See, e.g.*, *Murillo v. Aurora Loan Servs., LLC*, No. C 09-00504 JW, 2009 WL 2160580, at *2 (N.D. Cal. July 17, 2009) (dismissing defendant listed in amended complaint caption but never mentioned again). Likewise, the Court cannot sustain any claim against Canada Dry Motts, Inc., because Plaintiffs have simply typed its name into the FAC, but have never served it as is necessary to properly join a defendant. *See* FED. R. CIV. P. 4, 20; *Ransom v. Lee*, No. CV 14-600-DSF (KK), 2017 WL 1024262, at *2 (C.D. Cal. Mar. 15, 2017) (dismissing case against unserved defendant).

**C. Plaintiffs' FDA Labeling Claims Are Preempted and Also Fail for Other Reasons.**

The FAC asserts that the "Made From Real Ginger" label is misleading because Canada Dry Ginger Ale contains a "chemical flavoring compound designed to mimic the taste of real

[9] Consistent with the Rule 12 standard, Defendants of course do not waive their defense that Dr Pepper Snapple Group, Inc. also is not liable (or any other defense on the merits).

ginger," not "the spice made by chopping or powdering the root of the ginger plant." *See* FAC ¶¶ 23, 28, 39–40. They also challenge the disclosure of Canada Dry Ginger Ale's "natural flavors," claiming the label concealed that the beverages were crafted from an "isolated compound" and/or a "chemical compound" that is a "flavoring substance." *Id.* In so doing, Plaintiffs attempt to impose a rule—not imposed by the FDA—that to list natural flavors on the label, such as those "made from real ginger," the beverage must actually contain an unspecified amount of a chopped or powdered version of the substance. *See id.* Because Plaintiffs' core falsity theory now rests on natural labeling criteria that differs from the FDA's requirements for natural flavoring, their claims are all preempted.

Under the Supremacy Clause of the United States Constitution, federal law preempts state law when "(1) Congress enacts a statute that explicitly pre-empts state law; (2) state law actually conflicts with federal law; or (3) federal law occupies a legislative field to such an extent that it is reasonable to conclude that Congress left no room for state regulation in that field." *Chae v. SLM Corp.*, 593 F.3d 936, 941 (9th Cir. 2010). The FDCA, as amended by the NLEA, explicitly provides that, "no State or political subdivision of a State may directly or indirectly establish under any authority or continue in effect as to any food in interstate commerce . . . (3) any requirement for the labeling of food of the type required by section 343(b), 343(d), 343(f), 343(h), 343(i)(1), or 343(k) of this title that is not *identical* to the requirement of such section . . . ." 21 U.S.C. § 343-1(a)(3) (emphasis added). Courts find express preemption in the food labeling context when: (1) the FDA's labeling requirements are clear; and (2) the label in question complies with the FDA's requirements "such that plaintiff necessarily seeks to enforce requirements in excess of what the FDCA, NLEA, and the implementing regulations require." *Reese v. Odwalla, Inc.*, No. 13-CV-00947-YGR, 2017 WL 565095, at *3 (N.D. Cal. Feb. 13, 2017) (quoting *Ivie v. Kraft Foods Glob., Inc.*, No. 12-CV-02554-RMW, 2013 WL 685372, at *8 (N.D. Cal. Feb. 25, 2013)).

The FDA has specifically promulgated regulations dealing with flavor labeling, pursuant to 21 U.S.C. § 343(k). Plaintiffs concede that the FDA's "flavor labeling" regulations are set out

at 21 C.F.R. § 101.22,[10] which explicitly defines "artificially flavored" and "natural flavor" and when each must be used. *See* FAC ¶ 27. Specifically, as a matter of law, "natural flavor" is "the essential oil, oleoresin, essence or extractive . . . which contains the flavoring constituents derived from a spice, fruit or fruit juice, vegetable or vegetable juice, edible yeast, herb, bark, bud, root, leaf or similar plant material . . . whose significant function in food is flavoring rather than nutritional." *See* 21 C.F.R. § 101.22. By contrast, as a matter of law, "artificial flavor" is "any substance, the function of which is to impart flavor, which is not derived from a spice, fruit or fruit juice, vegetable or vegetable juice, edible yeast, herb, bark, bud, root, leaf or similar plant material, meat, fish, poultry, eggs, dairy products, or fermentation products thereof." *Id.*

