1

**BAKER BOTTS L.L.P.**
Jonathan A. Shapiro (SBN# 257199)

2

jonathan.shapiro@bakerbotts.com
101 California Street, Suite 3600

3

San Francisco, CA 94111
Telephone:     (415) 291-6204

4

Facsimile:     (415) 291-6304

5

Van H. Beckwith (*pro hac vice*)
van.beckwith@bakerbotts.com

6

Jessica E. Underwood (*pro hac vice*)
jessica.underwood@bakerbotts.com

7

2001 Ross Avenue, Suite 600
Dallas, TX 75201-2980

8

Telephone:     (214) 953-6500
Facsimile:     (214) 953-6503

9

10

Attorneys for Defendants
DR PEPPER SNAPPLE GROUP, INC. AND
DR PEPPER/SEVEN UP, INC.

11

12

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

13

14

JACKIE FITZHENRY-RUSSELL AND
ROBIN DALE, on behalf of themselves and

15

all others similarly situated,

16

Plaintiffs,

17

v.

18

DR PEPPER SNAPPLE GROUP, INC., DR
PEPPER/SEVEN UP, INC., and DOES 1-50,

19

Defendants.

20

21

22

23

24

25

26

27

28

Case No. 5:17-CV-00564-NC

**MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF
DEFENDANTS DR PEPPER SNAPPLE
GROUP, INC. AND DR PEPPER/SEVEN
UP, INC.'S MOTION TO DISMISS
CONSOLIDATED AMENDED
COMPLAINT UNDER RULES 12(B)(2),
12(B)(6) AND 9(B), OR
ALTERNATIVELY, MOTION TO
STRIKE UNDER RULE 12(F)**

Date: Wednesday, September 27, 2017

Time: 1:00 p.m.

Courtroom: 7

Judge: Honorable Nathanael Cousins

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

I. SUMMARY OF ARGUMENT ..................................................................................... 1

II. SUMMARY OF ALLEGED FACTS ....................................................................... 4

III. APPLICABLE LEGAL STANDARDS .................................................................. 4

    A. Rule 12(b)(2) .............................................................................................. 4

    B. Rule 12(b)(6) .............................................................................................. 5

    C. Rule 9(b) ..................................................................................................... 6

IV. ARGUMENTS AND AUTHORITIES .................................................................... 6

    A. The CAC must be dismissed for lack of personal jurisdiction under Rule 12(b)(2)............ 6

        1. Plaintiffs have not pleaded any basis to invoke personal jurisdiction. .......................... 6

        2. The *Bristol-Myers* Limitation Is a Clear, Rigid, and On-Point Bar to Personal Jurisdiction...................... 7

        3. Alternatively, the Court Should Strike the Constitutionally Impermissible Nationwide Class Allegations Under Rule 12(f)........................ 11

    B. The CAC Fails to State a Claim Based on DPSG's Website and Television Advertising. .................. 12

        1. Plaintiffs Have Not Saved Their Non-Specific Advertising Claim. ......................... 12

        2. "Jack's Ginger Farm" TV Advertisements Are Inactionable Puffery. ...................... 15

    C. Plaintiffs' FDA Labeling Claims Are Preempted and Also Fail for Other Reasons.......... 15

V. CONCLUSION ...................................................................................................... 18

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

CASES

4

*Action Embroidery Corp. v. Atl. Embroidery, Inc.*
    368 F.3d 1174 (9th Cir. 2004)....................................................................................5

5

6

*Andrews v. Radiancy, Inc.*
    No. 616CV1061ORL37GJK, 2017 WL 2692840 (M.D. Fla. June 22, 2017) .........10

7

8

*Ashcroft v. Iqbal*
    556 U.S. 662 (2009).....................................................................................................5

9

10

*Backhaut v. Apple, Inc.*
    74 F. Supp. 3d 1033 (N.D. Cal. 2014) .....................................................................15

11

*Bell Atl. Corp. v. Twombly*
    550 U.S. 544 (2007)................................................................................................5, 16

12

13

*Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County*
    137 S. Ct. 1773 (June 19, 2017)..............................................................1, 8, 9, 10, 11

14

*BSNF Railway Co. v. Tyrrell*
    137 S. Ct. 1549 (2017) ............................................................................................7, 9

15

16

*Buckland v. Threshold Enter., Ltd.*
    155 Cal. App. 4th 798 (2007).............................................................................14, 15

17

18

*Cattie v. Wal-Mart Stores, Inc.*
    504 F. Supp. 2d 939 (S.D. Cal. 2007)......................................................................15

19

*Chae v. SLM Corp.*
    593 F.3d 936 (9th Cir. 2010).....................................................................................16

20

21

*Cummings v. Connell*
    402 F.3d 936 (9th Cir. 2005).....................................................................................11

22

23

*Daimler AG v. Bauman*
    134 S. Ct. 746 (2014) ..............................................................................................7, 9

24

25

*Dole Food, Inc. v. Watts*
    303 F.3d 1104 (9th Cir. 2002).....................................................................................6

26

*Eagle Canyon Owners' Association v. Waste Management, Inc.*
    No. 16-cv-2811-LAB (WVG), 2017 WL 3017501 (S.D. Cal. July 13, 2017).........10

27

28

*Edwards v. Marin Park, Inc.*
    356 F.3d 1058 (9th Cir. 2004)...........................................................................6

*Ergon Oil Purchasing, Inc. v. Canal Barge Co., Inc.*
    No. CV 16-5884, 2017 WL 2730853 (E.D. La. June 26, 2017)............................10

*Flynt Distrib. Co. v. Harvey*
    734 F.2d 1389 (9th Cir. 1984)...........................................................................5

*Frenzel v. AliphCom*
    76 F. Supp. 3d 999 (N.D. Cal. 2014) ...............................................................12

*Goodyear Dunlop Tires Operations, S.A. v. Brown*
    564 U.S. 915 (2011)...............................................................................8, 9, 11

*Hall v. Bristol-Myers Squibb, Co.*
    2009 WL 5206144 (D.N.J. Dec. 30, 2009) ........................................................14

*Ham v. Hain Celestial Grp., Inc.*
    70 F. Supp. 3d 1188 (N.D. Cal. 2014) .............................................................15

*Hendricks v. StarKist Co.*
    30 F. Supp. 3d 917 (N.D. Cal. 2014) ...............................................................18

*Int'l Shoe Co. v. State of Wash.*
    326 U.S. 310 (1945) ........................................................................................5

*Jordan v. Bayer Corp*
    No. 4:17-CV-865 (CEJ), 2017 WL 3006993 (E.D. Mo. July 14, 2017)..................10

*Katiki v. Taser Int'l, Inc.*
    No. 12-CV-05519-NC, 2013 WL 163668 (N.D. Cal. Jan. 15, 2013) ................12, 14

*Kearns v. Ford Motor Co.*
    567 F.3d 1120 (9th Cir. 2009).....................................................................6, 12

*Laster v. T-Mobile USA, Inc.*
    407 F. Supp. 2d 1181 (S.D. Cal. 2005) ............................................................15

*McKinnis v. Kellogg USA*
    No. CV-2611 ABC, 2007 WL 4766060 (C.D. Cal. Sept. 19, 2007)......................16

