1    **GUTRIDE SAFIER LLP**
     ADAM J. GUTRIDE (State Bar No. 181446)
2    SETH A. SAFIER (State Bar No. 197427)
     MARIE MCCRARY (State Bar No. 262670)
3    KRISTEN G. SIMPLICIO (State Bar No. 263291)
     100 Pine Street, Suite 1250
4    San Francisco, California 94114
     Telephone: (415) 639-9090
5    Facsimile: (415) 449-6469
6
7    Attorneys for Plaintiffs, JACKIE FITZHENRY-RUSSELL
     AND ROBIN DALE
8
                    UNITED STATES DISTRICT COURT
9             FOR THE NORTHERN DISTRICT OF CALIFORNIA

10
     JACKIE FITZHENRY-RUSSELL AND
11   ROBIN DALE, on behalf of themselves and          Case No. 5:17-CV-00564 NC
     all others similarly situated,
12                                                     **PLAINTIFFS' OPPOSITION TO**
         Plaintiffs,                                   **DEFENDANTS' MOTION TO DISMISS**
13                                                     **CONSOLIDATED AMENDED**
                                                       **COMPLAINT UNDER RULES 12(b)(2)**
14           v.                                        **12(b)(6) AND 9(b), OR ALTERNATIVELY**
                                                       **MOTION TO STRIKE UNDER RULE 12(f)**
15   DR PEPPER SNAPPLE GROUP, INC., DR
     PEPPER/SEVEN UP, INC., and DOES 1-               Date: July 26, 2017
16   50,                                               Ctrm: 7, 4th Floor
                                                       Time: 1:00 PM
17       Defendants.                                   Judge: Hon. Nathanael Cousins
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................... 1

II.     STATEMENT OF FACTS ...................................................................... 3

        A.      Defendants' Misleading Labels and Advertisements. ............................. 3

        B.      The Court Denied in Part and Granted in Part Defendants' Previous Motion
                to Dismiss............................................................................................... 4

III.    ARGUMENT........................................................................................... 5

        A.      The Court Has Personal Jurisdiction Over Plaintiffs and The Class Action. .......... 5

                1.      Plaintiffs Have Established Personal Jurisdiction Over Defendants. .......... 5

                2.      Because the Court Has Personal Jurisdiction Over Named-
                        Plaintiffs' Claims, the Court Has Personal Jurisdiction Over the
                        Class Claims. ............................................................................. 6

                3.      *Bristol-Myers* Does Not Alter The Personal Jurisdiction Analysis
                        For This Case. ............................................................................ 7

        B.      Plaintiffs Adequately Stated Claims Based on Defendants' Website and
                Television Advertising............................................................................ 12

                2.      Plaintiffs Sufficiently Pleaded a Longstanding Advertising
                        Campaign................................................................................. 17

                3.      Defendants' Advertisements Are Not Puffery............................. 18

        C.      Plaintiffs' Claims Are Not Preempted by the FDA............................... 20

        D.      If The Court Is Inclined to Grant Defendant's Motion to Dismiss in Any
                Respect, Plaintiffs Respectfully Request Leave to Amend. ................. 24

IV.     CONCLUSION...................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Abraham v. St. Croix Renaissance Grp., L.L.L.P*, 719 F.3d 270 (3d Cir. 2013) ........................... 8

*AM Tr. v. UBS AG*, 78 F. Supp. 3d 977 (N.D. Cal. 2015), *aff'd*,
   681 F. App'x 587 (9th Cir. 2017)........................................................................................... 7

*Ambriz v. Coca Cola Co.*, No. 13-CV-03539-JST, 2014 WL 296159 (N.D. Cal. Jan. 27, 2014) ... 7

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)........................................................................................... 5

*Astiana v. Ben & Jerry's Homemade, Inc.*, No. C 10-4387 PJH, 2011 WL 2111796
   (N.D. Cal. May 26, 2011) ...............................................................................14, 15, 21, 22

*Beach v. Citigroup Alternative Investments LLC*, No. 12 CIV. 7717 PKC, 2014 WL 904650
   (S.D.N.Y. Mar. 7, 2014).................................................................................................. 7

*Bell Atlantic. Corp. v. Twombly*, 550 U.S. 544 (2007)................................................................... 5

*Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*,
   137 S. Ct. 1773 (2017)................................................................................1, 5, 7, 11

*Bruaner v. MusclePharm Corp.*, No. CV148869FMOAGRX, 2015 WL 4747941
   (C.D. Cal. Aug. 11, 2015) ............................................................................................. 23

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985)................................................................. 9

*Callaghan v. BMW of N. Am., LLC*, 2014 WL 1340085 (N.D. Cal. Apr. 2, 2014)...................... 16

*Clancy v. The Bromley Tea Co.*, 2013 WL 4081632 (N.D. Cal. Aug. 9, 2013) ........................... 16

*Cooper v. S. Co.*, 390 F.3d 695 (11th Cir. 2004) ........................................................................ 9

*Cox v. TeleTech@Home, Inc.*, No. 1:14-CV-00993, 2015 WL 500593 (N.D. Ohio Feb. 5, 2015). 9

*Cummings v. Connell*, 402 F.3d 936 (9th Cir. 2005)..................................................................... 9

*DeSoto v. Yellow Freight Sys.*, 957 F.2d 655 (9th Cir. 1992)....................................................... 24

*Ethanol Partners Accredited v. Wiener, Zuckerbrot, Weiss & Brecher*, 635 F. Supp. 15
   (E.D. Pa. 1985) ......................................................................................................... 12

*Fed. Trade Comm'n v. Lunada Biomedical, Inc.*, No. CV-15-3380-MWF (PLA),
   2016 WL 4698938 (C.D. Cal. Feb. 23, 2016)....................................................................... 13

*Gammel v. Hewlett-Packard Co.*, 905 F. Supp. 2d 1052 (C.D. Cal. 2012) .................................. 20

*Ham v. Hain Celestial Grp., Inc.*, 70 F. Supp. 3d 1188 (N.D. Cal. 2014)............................. 14, 15

*Hansberry v. Lee*, 311 U.S. 32 (1940)........................................................................................ 10

*Hanson v. Denckla*, 357 U.S. 235 (1958) ................................................................................. 11

*In re 5-hour ENERGY Mktg. & Sales Practices Litig.*, No. MDL 13-2438 PSG PLAX,
2014 WL 5311272 (C.D. Cal. Sept. 4, 2014) ........................................................................... 22

*In re DirecTV Early Cancellation Litig.*, 738 F. Supp. 2d 1062 (C.D. Cal. 2010) ........................ 8

*In re N. Dist. of California Dalkon Shield IUD Prod. Liab. Litig.*, 526 F. Supp. 887
(N.D. Cal. 1981) ..................................................................................................................... 7

*In re Quaker Oats Labeling Litig.*, No. C 10-0502 RS, 2012 WL 1034532
(N.D. Cal. Mar. 28, 2012) ................................................................................................ 21, 22

*In re Tobacco II cases*, 46 Cal.4th 298 (2009) ........................................................................... 17

*Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2009) ......................................................... 13

*King v. Am. Family Mut. Ins. Co.*, 632 F.3d 570 (9th Cir. 2011) ................................................. 12

*Kitazato v. Black Diamond Hosp. Investments*, LLC, No. CIV.09-00271DAE-LEK,
2009 WL 3209298 (D. Haw. Oct. 6, 2009) ............................................................................... 9

*Krommenhock v. Post Foods*, LLC, No. 16-CV-04958-WHO, 2017 WL 2378029
(N.D. Cal. June 1, 2017) ......................................................................................................... 22

*L.A. Taxi Coop., Inc. v. Uber Techs., Inc.*, 114 F. Supp. 3d 852 (N.D. Cal. 2015)...................... 20

*Lilly v. Jamba Juice Co.*, 2013 WL 6070503 (N.D. Cal. Nov. 18, 2013) ..................................... 16

*Morgan v. Wallaby Yogurt Co., Inc.*, 2014 WL 1017879 (N.D. Cal. Mar. 13, 2014)................... 16

*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950)....................................... 7, 10

*Musgrave v. ICC/Marie Callender's Gourmet Prods. Div.*, 2015 WL 510919
(N.D. Cal. Feb. 5, 2015).......................................................................................................... 17

*Mut. Int'l Exp. Co. v. Napco Indus., Inc.*, 316 F.2d 393 (D.C. Cir. 1963) .................................... 11

*Nat. Wellness Centers of Am., Inc. v. Golden Health Prod., Inc.*, No. C 12-05586 CW,
2013 WL 245594 (N.D. Cal. Jan. 22, 2013) .............................................................................. 6

*Nat'l Fair Hous. All. v. A.G. Spanos Const., Inc.*, 542 F. Supp. 2d 1054 (N.D. Cal. 2008) .......... 10

*Newcal Indus., Inc. v. Ikon Office Solution*, 513 F.3d 1038 (9th Cir. 2008)................................. 19

*Opperman v. Path, Inc.*, 87 F. Supp. 3d 1018 (N.D. Cal. 2014)........................................... 17, 18