Although it is not clear what Plaintiffs are claiming, they do not assert that DPSG violated the FDA's flavor-labeling regulations. That is, the FAC does not dispute that Canada Dry Ginger Ale is appropriately labeled under the FDA's hyper-specific "natural flavor" regulations, nor that further describing those flavors as "Made from Real Ginger" in any other respect runs afoul of the regulations. Instead, Plaintiffs attempt to impose requirements that are both inconsistent with, and also go beyond, those regulations. For instance, Plaintiffs claim that the label is false or misleading because Canada Dry Ginger Ale contains undisclosed artificial flavors—what they describe variously as a "chemical flavoring compound," and/or an "extraction" and/or "isolated compound" that is a "flavoring substance" intended to "mimic" the flavor of ginger. FAC ¶¶ 28, 39. That flatly contradicts the FDA regulation that a "deriv[ative]" from ginger (which is a "root, leaf or similar plant material") used to flavor a product shall be described as "natural"—and that such flavoring does *not* fit the FDA's definition of "artificial." *See* 21 C.F.R. § 101.22. Nor do the FDA's "natural flavor" regulations require that the beverage contain any quantum of "the spice made by chopping or powdering the root of the ginger plant." *Compare id. with* FAC ¶¶ 23, 28, 39–40. Even if an individual consumer subjectively did expect some amount of chopped/powdered spice in a carbonated beverage (however unreasonably), to sustain a state law

[10] Plaintiffs erroneously cite 21 C.F.R. § 501.22, which governs flavor labeling for food meant to be consumed by *animals*. *See* FAC ¶ 27. 21 C.F.R. § 101.22 contains the flavor-labeling requirements for food for humans. *See* 21 C.F.R. Subchapter B.

claim against an FDA-compliant label on that basis would impermissibly impose a requirement "in excess of what the [FDA] regulations require." *See Reese*, 2017 WL 565095, at *3. Similarly preempted are Plaintiffs' attempts to impose still additional, and different, beverage labeling requirements and terminology by claiming that an FDA-compliant "natural" label is unlawful in California because it fails to additionally disclose the use of "chemical flavoring compounds," "flavoring compounds," etc. (even incorrectly assuming such pejoratives are remotely accurate descriptions of the beverage). *See Hendricks v. StarKist Co.*, 30 F. Supp. 3d 917, 926–27 (N.D. Cal. 2014) ("[N]o state may establish a requirement for food that is not identical to an FDA-established standard of identity." (citing 21 U.S.C. § 343-1(a)(1))).[11]

Alternatively, even if some portion of the FAC is not preempted, Plaintiffs blithely fail to clearly identify *which* FDA regulations they allege were violated, and *why*. *See* FAC ¶¶ 38, 109. Even if Plaintiffs *could* point to a violation, merely identifying a technical violation is insufficient to state a claim for relief. It is well settled that California's consumer protection statutes do not impose strict liability for technical violations. *See Pratt v. Whole Foods Market Cal. Inc.*, No. 5:12-CV-05652-EJD, 2015 WL 5770799, at *4–5 (N.D. Cal. Sept. 30, 2015); *cf. Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549–50 (2016) (mere violation of procedural right granted by statute is alone insufficient to constitute actionable injury absent concrete harm). Rather, Plaintiffs are still required to allege, and here, have failed to allege, that reasonable consumers would likely be deceived by and would rely upon the kind of mislabeling addressed by the specific FDA regulation in question. *See Swearingen v. Amazon Partners, Inc.*, No. 13-CV-4402-WHO, 2014 WL 1100944, at *2 (N.D. Cal. Mar. 18, 2014).

## V. CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiffs' First Amended Complaint.

---

[11] Plaintiffs cannot avoid preemption by *conceding* that "no state imposes different requirements on the labeling of packaged food for sale in the United States." FAC ¶ 29. That acknowledgment is puzzling in a FAC that at its core seeks to impose liability for different and additional requirements on the labeling of Canada Dry Ginger Ale.

DATED: June 16, 2017   By: /s/ *Jonathan A. Shapiro*

BAKER BOTTS L.L.P.
Jonathan A. Shapiro (SBN# 257199)
jonathan.shapiro@bakerbotts.com
101 California Street, Suite 3600
San Francisco, CA 94111
Telephone: (415) 291-6204
Facsimile: (415) 2916304

Van H. Beckwith (*pro hac vice*)
van.beckwith@bakerbotts.com
Jessica E. Underwood (*pro hac vice*)
jessica.underwood@bakerbotts.com
2001 Ross Avenue, Suite 600
Dallas, TX 75201-2980
Telephone: (214) 953-6500
Facsimile: (214) 953-6503

Attorneys for Defendants
DR PEPPER SNAPPLE GROUP, INC. AND
DR PEPPER/SEVEN UP, INC.

CERTIFICATE OF SERVICE

I hereby certify that on June 16, 2017, I electronically filed the above document with the U.S. District Court for the Northern District of California by using the CM/ECF system. All participants in the case are registered CM/ECF users who will be served by the CM/ECF system.

*/s/ Jonathan A. Shapiro*
Jonathan A. Shapiro