*Michael Blaes et al. v. Johnson & Johnson et al.*
    Case No. 1422-CC09326-01, 22nd .....................................................................10

*Panavision Int'l, L.P. v. Toeppen*
    141 F.3d 1316 (9th Cir. 1998)...........................................................................5

*People for the Ethical Treatment of Animals v. Whole Foods Market Cal. Inc.*
    No. 15-cv-04301 NC, 2016 WL 1642577 (N.D. Cal. Apr. 26, 2016) ....................15

*Plumbers' Local Union No. 690 Health Plan v. Apotex Corp.*
   Civ. Action No. 16-665, 2017 WL 3129147 (E.D. Penn. July 24, 2017) ................................ 10

*Pratt v. Whole Foods Market Cal. Inc.*
   No. 5:12-CV-05652-EJD, 2015 WL 5770799 (N.D. Cal. Sept. 30, 2015) ............................. 18

*Reese v. Odwalla, Inc.*
   No. 13-CV-00947-YGR, 2017 WL 565095 (N.D. Cal. Feb. 13, 2017) ...................... 16, 18

*Sidney-Vinstein v. A.H. Robins Co.*
   697 F.2d 880 (9th Cir. 1983) ............................................................................. 12

*Siegfried v. Boehringer Ingelheim Pharmaceuticals, Inc.*
   No. 4:16-CV-1942 CDP, 2017 WL 2778107 (E.D. Mo. June 27, 2017) ................................ 9

*Spokeo, Inc. v. Robins*
   136 S. Ct. 1540 (2016) ..................................................................................... 18

*Starr v. Baca*
   652 F.3d 1202 (9th Cir. 2011) ............................................................................ 6

*Stickrath v. Globalstar, Inc.*
   527 F. Supp. 2d 992 (N.D. Cal. 2007) ................................................................ 15

*Swartz v. KPMG LLP*
   476 F.3d 756 (9th Cir. 2007) .................................................................... 5, 6, 7

*Swearingen v. Amazon Partners, Inc.*
   No. 13-CV-4402-WHO, 2014 WL 1100944 (N.D. Cal. Mar. 18, 2014) ............................. 18

*Vess v. Ciba-Geigy Corp. USA*
   317 F.3d 1097 (9th Cir. 2003) ....................................................................... 6, 12

*Walder v. Fiore*
   134 S. Ct. 1115 (2014) .................................................................................. 8, 9

*Xilinx, Inc. v. Invention Inv. Fund I LP*
   No. C 11–0671 SI, 2011 WL 3206686 (N.D. Cal. July 27, 2011) ................................ 5

**FEDERAL STATUTES, REGULATIONS, AND RULES**

21 U.S.C. § 343-1(a)(3) ..................................................................................... 16

21 U.S.C. § 343(k) .......................................................................................... 17

28 U.S.C. § 2072 ............................................................................................ 11

21 C.F.R. § 101.22 ..................................................................................... 3, 17

21 C.F.R. § 501.22 .......................................................................................... 17

FED. R. CIV. P. 12 ....................................................................................................11

**CALIFORNIA STATUTES**

CAL. BUS. & PROF. CODE § 17200. ............................................................................4

CAL. BUS. & PROF. CODE § 17500. ............................................................................4

CAL. CIV. CODE § 1750 .............................................................................................4

CAL. CIV. PROC. CODE § 410.10.................................................................................5

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1   Defendants Dr Pepper Snapple Group, Inc. and Dr Pepper/Seven Up, Inc. (collectively,
2   "DPSG") submit this memorandum of points and authorities in support of their motion to dismiss
3   Plaintiffs' Consolidated Amended Complaint.

4                           **I. SUMMARY OF ARGUMENT**

5   Plaintiffs have now had the benefit of three prior motions to dismiss (one in the now-
6   consolidated *Hashemi* case, and two in the *Fitzhenry* case), and have collectively amended the
7   complaint four times, making the Consolidated Amended Complaint ("CAC") the fifth pleading.
8   Still, fundamental errors persist that necessitate dismissal—namely, Plaintiffs' failure to plead
9   personal jurisdiction, federal preemption of their state-law challenge to an FDA-regulated label,
10  and their failure to plead their challenge to television and website advertising in accordance with
11  the Court's ruling on the Motion to Dismiss the original Complaint.

12  First, the CAC attempts to bring claims over which the Court lacks personal jurisdiction.
13  During the June 28, 2017 hearing, Defendants brought to the Court's and Plaintiffs' attention the
14  Supreme Court's just-published decision in *Bristol-Myers Squibb Co. v. Superior Court of*
15  *California, San Francisco County*, 137 S. Ct. 1773, 1782 (June 19, 2017).  Defendants did so
16  because *Bristol-Myers* makes clear that California courts cannot exercise personal jurisdiction to
17  adjudicate claims that, for jurisdictional purposes, are strikingly similar to those asserted here—
18  *i.e.*, claims of non-California plaintiffs against non-California defendants seeking redress for out-
19  of-state purchases.  Defendants sought guidance about how to proceed, given that the Court had
20  just ordered that the operative complaint be superseded with a consolidated pleading.  The Court
21  responded that "Plaintiffs are on due notice that that's an issue raised," and that *Bristol-Myers* is
22  "something they can think about as they craft a consolidated complaint."  June 28, 2017 Hearing
23  Transcript ("June 28 Tr.") at 20, 22 (also setting August 18, 2017 deadline for defendants to file
24  any motions against or response to new complaint).  In July, prior to the filing of the new
25  complaint, Defendants sent an email to Plaintiffs, again stating their position that *Bristol-Myers*
26  barred the extra-California claims, and also noting that trial courts had almost immediately
27  reacted by paring back in-progress cases to comply with the Supreme Court's jurisdictional line
28  drawing.

Now, in the CAC, Plaintiffs again ask the Court to exercise jurisdiction to adjudicate "nationwide" claims on behalf of non-California residents, against non-California Defendants, to recover for products made and sold outside of California.  Missing from the CAC is *any* pleaded basis to establish personal jurisdiction over the out-of-state claims (*i.e.*, over the vast majority of this case),[1] much less the robust showing necessary to meet the constitutional standard under *Bristol-Myers*.   Instead of addressing the problem—by either establishing jurisdiction for the suspect claims or dropping them—Plaintiffs simply hedged by labeling every claim  as coextensively brought on behalf of all nationwide consumers and a "California Subclass," encompassing all members of the Nationwide class who purchased Canada Dry Ginger Ale in California.  CAC ¶ 73.