*Orlick v. Rawlings Sporting Goods Co.*, No. CV 12-6787-GHK (RZX),
2013 WL 12139142 (C.D. Cal. Feb. 20, 2013) .................................................................. 14, 15

*People for the Ethical Treatment of Animals v. Whole Foods Mkt. California, Inc.*, No. 15-CV-
04301 NC, 2016 WL 1642577 (N.D. Cal. Apr. 26, 2016)........................................................ 19

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985) .............................................................. 8, 9

*Pinker v. Roche Holdings Ltd.*, 292 F.3d 361 (3d Cir. 2002) ....................................................... 11

*POM Wonderful LLC v. Coca–Cola Co.*, 134 S. Ct. 2228 (2014) ................................................ 21

*Red v. Kraft Foods, Inc.*, 754 F. Supp. 2d 1137 (C.D. Cal. 2010) ............................................... 22

*Reid v. Johnson & Johnson*, 780 F.3d 952 (9th Cir. 2015)........................................................... 21

*Salazar v. Honest Tea, Inc.*, 74 F. Supp. 3d 1304 (E.D. Cal. 2014)....................................... 18, 19

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393 (9th Cir. 1986)..................... 24

*Sciortino v. Pepsico, Inc.*, 108 F. Supp. 3d 780 (N.D. Cal. 2015) ........................................ 20, 21

*Shinault v. Hawks*, 782 F.3d 1053 (9th Cir. 2015) ........................................................................ 8

*SKF Condition Monitoring, Inc. v. SAT Corp.*, No. 07CV1116BTMNLS, 2008 WL 706851
   (S.D. Cal. Feb. 27, 2008) ........................................................................................................... 5

*Supreme Tribe of Benhur v. Cauble*, 255 U.S. 356 (1921) ......................................................... 10

*Swearingen v. Yucatan Foods, L.P.*, 2014 WL 553537 (N.D. Cal. Feb. 7, 2014) ...................... 16

*Theranos, Inc. v. Fuisz Pharma LLC*, 876 F. Supp. 2d 1123 (N.D. Cal. 2012)............................. 5

*Trazo v. Nestle USA, Inc.*, 2013 WL 4083218 (N.D. Cal. Aug. 9, 2013).................................... 16

*United States v. Corinthian Colleges*, 655 F.3d 984 (9th Cir. 2011) ............................................ 5

*United States v. Trucking Emp., Inc.*, 72 F.R.D. 98 (D.D.C. 1976) ............................................ 10

*United States v. United Healthcare Ins. Co.*, 848 F.3d 1161 (9th Cir. 2016)....................... 13, 14

*Usher v. City of Los Angeles*, 828 F.2d 556 (9th Cir. 1987)......................................................... 5

*Vanity.com, Inc. v. Vanity Shop of Grand Forks, Inc.*, No. C 12-02912 SI, 2012 WL 4755041
   (N.D. Cal. Oct. 4, 2012)............................................................................................................. 6

*Vice v. Woodline USA, Inc.*, No. C 10-04103 CW, 2011 WL 207936 (N.D. Cal. Jan. 21, 2011) ... 6

*Von Koenig v. Snapple Beverage Corp.*, 713 F. Supp. 2d 1066 (E.D. Cal. 2010) ....................... 15

*Walling v. Beverly Enters.*, 476 F.2d 393 (9th Cir. 1973) ............................................................ 5

*Williams v. Gerber Products Co.*, 552 F.3d 934 (9th Cir. 2008) .......................................... 19, 23

*Zinermon v. Burch*, 494 U.S. 113 (1990)...................................................................................... 8

**Regulations**

21 C.F.R. § 100.1(c)(4)................................................................................................................ 21

## I.    INTRODUCTION

Having failed to secure dismissal of Plaintiffs' claims that the "MADE FROM REAL GINGER" label is misleading to reasonable consumers, Defendants Dr. Pepper Snapple Group, Inc., and Dr. Pepper/Seven Up, Inc. ("Defendants") manufacture some new theories for dismissal, none of which are availing. Defendants contend that under the Supreme Court's recent decision in *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S. Ct. 1773 (2017), this Court must dismiss the entire case for lack of personal jurisdiction. *Bristol-Myers* does not support them. In *Bristol-Myers*, the Court applied "settled principles regarding specific jurisdiction" to arrive at the unremarkable conclusion that *named plaintiffs* in a lawsuit cannot establish personal jurisdiction over a non-resident defendant unless their claims arise out of or relate to the defendant's contacts with the forum state. The Court dismissed the non-California *named plaintiffs* while permitting the California named plaintiffs to proceed with their claims relating to a drug defendant sold in California. Here, there is no doubt the named Plaintiffs satisfy the *Bristol-Myers* standard. All the named Plaintiffs are residents of California. All allege that Defendants have been selling their Canada Dry products throughout the state of California for years while engaging in extensive marketing and advertising to convince consumers that their products are "MADE FROM REAL GINGER." All Plaintiffs allege that these false and misleading marketing practices induced them to purchase Defendants' products in California, meaning their claims necessarily arise out of and relate to Defendants' contacts with the state. Since Jackie Fitzhenry-Russell and Robin Dale are the only named plaintiffs in this lawsuit, that ends the relevance of *Bristol-Myers*.

Defendants, however, desire the Court to interpret *Bristol-Myers* as requiring dismissal, at minimum, of all claims relating to non-California *absent class members*. But the longstanding rule in class actions is that the claims of absent class members are "irrelevant" to the question of personal jurisdiction. Rather, a court can exercise jurisdiction over the entire class action so long as it has jurisdiction over the claims of the named plaintiffs. This rule makes sense. After all, the absent class members do not "hale" the defendant into any court—the named plaintiffs do. Likewise, because the absent class members claims "rise or fall" with the merits of the named

plaintiffs' claims, defendants do not have to request documents from, propound interrogatories to, take the depositions of, or file any motions against any absent class member. Instead the defendant's interactions in the case are entirely with the named plaintiffs, who, as representatives of the class "stand-in" for the absent class members for all purposes—including jurisdiction. *Bristol-Myers*, which arose in the context of a mass action with hundreds of named, individual plaintiffs, rather than a class action with a few named plaintiffs and non-party absent class members, gave no indication that it changed the rules regarding personal jurisdiction in class cases. And Defendants gave no reason why it should be expanded beyond its context.

However, even if *Bristol-Myers* did apply to absent class members rather than just named plaintiffs, there is no reason to apply the rule in federal court. *Bristol-Myers* made clear that its personal jurisdiction holding was not based on any concepts of burdensomeness to the defendant, or "fair play and substantial justice." Rather, the ruling was "a consequence of territorial limitations on the power of the respective States" and that one state's sovereign power to try a cause of action in its courts "implies a limitation on the sovereignty of all its sister States." Those concerns are absent in federal court. Indeed, the Supreme Court expressly limited its holding to state courts, and did not answer whether the same result would obtain in federal court.

Defendants' other challenges to Plaintiffs' claims are equally unavailing. Defendants claim that Plaintiffs did not plead all the facts required by Rule 9(b) relating to Defendants' television advertisements, but that is not the case. Plaintiffs described each of the commercials in detail and, in fact, incorporated the entirety of the challenged advertisements into the complaint by providing links to websites where the advertisements could be viewed as they were originally broadcast. Plaintiff Fitzhenry-Russell also sufficiently alleged when she saw the advertisements, and that she relied on them because they reinforced her belief that Defendants' products were made from and contained real ginger. The allegations relating to Defendants' advertisements are more than sufficient to put Defendant "on notice" of what is being challenged.

Likewise, Defendants' assertion that Plaintiffs' claims are preempted by the FDA is meritless. Federal preemption of state law mislabeling claims is extremely narrow. A state law claim is preempted only where the FDA's regulations either require or specifically permit a

1  defendant to use the label plaintiffs challenge. No FDA regulation either requires or permits

2  Defendants to label their product as being "MADE FROM REAL GINGER." Accordingly

3  Plaintiffs' claims are not preempted.

4      For these reasons, and those discussed more fully below, Defendants' motions to dismiss

5  and to strike should be denied in full.

6  **II.     STATEMENT OF FACTS**

7      **A.     Defendants' Misleading Labels and Advertisements.**

8      Defendants manufacture, distribute, market, advertise, and sell in the United States,

9  including California, several types of ginger ale soft drinks under the brand name "Canada Dry"

10  (the "Products"). (CAC ¶ 21.) Defendants' packaging of the Products predominately, uniformly,

11  and consistently state on the principal display panel of the labels that they are "MADE FROM

12  REAL GINGER." (*Id.*) This representation leads reasonable consumers to believe that the

13  Products are made from, and contain, real ginger—i.e., the spice made by chopping or powdering

14  the root of the ginger plant. (*Id.* ¶¶ 2, 23, 35, 39, 40, 46.) However, the Products are not made

15  from real ginger but are instead made from "natural flavors"—a chemical compound designed to

16  mimic the taste of real ginger. (*Id.* ¶ 24.) Defendants do not disclose on the product labels that the

17  Products are made from a chemical compound that mimics the flavor of ginger. (*Id.* ¶ 40.)

18      Defendants' own longstanding advertising and marketing materials show that Defendants

19  intend to deceive consumers into believing that the Products contain real ginger. (*Id.* ¶ 42.)