Second, Plaintiffs have not cured the pleading failure noted during the April 19 Hearing on the Motion to Dismiss the original *Fitzhenry* Complaint, even though the Court was explicit about what Rule 9(b) requires to proceed with their off-label challenge to television and website advertising.  Plaintiffs' counsel responded that they could amend to add the missing allegations necessary to plead reasonable reliance on specific advertisements, *see* Apr. 19, 2017 Hearing Transcript ("Apr. 19 Tr.") at 30, ECF Docket No. 37.  Plaintiffs have not done so.  In fact, only one plaintiff—Ms. Fitzhenry-Russell—now even *attempts* to state such a claim, but does not allege *(i) what* commercials she actually saw (a mistake compounded by her admission that there were several possibilities); *(ii) when* she claims to have been duped by them (surmising vaguely that it was at least once within the last year); or *(iii) which* purchases she made in reliance on them (itself a two-tiered Rule 9(b) problem, because she also fails to plead *when* she made those purchases beyond a nonspecific allegation of "weekly" or "monthly" during the class period).  Nor does the CAC plead *(iv) why* Ms. Fitzhenry-Russell's alleged reliance on whatever she can(not) recall about life on "Jack's Ginger Farm," a tongue-in-cheek place where carbonated beverages grow from the ground (and where none of the fictionalized farmers promised health benefits), was reasonable.

---

[1] Roughly 88% of the U.S. population (and "nationwide" consumers) live outside of California.

1      The superficiality of the website/commercial theory is confirmed by the CAC's supporting

2  citations, which *repeatedly* acknowledge that all these allegations come from counsel's internet

3  research from sites (mostly, YouTube) that reportedly were "last accessed on May 9, 2017," *i.e.*,

4  the day before the CAC was filed.  *See* CAC ¶ 44.   (Left unsaid in the CAC's passive voice is

5  the identity of *who* visited the website, *when* they "first" visited, and *why* anything *counsel*

6  recently "visited" could save a CAC that does not allege what *Plaintiffs* personally saw and relied

7  on prior to making their purchases.)  Beyond those obvious deficiencies, Plaintiffs cannot state a

8  fraud claim based on a fictionalized fanciful harvest of bottles of carbonated soft drinks: a

9  textbook example of commercial puffery that, as a matter of law, would not mislead any

10 *reasonable* adult.[2]

11     Third, the CAC's now-amended explanation of the core falsity theory—that the product is

12 falsely labeled as "Made From Real Ginger"—exposes their claims as preempted by the

13 exceptionally detailed FDA regulations that govern "flavor labeling."  Specifically, Canada Dry

14 Ginger Ale is labeled pursuant to regulations applicable to beverages made from "natural flavor"

15 (derived from ginger, among others), and is *not* subject to differing standards for "artificial

16 flavor."  *See* 21 C.F.R. § 101.22.   Plaintiffs now seek to displace those controlling FDA

17 regulations by claiming that Canada Dry's "natural flavor" label was rendered false by the

18 allegedly concealed facts that the beverages were not sufficiently natural, *i.e.*, because they were

19 crafted from a "chemical flavoring compound," an "extraction," and/or "isolated compound" that

20 is a "flavoring substance" intended to mimic the taste of ginger, they do not sufficiently resemble

21 real ginger.  *See* CAC ¶¶ 23, 28. The FDA regulatory program preempts this attempt to judicially

22 impose additional "flavor-labeling" disclosure requirements, and in the process, introduce

23 differing and confusing terminology (about "chemicals," "compounds" and "extractions," etc.), to

24 re-characterize Canada Dry's natural flavors, extracted from ginger, as artificial.

25

26

27

28      [2] The CAC does not salvage the claims against the Canada Dry website.  *Neither* Plaintiff claims to have visited the website, and thus all claims based on the website should be dismissed.

1

## II. SUMMARY OF ALLEGED FACTS

2       The crux of Plaintiffs' lawsuit remains their contention that they were led to believe that

3   Defendants' products contained ground, powdered, or some other form of ginger or "ginger root,"

4   and as a result, would bestow certain "health benefits" on them.  CAC ¶¶ 2–4, 23–26.  They claim

5   they reached that belief based on the label on six Canada Dry Ginger Ale beverages ("Canada

6   Dry Ginger Ale Products"), which disclosed that the beverages contained "natural flavors" and

7   were "Made From Real Ginger"—but notably said nothing about the products containing ground,

8   powdered, or any other form of ginger root, and nothing about any "health benefits."  *Id.*

9   Plaintiffs also challenge an uncertain number of website and television commercials, which they

10  say emphasized the "Made From Real Ginger" claim.  *Id.* ¶¶ 43–44.  Plaintiffs, however, do not

11  allege that they (as opposed to counsel) visited any website.  *Id.* ¶¶ 43, 58, 65.

12      Plaintiffs bring state law claims under California's Consumers Legal Remedies Act

13  ("CLRA") (Count I), CAL. CIV. CODE § 1750, *et. seq.*, the False Advertising Law ("FAL") (Count

14  II), CAL. BUS. & PROF. CODE § 17500, *et. seq.*, common law claims for fraud, deceit, and

15  misrepresentation (Count III); and claims under the Unfair Competition Law ("UCL") (Count

16  IV), CAL. BUS. & PROF. CODE § 17200, *et. seq.*  Plaintiffs seek to litigate on behalf of themselves

17  and a putative national class of anyone who, between December 28, 2012 and the present,

18  purchased any of the Canada Dry Ginger Ale Products, anywhere.  *Id.* ¶ 72.  Plaintiffs also seek

19  to represent a subclass of those members of the aforementioned national class who purchased

20  Canada Dry Ginger Ale Products in California.  *Id.* ¶ 73.  Plaintiffs demand declaratory and

21  injunctive relief, compensatory and punitive damages, restitution, and attorney's fees and costs.

22  *See* Compl., Prayer at 28–32.[3]

23

## III.  APPLICABLE LEGAL STANDARDS

24

### A. Rule 12(b)(2)

25      The Due Process Clause requires that Defendants have "certain minimum contacts" with

26  the forum "such that the maintenance of the suit does not offend traditional notions of fair play

27  _____

28      [3] In filing this motion, Defendants reserve their right to contest Plaintiffs' constitutional standing to seek injunctive relief—a question of subject matter jurisdiction that cannot be waived.

**DEFENDANTS' MEMORANDUM**
**IN SUPPORT OF MOTION TO DISMISS CAC**                    - 4 -                    **CASE NO. 5:17-CV-00564-NC**

1   and substantial justice." *Int'l Shoe Co. v. State of Wash.*, 326 U.S. 310, 316 (1945) (citations

2   omitted).   In determining whether the exercise of personal jurisdiction over a nonresident

3   defendant is proper, the Court must apply the law of the state in which it sits where, as here, there

4   is no applicable federal statute governing personal jurisdiction.  *Panavision Int'l, L.P. v. Toeppen*,

5   141 F.3d 1316, 1320 (9th Cir. 1998).  California courts may only exercise personal jurisdiction

6   over nonresident defendants (such as these) to the extent permitted by the Due Process Clause of

7   the Constitution.  CAL. CIV. PROC. CODE § 410.10.

8         As the parties seeking to invoke jurisdiction, Plaintiffs bear the affirmative burden of

9   establishing that jurisdiction is proper under the Constitution.  *See Flynt Distrib. Co. v. Harvey*,

10  734 F.2d 1389, 1392 (9th Cir. 1984).  To do so, Plaintiffs must start by pleading an appropriate

11  factual basis for jurisdiction in their pleading, which requires well more than generic boilerplate.

12  *See Xilinx, Inc. v. Invention Inv. Fund I LP*, No. C 11–0671 SI , 2011 WL 3206686, at *5 (N.D.