20  Defendants' website emphasizes that the Products are "MADE FROM REAL GINGER." (*Id.*

21  ¶ 43.) Defendants have also broadcast their longstanding "Jack's Ginger Farm" television

22  advertisements since at least 2011. (*Id.* ¶ 44.) These commercials, which Defendants have

23  broadcast throughout the United States, including California, all depict Jack's Ginger Farm where

24  workers or other people pull up ginger plants by the stalk to discover Canada Dry Ginger Ale

25  where the ginger root would be located, and include a voice-over narration that claims "real

26  ginger, real taste." (*Id.*) The commercials are meant to capitalize on Defendants' representation

27  that the Products are "MADE FROM REAL GINGER" and reinforce reasonable consumers'

28  belief that Defendants' products are made from and contain real ginger. (*Id.* ¶¶ 44, 58).

-3-

Plaintiff Fitzhenry-Russell recalls viewing the Jack's Ginger Farm commercials on at least five occasions over the past five years and most recently approximately one year ago. (*Id.* ¶ 58). She saw each of the advertisements while watching television at her home. (*Id.*) The advertisements reinforced her belief that Defendants' Products were actually made from and contained real ginger and would provide the health benefits of ginger. (*Id.*) In particular, each advertisement's depiction of the Product being harvested on Jack's Ginger Farm and attached as the root of an actual ginger plant accompanied by voice-over claims about "real ginger" led her to believe that Defendants' Products were made from and contained real ginger and not a chemical flavoring compound. (*Id.*)

**B.     The Court Denied in Part and Granted in Part Defendants' Previous Motion to Dismiss.**

Defendants moved to dismiss Plaintiffs' original complaint on the grounds that Plaintiffs did not state an actionable misrepresentation, failed to plead fraud with particularity, lacked standing to seek injunctive relief, could not assert claims on behalf of a nationwide class, and asserted some claims barred by the applicable statutes of limitation. (ECF 16-1). On "the core issue of whether the assertion 'made from real ginger' can plausibly, using common sense, state a claim" the Court denied Defendants' motion. April 19, 2017 Hearing Tr. ("April Tr.") at 31:10–12. According to the Court, Plaintiffs plausibly and sufficiently pleaded a "false and misleading marketing case" based on Defendants' label. *Id.* at 31:13–25. The Court likewise denied Defendants' motion to dismiss on the issue of Article III standing and their motion to strike the nationwide class allegations. *Id.* at 31:25–32:1; 3:11–24.

The Court granted the motion only in part as to "'small,' meaning non-dispositive problems" that the Court determined were "potentially correctable" through re-pleading. *Id.* at 29:20–22. Those were on the "made from" vs. "made with" real ginger allegations in the complaint; greater particularity relating to the television advertisement and website claims; and a four-day time error in the statute of limitation period based upon a difference between the filing date and signature date of the complaint. *Id.* at 29:23–31:9. Plaintiffs re-pleaded these issues in the Consolidated Amended Complaint.

### III.    ARGUMENT

To survive a motion to dismiss, a complaint need only plead "enough facts to state a claim [for] relief that is plausible on its face." *Bell Atlantic. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *United States v. Corinthian Colleges*, 655 F.3d 984, 991 (9th Cir. 2011). "In determining whether sufficient facts are stated such that the claim is plausible, the court must presume all factual allegations are true and draw all reasonable inferences in favor of Plaintiff." *Theranos, Inc. v. Fuisz Pharma LLC*, 876 F. Supp. 2d 1123, 1136 (N.D. Cal. 2012) (citing *Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 678). Any existing ambiguities must be resolved in favor of the pleading. *Walling v. Beverly Enters.*, 476 F.2d 393, 396 (9th Cir. 1973).

### A.    The Court Has Personal Jurisdiction Over Plaintiffs and The Class Action.
#### 1.    Plaintiffs Have Established Personal Jurisdiction Over Defendants.

Defendants contend "Plaintiffs have not pleaded any basis to invoke personal jurisdiction" and that the entire "case must be dismissed because there are no allegations in the CAC tying Defendants to California." (ECF No. 74-1 at 6–7.) This is demonstrably incorrect, and a vast over-reach given that, *Bristol-Myers*, upon which Defendants so heavily rely, acknowledged that a California court could properly exercise specific jurisdiction over a non-resident defendant for the claims of California residents relating to the defendant's sale of a drug in California. *See Bristol-Myers*, 137 S. Ct. at 1782 (dismissing only the claims of non-resident named plaintiffs because they "are not California residents and do not claim to have suffered harm in that State."). Indeed, numerous courts agree that specific jurisdiction is satisfied when a defendant markets and sells products in California, and the plaintiffs' claims relate to those sales. *See, e.g.*, *SKF Condition Monitoring, Inc. v. SAT Corp.*, No. 07CV1116BTMNLS, 2008 WL 706851, at *2 (S.D. Cal. Feb. 27, 2008) ("[T]he Court concludes that it has specific jurisdiction over Defendant . . . . Plaintiff alleges that Defendant purposefully directed its activities toward the state of

1    California by selling the accused VIBTOOL product to California residents and also directing

2    marketing activities toward California residents.").[1]

3          Here, Plaintiffs easily satisfy the standard for specific jurisdiction. Plaintiffs allege that

4    Defendants purposefully availed themselves of the benefits of a California market by selling their

5    Canada Dry products to California residents over the course of many years; marketing those

6    products to California residents as being "MADE FROM REAL GINGER;" and broadcasting

7    television advertisements into California that reinforce the message that the Canada Dry products

8    are made from, and contain, real ginger. CAC ¶¶ 17, 21, 44, 57–69. Further, Plaintiffs claims

9    arise out of Defendants' business activities in the state of California because they claim that

10   Defendants' marketing and advertising of the Products as being  "MADE FROM REAL

11   GINGER" is misleading and caused them to lose money in the state of California. (*Id.*).[2]

12          **2.     Because the Court Has Personal Jurisdiction Over Named-Plaintiffs'
                      Claims, the Court Has Personal Jurisdiction Over the Class Claims.**

13          It is well-settled in this district that the "claims of unnamed class members are irrelevant

14   to the question of specific jurisdiction." *AM Tr. v. UBS AG*, 78 F. Supp. 3d 977, 986 (N.D. Cal.

---

[1] *See also Nat. Wellness Centers of Am., Inc. v. Golden Health Prod., Inc.*, No. C 12-05586 CW,
2013 WL 245594, at *5 (N.D. Cal. Jan. 22, 2013) ("Courts in this district have generally found it
reasonable to exercise jurisdiction over a foreign defendant on claims arising from that
defendant's commercial activity in California. Thus, Defendants' sales to California customers
support specific jurisdiction."); *Vanity.com, Inc. v. Vanity Shop of Grand Forks, Inc.*, No. C 12-
02912 SI, 2012 WL 4755041, at *3 (N.D. Cal. Oct. 4, 2012) ("Vanity Shop's contacts with
customers in California satisfies the "purposefully avails" standard articulated by the Ninth
Circuit. . . . Vanity Shop's sales and advertising constitute 1) intentional acts 2) expressly aimed at
California through its online interactive website that allegedly 3) harmed Vanity.com in the form
of economic loss from having its domain name misused in California."); *Vice v. Woodline USA,
Inc.*, No. C 10-04103 CW, 2011 WL 207936, at *4 (N.D. Cal. Jan. 21, 2011) ("Plaintiff's
infringement action arises out of Defendant's purposeful sale and shipment of the DADOMAX
into California, the exercise of specific jurisdiction is appropriate.").

[2] At a minimum, the entire case should not be dismissed until after Plaintiffs have the opportunity
to conduct jurisdictional discovery to determine the nature of Defendants' sales and marketing
activities in California. Jurisdictional discovery is appropriate where "pertinent facts bearing on
the question of jurisdiction are controverted or where a more satisfactory showing of the facts is
necessary." *Butcher's Union Local No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 540 (9th Cir. 1986);
*see also, e.g., Matrix Inc. v. Midthrust Imports Inc.*, No. CV1301278GAFSPX, 2013 WL
12132031, at *4 (C.D. Cal. May 2, 2013) (granting jurisdictional discovery into defendants'
"contacts with California related to the marketing and sale of the allegedly infringing garments.").