13  Cal. July 27, 2011).  As a matter of law, "mere 'bare bones' assertions of minimum contacts with

14  the forum or legal conclusions unsupported by specific factual allegations will not satisfy a

15  plaintiff's pleading burden."   *Swartz v. KPMG LLP*, 476 F.3d 756, 766 (9th Cir. 2007).

16  Critically, Plaintiffs must establish personal jurisdiction for *each* claim asserted against each

17  defendant.  *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir.

18  2004).

19     **B.  Rule 12(b)(6)**

20        A complaint must be dismissed under Rule 12(b)(6) of the Federal Rules of Civil

21  Procedure unless it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief

22  that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.*

23  *v. Twombly*, 550 U.S. 544, 570 (2007)).  Although the Court accepts factual allegations as true for

24  purposes of this motion, this is "inapplicable to legal conclusions."  *Id.*  After stripping away all

25  "conclusory statements," the remaining factual allegations must do more than "create[] a

26  suspicion of a legally cognizable right of action"; they must "raise a right to relief above the

27  speculative level."  *Twombly*, 550 U.S. at 555 (citation omitted).  To make this "context-specific"

28  determination, the Court must "draw on its judicial experience and common sense."  *Iqbal*, 556

1   U.S. at 679.   This analysis serves a critical gatekeeping function, ensuring that claims are

2   sufficiently plausible "such that it is not unfair to require the opposing party to be subjected to the

3   expense of discovery and continued litigation."   *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir.

4   2011).

5   **C. Rule 9(b)**

6        Federal Rule of Civil Procedure 9(b) requires the Plaintiffs to "state with particularity the

7   circumstances constituting fraud."  This standard specifically "appl[ies] to claims for violations of

8   the CLRA and UCL," as well as the FAL, where, as  here, based on a fraud theory.  *Kearns v.*

9   *Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d

10  1097, 1105 (9th Cir. 2003) ("[f]raud can be averred by specifically alleging fraud, or by alleging

11  facts that necessarily constitute fraud," even if allegations do not use word "fraud").   The

12  Complaint must specifically allege "the 'who, what, when, where, and how' of the misconduct

13  charged," *Kearns*, 567 F.3d at 1124 (citations omitted), and "the time, place, and specific content

14  of the false representations," *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004)

15  (citations omitted).

16                          **IV.  ARGUMENTS AND AUTHORITIES**

17     **A.  The CAC must be dismissed for lack of personal jurisdiction under Rule 12(b)(2).**

18          **1.  Plaintiffs have not pleaded any basis to invoke personal jurisdiction.**

19        Plaintiffs have not alleged any facts in the CAC to justify their request that the Court

20  exercise personal jurisdiction over Defendants to adjudicate claims on behalf of non-California

21  consumers based on non-California sales.  *See* CAC ¶¶ 16–17 (alleging existence of subject

22  matter jurisdiction, but never mentioning personal jurisdiction and including boilerplate regarding

23  contacts with the forum). The absence of a pleaded jurisdictional basis disregards years of

24  precedent.  *See, e.g.*,  *Swartz*, 476 F.3d at 766 (bare bones assertions of minimum contacts or

25  legal conclusions unsupported by specific factual allegations do not satisfy pleading burden);

26  *Dole Food, Inc. v. Watts*, 303 F.3d 1104, 1108 (9th Cir. 2002) (similar).  The failure to plead any

27  jurisdictional facts is particularly striking because Plaintiffs are "on notice" of the Supreme

28  Court's *Bristol-Myers* admonition that the jurisdictional standard is truly strict, and requires them

to come forward with facts showing *why* Defendants' contacts with California allow the out-of-staters' claims to be adjudicated here. *Bristol-Meyers*, 137 S. Ct. at 1785–86.

Simply put, the case must be dismissed because there are no allegations in the CAC tying Defendants to California. All Plaintiffs do is parrot the boilerplate that the Ninth Circuit says is never sufficient. *Compare Swartz*, 476 F.3d at 766 (dismissing claims where complaint contained insufficient conclusory allegations that defendant "directed communication into [the forum state] and otherwise conducted business therein sufficient to establish minimum contacts") *with* CAC ¶ 17. Indeed, the only *non-boilerplate*, factual allegations in the CAC that bear on personal jurisdiction actually spotlight the absence of Defendants' contacts with California: Plaintiffs concede that Defendants are incorporated in Delaware and have their principal place of business in Texas. CAC ¶¶ 7–8. Based on this failure alone, each cause of action in the CAC must be dismissed.[4]

**2. The *Bristol-Myers* Limitation Is a Clear, Rigid, and On-Point Bar to Personal Jurisdiction.**

On June 19, 2017, the Supreme Court issued its decision in *Bristol-Myers*, reversing the California Supreme Court because it ran afoul of the strict limits on the courts' exercise of personal jurisdiction.[5] The new precedent strictly construed the specific jurisdiction doctrine, which exists only where there is "an affiliation between the forum and the underlying

---

[4] The failure to plead jurisdiction imperils the entire CAC, both because Plaintiffs have no basis to proceed with any complaint that does not meet that constitutional prerequisite, and because there is not a single count in the CAC that, standing alone, could possibly pass muster under *Bristol-Myers*, given that every claim is brought on behalf of non-California plaintiffs, without any effort to segregate those constitutionally-barred claims from the California claims. At the very least, all claims on behalf of non-California plaintiffs based on non-California sales of Canada Dry Ginger Ale must be dismissed.

[5] Plaintiffs do not even attempt to establish general jurisdiction, an excruciating standard that would require them to establish that Defendants' involvement in California is so "substantial" and "continuous and systematic" that they are as at home here as they are in their states of incorporation and principal place of business. *See Daimler AG v. Bauman*, 134 S. Ct. 746, 761-62 & n.20 (2014) (practically limiting general jurisdiction over corporations to entities incorporated within forum or with principal place of business in forum, and instructing that corporation's contacts are considered in light of entirety of business); *BNSF Railway Co. v. Tyrrell*, 137 S. Ct. 1549, 1559 (2017) ("[A] corporation that operates in many places can scarcely be deemed at home in all of them.").

controversy, principally, [an] activity or an occurrence that takes place in the forum State."

*Bristol-Myers*, 137 S. Ct. 1773, 1781 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).  Absent such a connection, "specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State."  *Id*

In *Bristol-Myers*, non-California residents' claims were asserted as part of a mass tort action in California against a manufacturer that was neither incorporated in California nor had its principal place of business there. *Bristol-Myers*, 137 S. Ct. at 1778.  The Court drew a firm distinction between general and specific jurisdiction, rejecting California's "sliding scale approach" (which purported to lower the bar for specific jurisdiction as the defendant's unrelated contacts with the forum increased), criticizing it as a "loose and spurious form of general jurisdiction." *Id.* at 1781.  Rather, the Court explained, the Fourteenth Amendment prevented the trial court from exercising specific jurisdiction over the out-of-state claims because they lacked the necessary "affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State." *Id.* at 1780 (quoting *Goodyear*, 564 U.S. at 919).  The Supreme Court also made clear that the California court's exercise of jurisdiction over *Bristol-Myers* with respect to claims of California plaintiffs was *irrelevant*, providing no ancillary or other bootstrapped basis upon which the trial court could reach beyond state lines to adjudicate the out-of-state claims.  *Id.* ("The mere fact that other plaintiffs were prescribed, obtained, and ingested Plavix in California—and allegedly sustained the same injuries as did the nonresidents—d[id] not allow [California] to assert specific jurisdiction over the nonresidents' claims.").