2015), *aff'd*, 681 F. App'x 587 (9th Cir. 2017). Rather, "[i]n an action brought as a class action, personal jurisdiction is based on a defendant's contacts with the forum state and actions giving rise to the *named plaintiffs*' causes of action." *Beach v. Citigroup Alternative Investments LLC*, No. 12 CIV. 7717 PKC, 2014 WL 904650, at *6 (S.D.N.Y. Mar. 7, 2014) (emphasis added); *see also In re N. Dist. of California Dalkon Shield IUD Prod. Liab. Litig.*, 526 F. Supp. 887, 907 (N.D. Cal. 1981) ("The rule is plain, therefore, that if members of a plaintiffs' class are adequately represented in a (b)(1) or (b)(2) class, a court may exercise personal jurisdiction if it has jurisdiction over the representative plaintiffs.") (citing *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, (1950)). So, although *Bristol-Myers* held that a California court could not exercise personal jurisdiction over non-resident *named plaintiffs* in a *mass action* against an out-of-state company because "all the conduct giving rise to the nonresidents' claims occurred elsewhere," *Bristol-Myers*, 137 S. Ct. at 1782, that rule is inapplicable to the *class action* here. "Simply put, it is the *named plaintiff's* claim that 'must arise out of or result from the defendant's forum-related activities,' not the claims of the unnamed members of the proposed class, who are not party to the litigation." *Ambriz v. Coca Cola Co.*, No. 13-CV-03539-JST, 2014 WL 296159, at *6 (N.D. Cal. Jan. 27, 2014) (emphasis added).[3]

### 3.    *Bristol-Myers* Does Not Alter The Personal Jurisdiction Analysis For This Case.

#### a.    *Bristol-Myers* Applies Only To Named Plaintiffs.

In *Bristol-Myers*, the Supreme Court acknowledged that it was not working any sea-change in personal jurisdiction jurisprudence. Rather, the Court determined that "settled principles regarding specific jurisdiction control this case." *Bristol-Myers*, 137 S. Ct. at 1781. The Court applied those "settled principles" and held that a named plaintiff in a lawsuit cannot hale a foreign defendant into a particular forum unless the defendant has had substantial enough contacts with the forum for it to exercise general jurisdiction, or the plaintiff's claims arise out of or relate to the defendant's contacts with that forum, which permits specific jurisdiction. *Id*. The Court

---

[3] Even if the Court adopts Defendants' interpretation of *Bristol-Myers*, that would at most require striking only the claims of non-California absent class members. As defendants acknowledge, Plaintiffs assert claims on behalf of a nationwide class and a California subclass. Defendants advance no reason why the claims on behalf of the California subclass should be dismissed.

never suggested or gave any indication that it was changing the standards that apply to class actions. Its entire reasoning related to mass tort actions—where hundreds of *individual* plaintiffs pursue their *individual* claims in a joint trial. There is no reason to extend *Bristol-Myers* to the class action context.

Defendants argue in a footnote that the fact "[t]hat the out-of-state plaintiffs' claims in *Bristol-Myers* were part of a 'mass' action, and here are part of a 'class' action, is irrelevant to the jurisdictional analysis required for due process." (ECF 74-1 at 11 n.8). But Defendants are wrong. The requirements for personal jurisdiction stem from the due process clause, and it is axiomatic that "[d]ue process 'is a flexible concept that varies with the particular situation.'" *Shinault v. Hawks*, 782 F.3d 1053, 1057 (9th Cir. 2015) (quoting *Zinermon v. Burch*, 494 U.S. 113, 127 (1990)). Thus, personal jurisdiction standards are stricter where the burden the lawsuit creates is higher. The Supreme Court explained this principle in *Phillips Petroleum Co. v. Shutts*, where it held that a court could exercise personal jurisdiction over absent class member claims "even though that plaintiff may not possess the minimum contacts with the forum which would support personal jurisdiction over a defendant" because class actions "place fewer burdens upon absent class plaintiffs than they do upon absent defendants in nonclass suits." 472 U.S. 797, 808 (1985). Thus, "the Due Process Clause need not and does not afford the former as much protection from state-court jurisdiction as it does the latter." *Id.* Similarly here, the burdens that *absent class members* place on a defendant in defending a *class action* are far less than the burdens that *named plaintiffs* place on a defendant in defending a *mass action*. Accordingly, there is no due process justification for extending the holding of *Bristol-Myers* to class actions.

"Unlike a class action, a mass action has *no representative or absent members* because all plaintiffs in a mass action are named in the complaint and propose a joint trial of their claims." *Abraham v. St. Croix Renaissance Grp., L.L.L.P*, 719 F.3d 270, 272 (3d Cir. 2013) (emphasis added). This can result in hundreds of individual claims. By contrast, "a class action is a *representative action* where a named plaintiff or plaintiffs represents a large number of *similarly situated people who are not a part of the lawsuit*." *In re DirecTV Early Cancellation Litig.*, 738 F. Supp. 2d 1062, 1072 (C.D. Cal. 2010). The "class representative functions as a stand-in for the

-8-

1   entire class and assumes duties on behalf of the class." *Cummings v. Connell*, 402 F.3d 936, 944

2   (9th Cir. 2005). Thus, unlike in a mass action, where each named plaintiff's claim stands or falls

3   on its own, "the class claims rise or fall with the claims of the class representative." *Cox v.*

4   *TeleTech@Home, Inc.*, No. 1:14-CV-00993, 2015 WL 500593, at *7 (N.D. Ohio Feb. 5, 2015);

5   *see also Cooper v. S. Co.*, 390 F.3d 695, 713 (11th Cir. 2004) ("Rule 23(a) is designed to ensure

6   that the common bond between the class representatives' claims and those of the class is strong

7   enough so that it is fair for the fortunes of the class members to rise or fall with the fortunes of the

8   class representatives."); *Kitazato v. Black Diamond Hosp. Investments*, LLC, No. CIV.09-

9   00271DAE-LEK, 2009 WL 3209298, at *6 (D. Haw. Oct. 6, 2009) ("[M]ass actions simply

10  concern the direct claims of individual plaintiffs.").

11       The basic fact that absent class members are not parties to the lawsuit and therefore are

12  not "haling" the defendant into any forum to defend against their claims makes all the difference

13  for purposes of analyzing personal jurisdiction. *See Burger King Corp. v. Rudzewicz*, 471 U.S.

14  462, 475 (1985) ("This 'purposeful availment' requirement ensures that a defendant will not be

15  haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts."). In

16  a mass action, a defendant must defend against each named-plaintiff's individual claims,

17  including propounding discovery requests individually, taking potentially hundreds of

18  depositions, and filing any dispositive motions against individual plaintiffs. In a class action,

19  defendants need only propound discovery on, take depositions of, and file dispositive motions

20  against a few named plaintiffs. Defendants do not have to take any actions with respect to the

21  claims of absent class members because, unlike a named plaintiff, "an absent class-action plaintiff

22  is not required to do anything." *Shutts*, 472 U.S. at 810.

23       Although absent class members may ultimately recover from a defendant if a class is

24  certified and the class representatives succeed on the merits of their claims, those absent class

25  members never assert claims against a defendant in a sense that matters for personal jurisdiction

26  purposes. It is the named plaintiffs who claim the defendant has engaged in wrong-doing and

27  force the defendant to answer the suit. It is the named plaintiffs who claim that the case meets the

28  standards for class certification under Rule 23 and require the defendant to respond. Therefore the

-9-

general rule that a court can exercise personal jurisdiction over a class action so long as it can exercise personal jurisdiction over the claims of the named plaintiff makes sense. Indeed, the same rule obtains with respect to *defendant classes*, meaning that defendants can have their liability determined by courts even if they do not possess the minimum contacts that would be necessary in a non-class lawsuit. *See Nat'l Fair Hous. All. v. A.G. Spanos Const., Inc.*, 542 F. Supp. 2d 1054, 1065–66 (N.D. Cal. 2008) ("[I]t is well settled that jurisdiction is not needed over absent members of a defendant class. Personal jurisdiction need not be proper as to the unnamed members of a defendant class, so long as it is proper as to all named defendant members.").

Defendants also obliquely suggest that not extending *Bristol-Myers* to the class action context would somehow violate the Rules Enabling Act, which provides that the Federal Rules of Civil Procedure cannot "abridge, enlarge or modify any substantive right of any party to the litigation." (ECF No. 74-1 at 11 n.8) (quoting 28 U.S.C. §2072(b)). This is also wrong. "Rule 23 is not altering any substantive rights: It has long been the law in the courts of the United States that in an otherwise proper class action suit, non-party members of the class need not be brought personally before the Court, as long as the requirements of due process . . . are afforded them. The class action thus stands as the outstanding exception to the general rule that one is not bound by a judgment in personam in litigation to which he/she has not been made a party by service of process." *United States v. Trucking Emp., Inc.*, 72 F.R.D. 98, 99–100 (D.D.C. 1976) (citing *Mullane*, 339 U.S. 306; *Supreme Tribe of Benhur v. Cauble*, 255 U.S. 356 (1921); and *Hansberry v. Lee*, 311 U.S. 32 (1940). As explained above, defendants' due process rights are more than adequately protected by requiring that named-plaintiffs' claims arise out of and relate to a defendant's contacts with the forum state, which means that applying a different jurisdictional standard to class actions and mass actions does not alter or abridge any substantive rights.[4]

---

[4] Defendants cite six cases purportedly applying *Bristol-Myers*, but of those six, only one is a class action: *Plumbers' Local Union No. 690 Health Plan v. Apotex Corp.*, Civ. Action No. 16-665, 2017 WL 3129147, at *9 (E.D. Penn. July 24, 2017). And there, the district court merely cited *Bristol-Myers* without suggesting that it worked any change specific to class actions. Further, although the court dismissed out of state claims it did not do so on the basis of *Bristol-Myers*, but by reference to two district of Illinois cases. And it seems, unlike in this district, there was no general rule that absent class member claims are irrelevant for jurisdictional purposes. Nor did that court have the benefit of the due process analysis Plaintiffs present here.