*Bristol-Myers* is the most recent in a string of Supreme Court precedent intolerant of efforts to expand the constitutional bounds of personal jurisdiction.  Indeed, in every one of the last *six cases* addressing personal jurisdiction (all since 2011), the Supreme Court enforced the strict constitutional limits on a state's exercise of personal jurisdiction over a defendant.  For instance, in *Walder v. Fiore*, 134 S. Ct. 1115 (2014), the Supreme Court considered whether specific jurisdiction allowed a Georgia police officer to be sued in the District of Nevada for confiscating cash carried by two Nevada residents in an Atlanta airport en route back to Las

Vegas. *Id.* at 1119. The Ninth Circuit affirmed the lower court's exercise of personal jurisdiction on the rationale that the Georgia police officer was alleged to have "expressly aimed" conduct at Nevada residents. *Id.* at 1120. The Supreme Court reversed, holding that the Ninth Circuit's generous standard was fundamentally incompatible with the specific jurisdiction doctrine because, *inter alia*, it improperly focused on the plaintiffs' connections with the forum, rather than the defendant's (plaintiffs were Nevada residents in transit home to Nevada). *Id.* at 1121–22. The Court also cautioned that the defendant's contact must be with the forum state itself, not merely with residents who happen to live within the forum, *i.e.*, "the plaintiff cannot be the only link between the defendant and the forum." *Id.* at 1122. Just as here, an injury to a California resident is not sufficient in itself to create personal jurisdiction. *Id.* at 1122–23.[6]

Trial courts immediately reacted to *Bristol-Myers*. For instance, in *Siegfried v. Boehringer Ingelheim Pharmaceuticals, Inc.*, No. 4:16-CV-1942 CDP, 2017 WL 2778107 (E.D. Mo. June 27, 2017), the Missouri court dismissed the claims of 86 non-Missouri plaintiffs for lack of personal jurisdiction over a Delaware corporation with its principal place of business in Connecticut. *Id.* at *1. Citing *Bristol-Myers*, the court held that, because "nonresident plaintiffs did not ingest the drug in the forum, nor do they claim to have suffered resulting injuries in the forum[,] . . . [t]he personal injuries of the non-Missouri plaintiffs have no connection with Missouri." *Id.* at *5. The court also flatly rejected Plaintiffs' argument that similarities between the Missouri plaintiffs' claims and those of the out-of-staters somehow mattered. *Id.*

Other courts have similarly applied *Bristol-Myers* to ensure that they are only exercising personal jurisdiction over defendants where, with respect to every plaintiff's claim, there is a constitutionally sound basis to do so:

---

[6] The Supreme Court has taken a similarly strict approach to general jurisdiction. *See, e.g., Goodyear*, 564 U.S. at 919 (reaffirming distinction between general and specific jurisdiction, cautioning that general jurisdiction exists only where defendant's "affiliations with the state are so 'continuous and systematic' as to render them essentially at home in the forum state"); *Daimler*, 134 S. Ct. at 761–62 & n.20 (practically limiting general jurisdiction over corporations to those incorporated or with principal place of business in forum, with significance of corporation's contacts considered against the entirety of business); *BSNF Railway Co. v. Tyrrell*, 137 S. Ct. 1549, 1559 (2017) ("[A] corporation that operates in many places can scarcely be deemed at home in all of them.").

1        • *Plumbers' Local Union No. 690 Health Plan v. Apotex Corp.*, Civ. Action No. 16-
2            665, 2017 WL 3129147, at *9 (E.D. Penn. July 24, 2017) (dismissing *non-*
3            *Pennsylvania* class claims against out-of-state defendants whose only contact with
4            forum was selling products in Pennsylvania).

5        • *Jordan v. Bayer Corp*, No. 4:17-CV-865 (CEJ), 2017 WL 3006993, at *4 (E.D.
6            Mo. July 14, 2017) (dismissing claims of non-Missouri plaintiffs against non-
7            Missouri defendants, where, as here, the plaintiffs did not acquire product in
8            Missouri, were not injured or treated in Missouri, and defendants did not develop,
9            manufacture, label, etc. the product in Missouri).

10       • *Ergon Oil Purchasing, Inc. v. Canal Barge Co., Inc.*, No. CV 16-5884, 2017 WL
11           2730853, at *1 (E.D. La. June 26, 2017) (citing *Bristol-Myers* and holding that
12           court lacked personal jurisdiction over claims filed by Mississippi corporation
13           against Louisiana corporation).

14       • *Andrews v. Radiancy, Inc.*, No. 616CV1061ORL37GJK, 2017 WL 2692840, at *1
15           (M.D. Fla. June 22, 2017) (citing *Bristol-Myers* and holding that court lacked
16           personal jurisdiction over claims against out-of-state defendants).

17       • *Michael Blaes et al. v. Johnson & Johnson et al.*, Case No. 1422-CC09326-01,
18           22nd Judicial Circuit Court of Missouri, June 19, 2017 (declaring mistrial—the
19           day after *Bristol-Myers* decided—as to claims of out-of-state plaintiffs in light of
20           *Bristol-Myers*); *see* "J&J Talc Trial Derailed By High Court's Plavix Ruling,"
21           LAW        360,       June        19,        2017,       available       at
22           https://www.law360.com/california/articles/936293 (last accessed August 7,
23           2017).

24       • *Eagle Canyon Owners' Association v. Waste Management, Inc.*, No. 16-cv-2811-
25           LAB (WVG), 2017 WL 3017501, at *4–5 (S.D. Cal. July 13, 2017) (citing *Bristol-*
26           *Myers* and holding that court lacked personal jurisdiction over out-of-state
27           defendant).

28       Plaintiffs have no way around *Bristol-Myers*. The facts and considerations critical to the

1   new Supreme Court precedent are all present here.  As a matter of law, this Court may not

2   exercise personal jurisdiction to resolve any non-residents' claims, against these non-resident

3   Defendants, all seeking redress for out-of-state sales of beverages.  *See Bristol-Myers*, 137 S. Ct.

4   at 1781 (court cannot exercise jurisdiction where "the nonresidents were not prescribed Plavix in

5   California, did not purchase Plavix in California, did not ingest Plavix in California, and were not

6   injured by Plavix in California").[7]  There is nothing ambiguous about the new precedent, as is

7   clear from the mounting decisions of other courts recognizing that *Bristol-Myers* necessitates

8   dismissal of such analogous, out-of-state claims.[8]

9       **3. Alternatively, the Court Should Strike the Constitutionally Impermissible**

10      **Nationwide Class Allegations Under Rule 12(f).**

11          In the alternative, Defendants move to strike under Rule 12(f) Plaintiffs' impermissibly

12  broad claim to sue on behalf of a "nationwide" class of consumers, as alleged in Paragraph 72 of

13  the CAC.  Rule 12(f) permits courts to strike from a pleading "any redundant, immaterial,

14  impertinent, or scandalous matter."  FED. R. CIV. P. 12(f).  A motion to strike "avoid[s] the

15  expenditure of time and money that must arise from litigating spurious issues by dispensing with

16  those issues prior to trial."  *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir.