COMBINED OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS AND TO STRIKE

### b.   *Bristol-Myers* Does Not Apply To Federal Courts.

*Bristol-Myers* is also inapplicable to the claims here because the Supreme Court expressly limited its decision to the due process clause under the 14th Amendment, and thus to claims that proceed in state court—not federal court. Indeed, the Supreme Court specifically held that "since our decision concerns the due process limits on the exercise of specific jurisdiction by a State, we leave open the question whether the Fifth Amendment imposes the same restrictions on the exercise of personal jurisdiction by a federal court." *Bristol-Myers*, 137 S. Ct. at 1783–84. The Court's reservation is understandable, as the concerns that drove the majority's decision regarding state courts do not apply to federal courts.

*Bristol-Myers* made clear that the primary concern animating the decision was federalism and the territorial limits of state power. As the Court explained, "restrictions on personal jurisdiction are more than a guarantee of immunity from inconvenient or distant litigation. They are a consequence of territorial limitations on the power of the respective States." *Id.* at 1780. (internal quotations omitted). One state's sovereign power to try a cause of action in its courts "implies a limitation on the sovereignty of all its sister States." *Id.* And, as the Court concluded, "this federalism interest may be decisive . . . even if the defendant would suffer minimal or no inconvenience from being forced to litigate before the tribunals of another State . . . the Due Process Clause, acting as an instrument of interstate federalism, may sometimes act to divest the State of its power to render a valid judgment." *Id.*

However, "a federal court sits as a unit of the national government and, therefore, the territorial limitations that apply to the exercise of state court jurisdiction—or, for that matter, federal jurisdiction in diversity cases—are inapposite." *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 369 (3d Cir. 2002) (internal citation omitted); *see also Mut. Int'l Exp. Co. v. Napco Indus., Inc.*, 316 F.2d 393, 395 n.8 (D.C. Cir. 1963) ("Constitutionally, federal courts, because of their national character, are not inhibited in exercising their jurisdiction by state territorial limitations.") (citing *Hanson v. Denckla*, 357 U.S. 235, 251, (1958)). Because it "is the states rather than judicial districts within the federal court system whose jurisdiction is constrained in adjudicating parties who do not have the required minimum contacts[,] [i]t does not necessarily

-11-

follow that a party must have certain minimum contacts with the district in which the district

court sits before the district court can adjudicate matters relevant to the party." *Ethanol Partners*

*Accredited v. Wiener, Zuckerbrot, Weiss & Brecher*, 635 F. Supp. 15, 17 (E.D. Pa. 1985).

With the federalism concern of *Bristol-Myers* inapplicable to cases brought in federal

court, the key concern is whether it is fair for Defendant to defend a class action in California

where some absent class members are nonresidents. *See King v. Am. Family Mut. Ins. Co.*, 632

F.3d 570, 584 (9th Cir. 2011) ("Personal jurisdiction, unlike subject-matter jurisdiction, is

primarily concerned with fairness to individual parties."). The answer is an obvious yes. The

burden on Defendants in defending a single class action in one jurisdiction is indisputably less

than defending multiple cases in different jurisdictions. Moreover, hearing one action as opposed

to multiple actions likewise promotes judicial economy and reduces waste for all parties involved,

as Defendants' themselves admitted in their motion to consolidate this case with *Hashemi*:

> Consolidation will promote judicial economy and eliminate
> unnecessary repetition without any discernable prejudice or
> downside to any litigant. Because the cases challenge the same
> labels against the same defendants on behalf of overlapping classes
> of consumer, both proceedings will involve substantially identical
> discovery and proof concerning sales during the same lengthy
> period. Conducting that discovery and hearing that evidence in a
> single proceeding will serve judicial economy by reducing
> repetition for the Court, and reducing the likelihood that the same
> witnesses will be required to testify at multiple trials. Further,
> consolidation will not lead to inefficiency, inconvenience, or
> prejudice to the parties involved.

(ECF 43-2 at 2–3). Because Defendants are nationwide companies that engage in nationwide

courses of conduct, there is nothing unfair about having Defendants answer a nationwide class

action in a single federal forum, particularly since all of the relevant conduct here, such as the

product labels, product formula, and marketing campaigns, are going to be the same on a

nationwide basis. Accordingly, there is no basis to extend the *Bristol-Myers* decision to this case.

**B.    Plaintiffs Adequately Stated Claims Based on Defendants' Website and Television Advertising.**

**1.    Plaintiffs' Allegations Satisfy Rule 9(b)**

Defendants attempt to argue that Plaintiffs' allegations with respect to Defendants' TV

advertisements do not satisfy Rule 9(b) because they do not provide the exact dates that each of

-12-

Defendants' commercials began and stopped airing, and the exact dates that Plaintiff Fitzhenry-Russel saw the advertisements. (ECF 74-1 at 13–14). But Defendants take the requirements of Rule 9(b) too far. As the Ninth Circuit has explained, the principal purpose of Rule 9(b) is "to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1180 (9th Cir. 2016). This standard "does not require absolute particularity or a recital of the evidence," and "a complaint need not allege a precise time frame, describe in detail a single specific transaction, or identify the precise method used to carry out the fraud." *Id.* Tellingly, Defendants do not argue that they are unable to discern which advertisements Plaintiffs allege are fraudulent in order to defend against the claims—nor could they reasonably make such an argument, as Plaintiff not only described the content of the advertisements and provided the time frame within which each of the four commercials described in the complaint aired—she provided internet links to the exact advertisements she alleges she saw. *See, e.g.*, *Fed. Trade Comm'n v. Lunada Biomedical, Inc.*, No. CV-15-3380-MWF (PLA), 2016 WL 4698938, at *4 (C.D. Cal. Feb. 23, 2016) ("Here, by identifying and attaching representative advertisements to the FAC, the FTC has pleaded its claims with sufficient particularity to apprise Defendants of the advertisements alleged to be deceptive and to enable Defendants to prepare a defense.").

Indeed, there is no doubt that Plaintiffs have pleaded the "the who, what, when, where, and how" facts relating to Defendants' TV advertising necessary to satisfy Rule 9(b). *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009). The "who" is Defendants; the "what" are the four TV advertisements depicting individuals on Jack Ginger's farm pulling up ginger plants by the stalk to discover Canada Dry Ginger Ale where the ginger root would be located and including voice-over narration claiming "real ginger, real taste," (which Plaintiff not only described but provided links to the exact advertisements as aired); the "when" is at least 2011–13 for the earliest commercial in the complaint, at least 2013–14 for the next commercial, at least 2014–16 for the third commercial, and since at least 2016 ("approximately one year ago") for the fourth commercial; the "where" is TV advertisements broadcast throughout the United States,

generally, and for Plaintiff Fitzhenry-Russel specifically, in California while she was watching television at her home; the "how" the advertisements were misleading is they induced Plaintiff Fitzhenry-Russel to purchase Canada Dry ginger ale because the ads led her "to believe that Defendants' Products were made from and contained real ginger and not a chemical flavoring compound." CAC ¶¶ 44, 58. This is more than sufficient to satisfy Rule 9(b). *See, e.g.*, *Astiana v. Ben & Jerry's Homemade, Inc.*, No. C 10-4387 PJH, 2011 WL 2111796, at *6 (N.D. Cal. May 26, 2011) ("The 'who' is Ben & Jerry's, Breyers, and Unilever. The 'what' is the statement that ice cream containing alkalized cocoa is 'all natural.' The 'when' is alleged as 'since at least 2006,' and 'throughout the class period.' The 'where' is on the ice cream package labels.The 'how the statements were misleading' is the allegation that defendants did not disclose that the alkalizing agent in the alkalized cocoa was potassium carbonate, which plaintiffs allege is a 'synthetic.'); *Ham v. Hain Celestial Grp., Inc.*, 70 F. Supp. 3d 1188, 1192 (N.D. Cal. 2014) ("(i) the who: Hain; (ii) the what: 'All Natural' labeling on waffles containing SAPP, a synthetic ingredient; (iii) the when: purchases made between May 2012 and March 2014; (iv) the where: labels on the waffles, copies of which [were] attached to the complaint; (v) and the how: purchases made with reasonable reliance on the 'All Natural' statement").