17  1983).

18          During colloquy with counsel at the April 19, 2017 hearing on the prior motion to strike,

19  *see* ECF Docket #17, the Court acknowledged that—even before *Bristol-Myers*—"the challenges

20

21          [7] For the same reasons, the Court clearly lacks general jurisdiction over Defendants.
22  Neither Defendant is incorporated in California, nor do they have their principal place of business
    in California, *see* CAC ¶¶ 7–8, and there is no allegation in the Complaint that Defendants have
23  such substantial and extensive contacts as to make them "at home" in California.  *Goodyear*, 564
    U.S. at 919.

24          [8] That the out-of-state plaintiffs' claims in *Bristol-Myers* were part of a "mass" action, and
25  here are part of a "class" action, is irrelevant to the jurisdictional analysis required for due
    process.  The law has been clear for years that the Rule 23 mechanism can never abridge or
26  expand substantive rights, meaning that claims seeking relief for non-California plaintiffs cannot
    pass constitutional muster simply because they are brought as a team effort by a representative, as
27  opposed to brought one at a time with their own names in the caption.  *See Cummings v. Connell*,
    402 F.3d 936, 944 (9th Cir. 2005) ("It is axiomatic that Rule 23 cannot 'abridge, enlarge or
28  modify any substantive right' of any party to the litigation." (quoting 28 U.S.C. § 2072)).

1   to a nationwide class might be very good challenges." *See* Apr. 19 Tr. at 3. The Court, however,

2   deferred consideration of that legal question as a case management matter, informing counsel that

3   it would rule on the question if raised on a motion for class certification under Rule 23. *Id.*

4         Now, in light of *Bristol-Myers*, there appears to be no basis for the Court to exercise

5   personal jurisdiction over Defendants with respect to the nationwide claims from the get go, much

6   less subject them to pretrial process, discovery, etc. from now until conclusion of Rule 23 motion

7   practice. The split of authority among California courts where some, like this Court, deferred

8   consideration of class definition questions, does not speak to this situation where there are

9   threshold questions as to the Court's personal jurisdiction over the defendants with respect to the

10   out-of-state claims. Now that such a jurisdictional question is clearly presented, and decisively

11   answered, by *Bristol-Myers*, there is no appropriate basis for this case to proceed on behalf of

12   non-residents. The constitutional problem is thus also a pragmatic one, *i.e.*, it would be a

13   profound waste of resources to take discovery of claims the Court cannot adjudicate, which is

14   precisely the sort of non-starter allegations that are properly taken off the table now under Rule

15   12(b)(2). *See Frenzel v. AliphCom*, 76 F. Supp. 3d 999, 1005, 1007–08 (N.D. Cal. 2014).

16   **B. The CAC Fails to State a Claim Based on DPSG's Website and Television**

17      **Advertising.**

18      **1. Plaintiffs Have Not Saved Their Non-Specific Advertising Claim.**

19         Like its predecessors, the CAC has not pleaded the challenge to DPSG's website and

20   television advertising with the particularity demanded by Rule 9(b). *See* FAC ¶¶ 43–44. *See*

21   *Katiki v. Taser Int'l, Inc.*, No. 12-CV-05519-NC, 2013 WL 163668, at *4 (N.D. Cal. Jan. 15,

22   2013) (Rule 9(b) requires particularized pleading of the "who, what, when, where, and why" of

23   the alleged fraud).[9] The Court gave Plaintiffs an opportunity to replead their non-class claims

24   based on DPSG's alleged television and website advertising to meet that standard. *See* Apr. 19

25   Tr. at 30.

26         [9] The CAC is "grounded in fraud," and thus subject to greater scrutiny under Rule 9(b),
because Plaintiffs repeatedly challenge the labels as "false, deceptive and misleading," and assert

27   a standalone "fraud" claim for the same alleged misconduct, *see, e.g.*, FAC ¶¶ 99–106 (Count

28   III); *see also Kearns*, 567 F.3d at 1124–25 (quoting *Vess*, 317 F.3d at 1105).

1    The CAC still fails to meet that standard —not just because of insufficient drafting, but

2    also because it is clear that the allegations regarding the commercials and website were not

3    materially relevant to these Plaintiffs' purchasing decisions.  For starters, Plaintiffs' allegations

4    about the allegedly fraudulent television advertising consist simply of counsel's summary of a

5    "commercial [that] can be found on the internet" (in particular, "YouTube") that depicts a

6    fictional harvest on "Jack's Ginger Farm."  *See* CAC ¶ 44.  According to the CAC, when

7    someone (the pleading does not identify *who*) "last accessed" YouTube on May 9, 2017, he or she

8    came across at least *four different* commercials set on Jack's farm.  *Id.* Plaintiffs further surmise

9    that those various commercials were aired "at least as early" as either 2011, 2013, and/or 2014,

10   depending on the commercial.  *Id.*  These allegations wholly fail to explain *which* commercials in

11   particular were aired, *when* the commercials were aired (other than a blatantly non-particularized

12   pleading of "no earlier date"), and *where* the commercials were allegedly broadcast.

13   Ms. Dale does not allege anything whatsoever about commercials, and the allegations

14   with respect to Plaintiff Fitzhenry-Russell's reliance plainly fall short of Rule 9(b).  Ms.

15   Fitzhenry-Russell claims to have "viewed" the advertisements referenced in Paragraph 44, but she

16   does not say *which* of the four referenced YouTube examples she personally saw.  CAC ¶ 58.

17   Nor does she plead *when* she supposedly was defrauded by never-specified commercials.  *Id.*[10]

18   All she alleges is that, "on at least five occasions over the past five years," she saw one and/or

19   more of them, and that "at least one time approximately one year ago" she recalls seeing an ad

20   with a "voice-over" narrative.  *See id.*  Such vague allegations are surely insufficient to satisfy

21   Rule 9(b).  *See Hall v. Bristol-Myers Squibb, Co.*, 2009 WL 5206144, at *9 (D.N.J. Dec. 30,

22   2009) (dismissing false advertising claim for failure to allege causation where complaint did not

23   specifically identify *which* advertisements plaintiffs viewed, or *when* they were relied upon).

24   If Rule 9(b) means anything, it at least requires a plaintiff who claims to have been

25   fraudulently deceived by a statement in an advertisement —and then induced into purchasing "in

26

27   ───────────────
     [10]  The CAC does not even allege facts to buttress the blithe assertion that numerous

28   commercials were aired "in California and Colorado," much less on which dates any were aired
     in the media market where Ms. Fitzhenry-Russell resides.  *See* CAC ¶ 44.