Defendants complain that Plaintiff does not adequately plead "*when* she supposedly was defrauded" by the advertisements because her allegation of viewing the advertisements "on at least five occasions over the past five years" and the most recent advertisement "at least one time approximately one year ago" is "vague." (ECF No 74-1 at 13). According to Defendants "[i]f Rule 9(b) means anything, it at least requires a plaintiff . . . to come forward with something more particular than 'approximately one year ago.'" (*Id.* at 13–14). But Rule 9(b) is not a memory test that requires a Plaintiff to plead each specific date she saw a TV ad or be thrown out of court. *See United Healthcare Ins. Co.*, 848 F.3d at 1180 ("a complaint need not allege a precise time frame" to satisfy Rule 9(b)). Indeed, courts have routinely found allegations of the general time frame such as Plaintiff pleads here sufficient to provide Defendants notice of which advertisements are being challenged, and thus to satisfy Rule 9(b). *See, e.g.*, *Orlick v. Rawlings Sporting Goods Co.*, No. CV 12-6787-GHK (RZX), 2013 WL 12139142, at *3 (C.D. Cal. Feb. 20, 2013) ("It

-14-

1   sufficiently alleges *when* Defendant made the allegedly false or misleading advertising claims

2   (within four years prior to the filing of this action).”); *Astiana*, 2011 WL 2111796, at *6 (“The

3   ‘when’ is alleged as ‘since at least 2006.’”); *Ham*, 70 F. Supp. 3d at 1192 (“[T]he when:

4   purchases made between May 2012 and March 2014.”); *Von Koenig v. Snapple Beverage Corp.*,

5   713 F. Supp. 2d 1066, 1077 (E.D. Cal. 2010) (concluding that the plaintiffs satisfied the “time”

6   requirement of Rule 9(b) when they alleged that defendant used the allegedly misleading

7   advertising terms between March 4, 2005 and March 4, 2009).

8        Defendants also assert that Plaintiffs’ “allegations wholly fail to explain *which*

9   commercials in particular were aired, *when* the commercials were aired (other than a blatantly

10  non-particularized pleading of ‘no earlier date’) and *where* the commercials were allegedly

11  broadcast. (ECF No 74-1 at 13). But each of these assertions is demonstrably false. Plaintiffs

12  allegations establish exactly “*which* commercials in particular were aired” because the complaint

13  not only describes the advertisements but incorporates each advertisement at issue ***in its entirety***

14  by providing links where the advertisements can be viewed exactly as they were aired. CAC ¶ 44.

15  Plaintiffs’ allegations regarding the approximate timeframe “*when* the commercials were aired,”

16  i.e., 2011–13 for the earliest commercial,  2013–14 for the next commercial, 2014–16 for the

17  third commercial, and 2016–present for the fourth commercial, are also sufficient to meet Rule

18  9(b) as described by the cases cited in the preceding paragraph. Moreover, Plaintiff does not have

19  to plead the exact date each commercial began and ended airing, as the specific time frame

20  Defendants aired their advertisements is undoubtedly within Defendants’ knowledge, and

21  Defendants cannot claim they are not on notice of which advertisements Plaintiff challenges as

22  each exact TV ad is linked in the complaint. *See Orlick*, 2013 WL 12139142 at *3 (“It is well

23  established that Rule 9(b) may be relaxed as to matters peculiarly within the opposing party’s

24  knowledge). Finally, Plaintiff alleged “*where* the commercials were allegedly broadcast” as

25  paragraph 44 of the complaint very specifically alleges each of the commercials “aired throughout

26  the United States” and “in California.” FAC ¶ 44.

27        Further, Defendants’ arguments that Plaintiffs cannot state claims based on Defendants’

28  website are premature. Where Plaintiffs adequately allege they read and relied on some of

1   Defendants' misleading statements—i.e., here Defendants' packaging and TV advertisements—

2   whether Plaintiffs can represent absent class members who relied on similar materials Plaintiffs

3   did not view, such as the website, is better analyzed under the typicality and adequacy prongs of

4   Rule 23 on a class certification motion, not a motion to dismiss. As the *Orlick* court explained:

> Defendant argues that to the extent Plaintiff's claims are based on
> advertising on Defendant's website and packaging, the claims must
> be dismissed because Plaintiff does not allege that she ever visited
> the website or saw the packaging before her purchase. Because the
> inquiry on a motion to dismiss is whether Plaintiff has sufficiently
> stated a claim, however, we need not, at this stage, determine the
> exact scope of the allegedly misleading statements. Instead,
> Plaintiff needs to allege only that she relied on some misleading
> statements made by Defendant in making her purchase. Defendant's
> argument that Plaintiff cannot assert claims based on its website and
> packaging is better analyzed under the typicality and adequacy
> inquiries on a class certification motion.

11  2013 WL 12139142, at *4, n.1. Indeed, Courts routinely allow named-plaintiffs to pursue class

12  claims for misrepresentation and false advertising relating to products *the named-plaintiff never*

13  *even purchased*, because the products, and thus the alleged misrepresentations are similar,

14  reserving the question of whether named-plaintiff's claims are typical of those of absent class

15  members until class certification. *E.g.*, *Clancy v. The Bromley Tea Co.*, 2013 WL 4081632, *6

16  (N.D. Cal. Aug. 9, 2013); *Swearingen v. Yucatan Foods, L.P.*, 2014 WL 553537 (N.D. Cal. Feb.

17  7, 2014); *Morgan v. Wallaby Yogurt Co., Inc.*, 2014 WL 1017879 (N.D. Cal. Mar. 13, 2014);

18  *Lilly v. Jamba Juice Co.*, 2013 WL 6070503 (N.D. Cal. Nov. 18, 2013); *Callaghan v. BMW of N.*

19  *Am., LLC*, 2014 WL 1340085 (N.D. Cal. Apr. 2, 2014); *Trazo v. Nestle USA, Inc.*, 2013 WL

20  4083218 (N.D. Cal. Aug. 9, 2013).

21       The same rationale applies here to permit claims based on the website to go forward.

22  Plaintiffs challenge Defendants' website because it claims the Products are "MADE FROM

23  REAL GINGER"—the exact same misleading statement on the packaging that Plaintiff viewed

24  and that this Court has already determined adequately states a claim for consumer

25  misrepresentation. Thus, the issue is not whether the website adequately states a claim, but

26  whether Plaintiffs, who did not view the website, can adequately represent those who did view

27  it—a question reserved for class certification.

28       Further the allegations show that reasonable consumers would interpret the statement

-16-

"MADE FROM REAL GINGER" to mean that the product is made from ginger root, grown on a farm, not from a chemical synthesized in a lab and therefore should not be stricken from the complaint. *E.g.*, *Musgrave v. ICC/Marie Callender's Gourmet Prods. Div.*, 2015 WL 510919, *11 (N.D. Cal. Feb. 5, 2015) ("[E]ven though Plaintiff has not alleged that he personally relied on Defendant's website and advertising materials, these materials may be relevant to class certification and absent class members' reliance on Defendant's promotional materials.").

> **2.** **Plaintiffs Sufficiently Pleaded a Longstanding Advertising Campaign**

Even though, as described above, Plaintiffs adequately pleaded reliance on Defendants' television advertisements, they are not required to do so under California law because they have sufficiently alleged a longstanding advertising campaign. *See Opperman v. Path, Inc.*, 87 F. Supp. 3d 1018, 1047 (N.D. Cal. 2014) ("'[W]here, as here, a plaintiff alleges exposure to a long-term advertising campaign, the plaintiff is not required to plead with an unrealistic degree of specificity that the plaintiff relied on particular advertisements or statements.'") (quoting *In re Tobacco II cases*, 46 Cal.4th 298, 328 (2009)). In *Opperman*, the court identified six factors that determine whether or not to apply the longstanding advertising rule, each of which is met here.

"First, to state the obvious, a plaintiff must allege that she actually saw or heard the defendant's advertising campaign." *Id.* at 1048. Plaintiff Fitzhenry-Russell satisfies this, as she alleges she saw Defendants' TV advertisements. CAC ¶ 58. "Second, the advertising campaign at issue should be sufficiently lengthy in duration, and widespread in dissemination, that it would be unrealistic to require the plaintiff to plead each misrepresentation she saw and relied upon." *Opperman*, 87 F. Supp. 3d at 1048. The Court noted that this is a "fact-intensive inquiry," but that a national television advertisement campaign that lasted four years would qualify. *Id.* at 1048–49. Plaintiffs alleged that Defendants have engaged in a nationwide "Jack's Ginger Farm" television advertisement campaign for at least the past six years. CAC ¶¶ 44, 58. "Third, a plaintiff seeking to take advantage of the exception should describe in the complaint, and preferably attach to it, a 'representative sample' of the advertisements at issue in order adequately to notify the defendant of the precise nature of the misrepresentation claim." *Opperman*, 87 F. Supp. 3d at 1049. As described above, Plaintiffs have done that here. CAC ¶ 44.