1    reliance upon the truthfulness of the claims in th[at] advertisement"—to come forward with

2    something more particular than that "approximately one year ago" she was defrauded by the

3    never-specified statements.  CAC ¶ 58.  This is not a trivial problem.  Because Ms. Fitzhenry-

4    Russell's claims require causation—which, in a misrepresentation case, is tethered to the reliance

5    element—Rule 9(b) requires her to plead *what* she purchased and *when* she allegedly did so at an

6    inflated price in reliance on *which* particular statement.  *Compare* CAC ¶ 58 *with Katiki*, 2013

7    WL 163668, at *4 (dismissing complaint where, as here, plaintiff failed to specify when she

8    viewed false advertisement, and which statements she relied upon).  Ms. Fitzhenry-Russell's

9    failure to identify with particularity when and what advertisement she viewed thwarts any critical

10   examination of which particular statements in such advertisement she alleges she was deceived

11   by, and whether she actually and reasonably relied on them, let alone whether a *reasonable*

12   *consumer* would reasonably rely and be deceived by such statements.

13          The allegations about the Canada Dry website are similarly meaningless. Neither Plaintiff

14   alleges that she even once *actually visited* the website, much less read and relied on anything on

15   the internet in connection with her purchases.  *See* CAC ¶¶ 43, 57–71 (describing what counsel

16   saw on www.canadadry.com, including a "screenshot," but never alleging that any Plaintiff

17   actually visited that website).[11]   As a matter of law, a never-read website, like a never-read

18   statement, cannot fraudulently deceive anyone.  *See Buckland v. Threshold Enter., Ltd.*, 155 Cal.

19   App. 4th 798, 410 (2007) ("[P]laintiffs asserting CLRA claims sounding in fraud must establish

20   that they actually relied on the relevant representations or omissions.").[12]  Indeed, Plaintiffs have

21

22          [11] As with the television commercials researched on YouTube, the only specific dates in
23   the CAC concerning the website are those when some unspecified person "last accessed" the
     website.

24          [12] *See also Backhaut v. Apple, Inc.*, 74 F. Supp. 3d 1033, 1047 (N.D. Cal. 2014)
25   ("California courts have held that when the 'unfair competition' underlying a plaintiff's UCL
     claim consists of a defendant's misrepresentation or omission, a plaintiff must have actually
26   relied on the misrepresentation or omission, and suffered economic injury as a result of that
     reliance, to have standing to sue.") (emphasis added)); *Cattie v. Wal-Mart Stores, Inc.*, 504 F.
27   Supp. 2d 939, 948 (S.D. Cal. 2007) (dismissing UCL claim alleging that thread count of linens
     was lower than advertised where plaintiff admitted she did not rely on any alleged
28   misrepresentation when making her purchase); *Laster v. T-Mobile USA, Inc.*, 407 F. Supp. 2d

1   not only failed to state any claim against the website, they have failed to establish their standing

2   to even assert one. *See Ham v. Hain Celestial Grp., Inc.*, 70 F. Supp. 3d 1188, 1197 (N.D. Cal.

3   2014) (holding plaintiff lacked standing to challenge advertisements she never saw).

4   **2. "Jack's Ginger Farm" TV Advertisements Are Inactionable Puffery.**

5   Even assuming (incorrectly) that Ms. Fitzhenry-Russell did view and rely on one of the

6   television commercials found on YouTube, the CAC does not allege anything actionable about

7   them. *See* CAC ¶ 44. The CAC's summary of the commercials is textbook "puffery." As a

8   matter of law, "no reasonable consumer relies on puffery" like obviously tongue-in-cheek

9   depictions of farmers pulling bottles of carbonated ginger ale from the ground. *See Stickrath v.*

10  *Globalstar, Inc.*, 527 F. Supp. 2d 992, 998, 1000 (N.D. Cal. 2007) (quoting *Williams v. Gerber*

11  *Prods. Co.*, 439 F. Supp. 2d 1112, 1115 (S.D. Cal. 2006)). These commercials do not promise

12  anything in particular about Canada Dry Ginger Ale, much less amount to the sort of concrete and

13  false product statement necessary for a sustainable fraud claim. *See People for the Ethical*

14  *Treatment of Animals v. Whole Foods Market Cal. Inc.*, No. 15-cv-04301 NC, 2016 WL

15  1642577, at *2 (N.D. Cal. Apr. 26, 2016) (dismissing complaint based on marketing "puffery"

16  where, as here, complaint contained no pleaded facts that defendant advertised products as having

17  characteristics they lacked). Here, Plaintiffs point to nothing more than fanciful imagery, and the

18  notion that a *reasonable* consumer might infer, from a farmer pulling bottles of ginger ale out of

19  the ground, that the bottle contains a specific quantum of ginger root (or some amount of ginger

20  powder) is a mockery of the "*reasonable*" consumer standard. *See McKinnis v. Kellogg USA*, No.

21  CV-2611 ABC, 2007 WL 4766060, at *4 (C.D. Cal. Sept. 19, 2007). It simply does not make

22  "common sense." *See Twombly*, 550 U.S. at 555.

23  **C. Plaintiffs' FDA Labeling Claims Are Preempted and Also Fail for Other Reasons.**

24  The CAC asserts that the "Made From Real Ginger" label is misleading because Canada

25  Dry Ginger Ale contains a "chemical flavoring compound designed to mimic the taste of real

26  ginger," not "the spice made by chopping or powdering the root of the ginger plant." *See* CAC

27  ─────────────────────────

28  1181, 1183 (S.D. Cal. 2005) (dismissing false advertising claim where "none of the named
    Plaintiffs allege that they saw, read, or in any way relied on the advertisements").

¶¶ 23, 28, 39–40.  They also challenge the disclosure of Canada Dry Ginger Ale's "natural flavors," claiming the label concealed that the beverages were crafted from an "isolated compound" and/or a "chemical compound" that is a "flavoring substance."  *Id.*  In so doing, Plaintiffs attempt to impose a rule—not imposed by the FDA—that to list natural flavors on the label, such as those "made from real ginger," the beverage must actually contain an unspecified amount of a chopped or powdered version of the substance.  *See id.*  Because Plaintiffs' core falsity theory now rests on natural labeling criteria that differs from the FDA's requirements for natural flavoring, their claims are all preempted.

Under the Supremacy Clause of the United States Constitution, federal law preempts state law when "(1) Congress enacts a statute that explicitly pre-empts state law; (2) state law actually conflicts with federal law; or (3) federal law occupies a legislative field to such an extent that it is reasonable to conclude that Congress left no room for state regulation in that field."  *Chae v. SLM Corp.*, 593 F.3d 936, 941 (9th Cir. 2010).  The FDCA, as amended by the NLEA, explicitly provides that, "no State or political subdivision of a State may directly or indirectly establish under any authority or continue in effect as to any food in interstate commerce . . . (3) any requirement for the labeling of food of the type required by section 343(b), 343(d), 343(f), 343(h), 343(i)(1), or 343(k) of this title that is not *identical* to the requirement of such section . . . ."  21 U.S.C. § 343-1(a)(3) (emphasis added).  Courts find express preemption in the food labeling context when: (1) the FDA's labeling requirements are clear; and (2) the label in question complies with the FDA's requirements "such that plaintiff necessarily seeks to enforce requirements in excess of what the FDCA, NLEA, and the implementing regulations require."  *Reese v. Odwalla, Inc.*, No. 13-CV-00947-YGR, 2017 WL 565095, at *3 (N.D. Cal. Feb. 13, 2017) (quoting *Ivie v. Kraft Foods Glob., Inc.*, No. 12-CV-02554-RMW, 2013 WL 685372, at *8 (N.D. Cal. Feb. 25, 2013)).