"Fourth, the degree to which the alleged misrepresentations contained within the advertising campaign are similar to each other, or even identical, is also an important factor." *Opperman*, 87 F. Supp. 3d at 1049. This is also easily satisfied here. Plaintiffs allege that "Defendants have been running similar television advertisements throughout the United States depicting Jack's Ginger Farm since at least 2011. Each of these advertisements depicts Jack's Ginger Farm where workers or other people pull up ginger plants by the stalk to discover Canada Dry Ginger Ale where the ginger root would be located, and includes a voice-over narration that claims "real ginger, real taste" which Plaintiffs allege leads reasonable consumers to believe that Defendants' products are made from, and contain, real ginger. CAC ¶¶ 44, 58. "Fifth . . . a complaint subject to Rule 9(b)'s requirements should plead with particularity, and separately, when and how each named plaintiff was exposed to the advertising campaign." *Opperman*, 87 F. Supp. 3d at 1049. Again, Plaintiff Fitzhenry-Russell satisfies this, as she alleges she viewed Defendants "Jack's Ginger Farms" TV advertisement at her home several times over the past five years while watching television. CAC ¶ 58. "Sixth, the court must be able to determine when a plaintiff made her purchase or otherwise relied in relation to a defendant's advertising campaign, so as to determine which portion of that campaign is relevant." *Opperman*, 87 F. Supp. 3d at 1051. Here, Plaintiff Fitzhenry-Russell alleges that she purchased "approximately one case each year" over the past two years, and viewed the TV advertisements over the past five years, viewing the most recent advertisement "approximately one year ago." CAC ¶ 58.

### 3.   Defendants' Advertisements Are Not Puffery.

Defendants claim that their commercials constitute puffery because they are "obviously tongue-in-cheek depictions of farmers pulling bottles of carbonated ginger ale from the ground." (ECF 74-1 at 15). But Defendants are wrong. An advertisement is "mere puffery" if it contains only "generalized, vague, and unspecified assertions" about a product. *Salazar v. Honest Tea, Inc.*, 74 F. Supp. 3d 1304, 1316 (E.D. Cal. 2014). For example, had Defendants claimed that their ginger ales "taste better than competitors," or "taste more like real ginger" than any other ginger ale on the market, that could constitute mere puffery because those are not objectively measurable statements. *See, e.g.*, *People for the Ethical Treatment of Animals v. Whole Foods Mkt.*

*California, Inc.*, No. 15-CV-04301 NC, 2016 WL 1642577, at *3 (N.D. Cal. Apr. 26, 2016) (holding that the slogans "Great-Tasting Meat From Healthy Animals," and "Raised Right Tastes Right" were mere puffery because the claims could not be objectively verified). But Plaintiffs allege that Defendants' TV ads are deceptive because they convey the message that Defendants' Products are made from and contain real ginger rather than a chemical flavoring compound designed to mimic the flavor of ginger. CAC ¶¶ 44, 58. This is not mere puffery because it "makes a claim as to the *specific or absolute characteristics of a product*." *Newcal Indus., Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1053 (9th Cir. 2008) (emphasis added). Indeed, whether Defendants' products are made from real ginger rather than natural flavors is a "'specific factual assertion[s] which could be established or disproved through discovery'" and is "capable of objective verification." *Salazar*, 74 F. Supp. 3d at 13.

However, even if Defendants' TV ads "standing on [their] own could arguably constitute puffery," the advertisements "certainly contribute[] . . . to the deceptive context of the packaging as a whole." *Williams v. Gerber Products Co.*, 552 F.3d 934, 939 n.3 (9th Cir. 2008). Plaintiff alleges Defendants label their packages with the phrase "MADE FROM REAL GINGER" in order to deceive reasonable consumers into believing that the Canada Dry ginger ales are made from, and contain real ginger, when, in fact, the ginger ales are made from and contain "natural flavors" (i.e. a chemical flavoring compound derived from the oil or essence of a natural plant) designed to mimic the taste of real ginger. CAC ¶¶ 2–4. Defendants' TV ads reinforce the deceptive message from their packaging by depicting Canada Dry ginger ales as originating from a real ginger farm, by portraying Canada Dry ginger ale symbolically as the root of a real ginger plant, and by including voice over-narratives saying "real ginger, real taste." CAC ¶¶ 44, 58. Courts regularly conclude that similar advertising campaigns are not mere puffery. *E.g.*, *Williams*, 552 F.3d at 939 n.3 ("Given the context of this statement, we decline to give Gerber the benefit of the doubt by dismissing the statement as puffery. 'It is not difficult to choose statements, designs, and devices which will not deceive.'"); *Salazar*, 74 F. Supp. 3d at 1317–18 ("Plaintiff cites different advertising campaigns conducted by defendant, including a posting on its website, 'Honest Tea: If it's not real, it's not Honest'; re-styling of the label to accentuate the word

'Honest'; its billboard campaign of truths such as 'YES, THAT DRESS DOES MAKE YOU LOOK FAT, BE REAL. GET HONEST' and 'IT'S NOT ME IT'S YOU, BE REAL. GET HONEST' . . . Based on the complaint, defendant sets out to paint itself as honest and bases virtually its entire product image on that characteristic. These claims are not mere puffery."); *L.A. Taxi Coop., Inc. v. Uber Techs., Inc.*, 114 F. Supp. 3d 852, 861 (N.D. Cal. 2015) ("A reasonable consumer reading these statements in the context of Uber's advertising campaign could conclude that an Uber ride is objectively and measurably safer than a ride provided by a taxi or other competitor service."); *Gammel v. Hewlett-Packard Co.*, 905 F. Supp. 2d 1052, 1070 (C.D. Cal. 2012) ("Although these statements, standing alone, might constitute puffery, they cannot be dismissed as 'generalized, vague and unspecific assertions' when read in the context of Bradley's February 9, 2011 statements as a whole.").

### C.       Plaintiffs' Claims Are Not Preempted by the FDCA.

Defendants attempt to argue that Plaintiffs' claims are preempted by the FDCA and its implementing regulations, but do so only by misconstruing the basis of Plaintiffs' claims and misreading the complaint. Plaintiffs' claims are very straightforward. Defendants mislead consumers because they label their products as "MADE FROM REAL GINGER," which reasonable consumers understand to mean that the product is actually made from, and contains real ginger. In fact, Defendants' products are not made from real ginger, but "natural flavors"—i.e. a chemical compound that mimics the flavor of real ginger. There is no FDA regulation that requires or permits defendants to use the "MADE FROM REAL GINGER" label; therefore, the claim is not preempted.

In the early 1990s, Congress amended the FDCA by enacting the Nutrition Labeling and Education Act ("NLEA"), which included a "provision preempting state laws on misbranding." *Sciortino v. Pepsico, Inc.*, 108 F. Supp. 3d 780, 796 (N.D. Cal. 2015). However, Congress made clear "that the NLEA does not occupy the field," meaning that the NLEA does not preempt any state law unless it falls directly within the NLEA's express preemption provision. *Id.* This is because the "states' historic police powers included laws regulating the proper marketing of food, including the prevention of deceptive sales practices" and courts presume that Congress did not

intend to supersede "the historic police powers of the States" in the absence of a "clear and manifest purpose" to that effect. *Id.*; *see also Astiana*, 2011 WL 2111796, at *8 ("Accordingly, defendants' preemption arguments must overcome the presumption against preemption because food labeling has been an area historically governed by state law.").

The NLEA's express preemption "provision provides that no state may directly or indirectly establish a requirement for the labeling of food that is not 'identical to' the requirements of section 403 of the FDCA (21 U.S.C. § 343), which governs misbranded food." *Sciortino*, 108 F. Supp. 3d at 796. The FDA has further clarified "that the term 'not identical to' captures a state requirement that 'directly or indirectly imposes obligations or contains provisions ... that ... [d]iffer from those *specifically imposed by or contained in the applicable provision* (including any implementing regulation) of section 401 or 403 of the act.'" *Id.* (quoting 21 C.F.R. § 100.1(c)(4)) (emphasis added) "This means that Relevant to the case at bar, the NLEA only preempts state-law requirements "that are *of the type but not identical to only certain FDCA provisions* with respect to food and beverage labeling." *Id.* (quoting *POM Wonderful LLC v. Coca–Cola Co.*, 134 S. Ct. 2228, 2235 (2014)) (emphasis added).

"In other words, the NLEA's preemption provisions do not reflect an intent to preempt every state law requirement with some conceivable relationship to the labeling of food. Instead, express preemption applies only to requirements 'of the type' enumerated." *Id.* "If the label statements at issue *do not involve the enumerated labeling requirements*, then the NLEA's express preemption provision would not in the ordinary circumstance come into play." *Id.* at 799. Or, as the Ninth Circuit has held, [t]he preemption analysis turns on whether the challenged statements are authorized by the FDA's regulations or other pronouncements of similar legal effect." *Reid v. Johnson & Johnson*, 780 F.3d 952, 959 (9th Cir. 2015). Only if a certain label claim is expressly permitted by the statute or its implementing regulations will a challenge to that label be preempted. *See In re Quaker Oats Labeling Litig.*, No. C 10-0502 RS, 2012 WL 1034532, at *2 (N.D. Cal. Mar. 28, 2012) ("The challenged phrase is permissible under the regulations, and therefore state law claims that it is false or misleading are preempted."); *Krommenhock v. Post Foods*, LLC, No. 16-CV-04958-WHO, 2017 WL 2378029, at *15 (N.D.

COMBINED OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS AND TO STRIKE

1   Cal. June 1, 2017) ("The only preempted . . . claims are nutrient content claims that have been

2   expressly permitted by the FDA.").