The FDA has specifically promulgated regulations dealing with flavor labeling, pursuant to 21 U.S.C. § 343(k).  Plaintiffs concede that the FDA's "flavor labeling" regulations are set out

at 21 C.F.R. § 101.22,[13] which explicitly defines "artificially flavored" and "natural flavor" and when each must be used. *See* CAC ¶ 27. Specifically, as a matter of law, "natural flavor" is "the essential oil, oleoresin, essence or extractive . . . which contains the flavoring constituents derived from a spice, fruit or fruit juice, vegetable or vegetable juice, edible yeast, herb, bark, bud, root, leaf or similar plant material . . . whose significant function in food is flavoring rather than nutritional." *See* 21 C.F.R. § 101.22. By contrast, as a matter of law, "artificial flavor" is "any substance, the function of which is to impart flavor, which is not derived from a spice, fruit or fruit juice, vegetable or vegetable juice, edible yeast, herb, bark, bud, root, leaf or similar plant material, meat, fish, poultry, eggs, dairy products, or fermentation products thereof." *Id.*

Although it is not clear what Plaintiffs are claiming, they do not assert that DPSG violated the FDA's flavor-labeling regulations. That is, the CAC does not dispute that Canada Dry Ginger Ale is appropriately labeled under the FDA's hyper-specific "natural flavor" regulations, nor that further describing those flavors as "Made from Real Ginger" in any other respect runs afoul of the regulations. Instead, Plaintiffs attempt to impose requirements that are both inconsistent with, and also go beyond, those regulations. For instance, Plaintiffs claim that the label is false or misleading because Canada Dry Ginger Ale contains undisclosed artificial flavors—what they describe variously as a "chemical flavoring compound," and/or an "extraction" and/or "isolated compound" that is a "flavoring substance" intended to "mimic" the flavor of ginger. CAC ¶¶ 28, 39. That flatly contradicts the FDA regulation that a "deriv[ative]" from ginger (which is a "root, leaf or similar plant material") used to flavor a product shall be described as "natural"—and that such flavoring does *not* fit the FDA's definition of "artificial." *See* 21 C.F.R. § 101.22. Nor do the FDA's "natural flavor" regulations require that the beverage contain any quantum of "the spice made by chopping or powdering the root of the ginger plant." *Compare id. with* CAC ¶¶ 23, 28, 39–40. Even if an individual consumer subjectively did expect some amount of chopped/powdered spice in a carbonated beverage (however unreasonably), to sustain a state law

---

[13] Plaintiffs erroneously cite 21 C.F.R. § 501.22, which governs flavor labeling for food meant to be consumed by *animals*. *See* CAC ¶ 27. 21 C.F.R. § 101.22 contains the flavor-labeling requirements for food for humans. *See* 21 C.F.R. Subchapter B.

claim against an FDA-compliant label on that basis would impermissibly impose a requirement "in excess of what the [FDA] regulations require." *See Reese*, 2017 WL 565095, at *3. Similarly preempted are Plaintiffs' attempts to impose still additional, and different, beverage labeling requirements and terminology by claiming that an FDA-compliant "natural" label is unlawful in California because it fails to additionally disclose the use of "chemical flavoring compounds," "flavoring compounds," etc. (even incorrectly assuming such pejoratives are remotely accurate descriptions of the beverage). *See Hendricks v. StarKist Co.*, 30 F. Supp. 3d 917, 926–27 (N.D. Cal. 2014) ("[N]o state may establish a requirement for food that is not identical to an FDA-established standard of identity." (citing 21 U.S.C. § 343-1(a)(1))).[14]

Alternatively, even if some portion of the CAC is not preempted, Plaintiffs blithely fail to clearly identify *which* FDA regulations they allege were violated, and *why*. *See* CAC ¶¶ 38, 110. Even if Plaintiffs *could* point to a violation, merely identifying a technical violation is insufficient to state a claim for relief. It is well settled that California's consumer protection statutes do not impose strict liability for technical violations. *See Pratt v. Whole Foods Market Cal. Inc.*, No. 5:12-CV-05652-EJD, 2015 WL 5770799, at *4–5 (N.D. Cal. Sept. 30, 2015); *cf. Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549–50 (2016) (mere violation of procedural right granted by statute is alone insufficient to constitute actionable injury absent concrete harm). Rather, Plaintiffs are still required to allege, and here, have failed to allege, that reasonable consumers would likely be deceived by and would rely upon the kind of mislabeling addressed by the specific FDA regulation in question. *See Swearingen v. Amazon Partners, Inc.*, No. 13-CV-4402-WHO, 2014 WL 1100944, at *2 (N.D. Cal. Mar. 18, 2014).

## V. CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiffs' Consolidated Amended Complaint with prejudice.[15]

---

[14] Plaintiffs cannot avoid preemption by *conceding* that "no state imposes different requirements on the labeling of packaged food for sale in the United States." CAC ¶ 29. That acknowledgment is puzzling in a CAC that, at its core, seeks to impose liability for different and additional requirements on the labeling of Canada Dry Ginger Ale.

[15] As noted *supra*, Plaintiffs previously amended their complaints in *Fitzhenry* and *Hashemi*, and have now filed the operative Consolidated Amended Complaint—the fifth pleading

1   DATED:  August 18, 2017                By: /s/ *Jonathan A. Shapiro*

2

3                                          **BAKER BOTTS L.L.P.**
                                           Jonathan A. Shapiro (SBN# 257199)
                                           jonathan.shapiro@bakerbotts.com
4                                          101 California Street, Suite 3600
                                           San Francisco, CA  94111
5                                          Telephone:     (415) 291-6204
                                           Facsimile:     (415) 2916304
6
                                           Van H. Beckwith (*pro hac vice*)
7                                          van.beckwith@bakerbotts.com
                                           Jessica E. Underwood (*pro hac vice*)
8                                          jessica.underwood@bakerbotts.com
                                           2001 Ross Avenue, Suite 600
9                                          Dallas, TX 75201-2980
                                           Telephone:     (214) 953-6500
10                                         Facsimile:     (214) 953-6503

11                                         Attorneys for Defendants
                                           DR PEPPER SNAPPLE GROUP, INC. AND
12                                         DR PEPPER/SEVEN UP, INC.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27   Defendants have had to address in some fashion. Plaintiffs have thus received repeated
28   opportunities to fix pleading deficiencies, and in fact were on notice of *every* argument upon
     which this latest motion is based.  Accordingly, Defendants oppose further amendment.

**DEFENDANTS' MEMORANDUM**                   - 19 -                **CASE NO. 5:17-CV-00564-NC**
**IN SUPPORT OF MOTION TO DISMISS CAC**

1

## **CERTIFICATE OF SERVICE**

2        I hereby certify that on August 18, 2017, I electronically filed the above document with

3    the U.S. District Court for the Northern District of California by using the CM/ECF system.  All

4    participants in the case are registered CM/ECF users who will be served by the CM/ECF system.

5

6

7                                                  */s/ Jonathan A. Shapiro*_____
                                                    Jonathan A. Shapiro

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28