3        Here, no provision of the FDCA, NLEA, or the FDA's regulations either expressly permit,

4   or require Defendants to label their products as "MADE FROM REAL GINGER." This means

5   that, in challenging Defendants' use of that phrase, Plaintiffs are not imposing any different or

6   additional requirements "of the type" enumerated in the relevant statutes, and therefore,

7   Plaintiffs' claims are not preempted. *See Astiana*, 2011 WL 2111796, at *10 ("[T]here is no

8   indication of any regulation of the use of an adjective such as "natural" on a food label.

9   Accordingly, the court finds that the claims are not preempted."); *In re Quaker Oats Labeling*

10  *Litig.*, 2012 WL 1034532, at *4 ("[B]ecause this particular claim does not plainly fall under the

11  regulation on which Quaker relies, there is no basis to conclude at this juncture that it is

12  preempted."); *Red v. Kraft Foods, Inc.*, 754 F. Supp. 2d 1137, 1143 (C.D. Cal. 2010), (rejecting

13  defendants' argument that Plaintiffs' claims that the labels "Made with Real Vegetables" and

14  "Made with Real Ginger & Molasses" were false and deceptive were preempted.).

15       Unsurprisingly, Defendants do not try to point to a single regulation or statutory provision

16  relating to their use of the "MADE FROM REAL GINGER" label, as there are none. Although

17  Defendants contend that the FDA has certain "'flavor labeling' regulations . . . set out at 21

18  C.F.R. § 101.22," Defendants do not identify any such regulation that permits or requires

19  Defendants to put the "MADE FROM REAL GINGER" label on their products.[5]

20       Instead, Defendants attempt to obfuscate the issue by mischaracterizing the allegations in

21  Plaintiffs' complaint and suggesting Plaintiffs are raising claims that they never make. Courts

22  routinely reject this practice and this Court should as well. *See, e.g.*, *In re 5-hour ENERGY Mktg.*

23  *& Sales Practices Litig.*, No. MDL 13-2438 PSG PLAX, 2014 WL 5311272, at *13 (C.D. Cal.

24  Sept. 4, 2014) ("Defendants' argument is unpersuasive, because it is based on a strained

25  _____

26  [5] At best, they would permit Defendants to label their product as "Made From Natural Ginger
    Flavors." *See* 21 C.F.R. § 101.22(i)(1)(i). However, even if the regulation applied, it would not

27  matter as Plaintiffs' claims relate to the products' ingredients, not their flavor. *See Red*, 754 F.
    Supp. 2d at 1143 (rejecting argument that "characterizing flavor" regulations preempted claims

28  that "Made with Real Vegetables" and "Made with Real Ginger & Molasses" statements were
    deceptive because claims were directed at ingredients)

1   misreading of the CAC. . . . These allegations, read in context, cannot support Defendants'

2   characterization of Plaintiffs' claims. As a result, Plaintiffs claims are not preempted."); *Bruaner*

3   *v. MusclePharm Corp.*, No. CV148869FMOAGRX, 2015 WL 4747941, at *7 (C.D. Cal. Aug.

4   11, 2015) ("[D]efendant's argument that plaintiff's claims are governed by these provisions is

5   unpersuasive because it mischaracterizes the SAC. Plaintiff is not 'attempt[ing] to impose' a

6   method of calculating protein 'based on tests of the product that do not conform with FDA's

7   approved test[.]'").

8       Defendants' first mischaracterization is that Plaintiffs "challenge the disclosure of Canada

9   Dry Ginger Ale's 'natural flavors' . . . [and] [i]n so doing Plaintiffs attempt to impose a rule—not

10  imposed by the FDA—that to list natural flavors on the label, such as those 'made from real

11  ginger,' the beverage must actually contain an unspecified amount of a chopped or powdered

12  version of the substance." (ECF 74-1 at 16). This is wrong. Plaintiffs do not take issue with the

13  fact Defendants list "natural flavors" as an ingredient. Plaintiffs also never claim that a product

14  that chooses to use "natural flavors" as an ingredient instead of a "real" spice must also contain

15  some "amount of a chopped or powdered version" of the spice. What Plaintiffs do claim is that

16  Defendants cannot mislead consumers into thinking that their products are actually made from

17  "real ginger," *as opposed to* "natural flavors" by labeling their products as "MADE FROM REAL

18  GINGER" in large letters on the primary display panel—i.e., the "core issue" that this court has

19  already determined plausibly states a claim for misrepresentation. April Tr. at 31:10–25.[6]

20      Defendants also argue that "Plaintiffs claim that the label is false or misleading because

21  Canada Dry Ginger Ale contains undisclosed artificial flavors—what they describe variously as a

22  'chemical flavoring compound,' and/or an 'extraction' and/or 'isolated compound' that is a

23  'flavoring substance' intended to 'mimic' the flavor of ginger." (ECF 74-1). This is a gross

---

24

25  [6] Although Plaintiffs do not state any claims based on Defendants listing "natural flavors" as an
    ingredient, Plaintiffs do contend, as is well-settled in the Ninth Circuit, that reasonable consumers
26  are not "expected to look beyond misleading representations on the front of the box to discover
    the truth from the ingredient list in small print on the side of the box." *Williams*, 552 F.3d at 939.
27  It also does not matter whether Defendants listing "natural flavors" on their ingredient list
    complies with the FDA regulations. *Id.* "The FDA [does not] require[] an ingredient list so that
28  manufacturers can mislead consumers and then rely on the ingredient list to correct those
    misinterpretations and provide a shield for liability for the deception." *Id.*

1
2
3
4
5
6
7

mischaracterization of Plaintiffs' claims and allegations. Plaintiffs never allege that Defendants use an "undisclosed artificial flavor." In fact the term "artificial flavoring" appears only twice in the entire complaint in parenthetical references to various statutory misbranding provisions— never in reference to Defendants' products. CAC ¶¶ 32, 37. Plaintiffs have always alleged that Defendants' "Products are made from carbonated water, high fructose corn syrup, citric acid, preservatives, and '***natural flavor***,' which is a chemical flavoring compound that is manufactured to mimic the taste of ginger." CAC ¶ 24 (emphasis added); *accord* CAC ¶¶ 3, 27, 28, 47, 71.

8
9
10
11
12
13
14
15

    Defendants may not like Plaintiffs' description of their "natural flavors" as a "chemical flavoring compound," an "extraction," or an "isolated compound," but these are all accurate descriptions of what it really is. As Plaintiffs have alleged, a "natural flavor" is only "natural" because it "contains some oil, protein, or essence from a plant or animal" as opposed to an "artificial flavor," which contains no plant or animal extracts. CAC ¶ 27. However, a "natural flavor" still "bears little resemblance to the actual plant or animal from which it is derived. Rather, natural flavors are made in a laboratory by scientists who make determinations on how to replicate a flavor using chemicals found in nature." CAC ¶ 27.

16
17

Because the claims Plaintiffs do raise are not preempted by federal law, this Court should deny Defendants' motion to dismiss.

18
19

    **D.**    **If The Court Is Inclined to Grant Defendant's Motion to Dismiss in Any Respect, Plaintiffs Respectfully Request Leave to Amend.**

20
21
22
23
24
25

If a complaint is dismissed, "leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). Indeed, leave to amend is only properly denied "where the amendment would be futile." *DeSoto v. Yellow Freight Sys.*, 957 F.2d 655, 658 (9th Cir. 1992). Should this Court find any of the allegations insufficient to state a claim, Plaintiff requests leave to amend.

26
27
28

Defendants contend that leave to amend should be denied because this is already "the fifth pleading." But Defendants arrive at that number only by counting the two *Hashemi* complaints— which Plaintiffs' had no role in drafting—and the consolidated amended complaint—which the

COMBINED OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS AND TO STRIKE

Court required Plaintiffs to file after consolidation—even though (as it turned out) the *Hashemi* plaintiffs all decided not to proceed. Neither Plaintiffs nor their counsel had any control over the *Hashemi* complaints, and all of those plaintiffs have now dismissed their claims. Moreover, Plaintiffs opposed consolidation, which is what resulted in Plaintiffs' first amended complaint being superseded without being tested. So, despite the procedural posture of this case—which is of Defendants' making, not Plaintiffs'—this represents only the *second* time the Court has ever evaluated Plaintiffs' complaint to determine if there are any deficiencies. Moreover, as the Court has already determined that Plaintiffs here have stated plausible claims on the "core issue" of whether the label is false and misleading, any "non-dispositive" issue that the Court identifies should not preclude Plaintiffs from pursuing the substance of their claims.

## IV.    CONCLUSION

For the foregoing reasons, this Court should deny Defendant's Motion to Dismiss and Motion to Strike in their entirety.

Dated: September 1, 2017              **GUTRIDE SAFIER LLP**

Adam J. Gutride, Esq.
Seth A. Safier, Esq.
Marie McCrary, Esq.
Kristen G. Simplicio, Esq.
100 Pine Street, Suite 1250
San Francisco, California 94114

Attorneys for Plaintiff