UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JACKIE FITZHENRY-RUSSELL, et al.,

Plaintiffs,

v.

DR. PEPPER SNAPPLE GROUP, INC., et al.,

Defendants.

Case No. 17-cv-00564 NC

**ORDER DENYING DR. PEPPER'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION; ORDER DENYING DR. PEPPER'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

Re: Dkt. No. 74

Not too long ago Jackie Fitzhenry-Russell and Robin Dale were Canada Dry Ginger Ale devotees. For instance, over the last several years, Fitzhenry-Russell bought Canada Dry cases at a time. What was so special about Canada Dry that made Fitzhenry-Russell buy it in bulk? According to her, it was her belief—based on Canada Dry's extensive advertising campaign—that the cans of ginger ale she was consuming contained actual ginger root. "Contained" is the key word. According to plaintiffs' complaint, "contained" does not mean that the alleged chemical substance that gave Canada Dry its gingery flavor was *inspired by* ginger root, or that someone engineered the substance while *observing* a piece of ginger root from across a large auditorium.

The belief that Canada Dry contained ginger root was significant because, according to both plaintiffs, a reason they bought Canada Dry was the well-known health benefits of consuming ginger root. In particular, Fitzhenry-Russell's belief that Canada

Case No. 17-cv-00564 NC

Dry contained ginger was based on this phrase on each can: "Made From Real Ginger." What does that elusive "from" mean? Does Canada Dry Ginger Ale contain ginger root? The Court does not know, and fortunately, that is not the question it is being asked to answer here.

The questions the Court *is* being asked to answer in this motion are (1) does the court have personal jurisdiction over Dr. Pepper; (2) whether the plaintiffs have stated a claim against the defendants as to the advertising of Canada Dry Ginger Ale; and (3) whether the plaintiffs' claims are preempted by the Federal Food, Drug, and Cosmetics Act (FDCA). First, the Court finds that it has personal jurisdiction over Dr. Pepper as to all of the claims against it by the alleged *nationwide* class. Second, the Court finds that the plaintiffs may bring claims against Dr. Pepper based on its advertising campaign. Third, the Court finds that for purposes of this motion, the claims in the complaint are not preempted.

## I. BACKGROUND

Fitzhenry-Russell and Dale both purchased Canada Dry Ginger Ale within the last five years. Dkt. No. 66 at 16, 18. Both allege to have seen and relied upon the wording on the cans of Canada Dry that stated it was "Made From Real Ginger." *Id*. at 17, 18. Fitzhenry-Russell reportedly also saw commercials over the past five years for Canada Dry Ginger Ale, which depicted "Jack's Ginger Farm," in which a worker is harvesting ginger, but "[w]hen he pulls up one of the plants by its stalk, he finds a bottle of Canada Dry Ginger Ale where the ginger root would normally be." *Id*. at 12, 17. The voice-over narrates, "Find your way to relaxation with the crisp soothing taste of real ginger and bubbles. Canada Dry. The root of relaxation." *Id*. at 12. Fitzhenry-Russell alleges that this commercial reinforced her belief that Canada Dry contained real ginger. *Id*. at 17. Dale does not allege he ever watched one of the commercials. Neither Fitzhenry-Russell nor Dale allege that they ever visited Canada Dry's website, which at some point had emblazoned across its front page the phrase "Made From Real Ginger." *Id*. at 12.

This putative class action was filed in Santa Cruz County Superior Court on

Case No. 17-cv-00564 NC 2

1  December 28, 2016, and was removed to this Court on February 3, 2017. Dkt. Nos. 1, 1-1.
2  Dr. Pepper previously moved to dismiss the complaint under Federal Rule of Civil
3  Procedure 12(b)(1) and 12(b)(6). Dkt. No. 16. The Court ruled from the bench on April
4  19, 2017, granting in part the motion to dismiss, and giving the plaintiffs leave to amend.
5  Dkt. No. 31. Dr. Pepper then moved to dismiss the amended complaint, but that motion
6  was mooted by the Court's June 28, 2017, order that the plaintiffs file a consolidated
7  complaint. Dkt. No. 59. The consolidated amended complaint[1] (hereafter "complaint")
8  now before the Court contains only California state law claims, which are for (1) the
9  Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*; (2) false advertising, Cal.
10 Bus. & Prof. Code § 17200, *et seq.*; (3) common law fraud, deceit, and/or
11 misrepresentation; and (4) unlawful, unfair, and fraudulent trade practices, Cal. Bus. &
12 Prof. Code § 17200, *et seq.* Dkt. No. 66. The Court also consolidated the follow-on
13 *Hashemi* action with this case. Dkt. No. 59. Dr. Pepper subsequently moved to dismiss
14 the complaint under Rule 12(b)(2) and 12(b)(6). Dkt. No. 74. All parties consented to the
15 jurisdiction of a magistrate judge under 28 U.S.C. § 636(c). Dkt. Nos. 15, 19.

## II. LEGAL STANDARD

### A. Personal Jurisdiction and Federal Rule of Civil Procedure 12(b)(2)

In determining whether the exercise of personal jurisdiction over a nonresident defendant is proper, a district court must apply the law of the state in which it sits when there is no applicable federal statute governing personal jurisdiction. *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998). District courts in California may exercise personal jurisdiction over a nonresident defendant to the extent permitted by the Due Process Clause of the Constitution. Cal. Code Civ. Proc. § 410.10. The Due Process Clause of the Fourteenth Amendment requires that the defendant have "certain minimum

---

[1] The complaint names "DR. PEPPER SNAPPLE GROUP, INC., DR PEPPER/SEVEN UP, INC., and DOES 1-50" as the defendants in this action. The motion before the Court is brought by Dr. Pepper Snapple Group and Dr. Pepper/Seven Up. For purposes of clarity and succinctness, the Court will simply refer to defendants as "Dr. Pepper" in this motion.

Case No. 17-cv-00564 NC    3

contacts" with the forum "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Washington*, 326 U.S. 310, 316 (1945) (citations and internal quotation marks omitted). The party seeking to invoke jurisdiction has the burden of establishing that jurisdiction exists. *Flynt Distrib. Co. v. Harvey*, 734 F.2d 1389, 1392 (9th Cir. 1984).

Personal jurisdiction may be founded on either general jurisdiction or specific jurisdiction. General jurisdiction exists when a defendant is domiciled in the forum state or his activities in the forum are "substantial" or "continuous and systematic." *Panavision*, 141 F.3d at 1320 (internal quotation marks omitted). When the nonresident defendant's contacts with the forum are insufficiently pervasive to subject it to general personal jurisdiction, the court must ask whether the "nature and quality" of its contacts are sufficient to exercise specific personal jurisdiction over it. *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1287 (9th Cir. 1977). A court may exercise specific personal jurisdiction over a nonresident defendant if (1) the nonresident defendant purposefully directs his activities at the forum or performs some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the plaintiff's claim arises out of the forum-related activities of the nonresident defendant; and (3) the exercise of jurisdiction over the nonresident defendant is reasonable. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).

### B. Federal Rule of Civil Procedure 12(b)(6)

A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). On a motion to dismiss, all allegations of material fact are taken as true and construed in the light most favorable to the non-movant. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). The Court, however, need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). Although a complaint need

Case No. 17-cv-00564 NC         4

not allege detailed factual allegations, it must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

If a court grants a motion to dismiss, leave to amend should be granted unless the pleading could not possibly be cured by the allegation of other facts. *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

**III. DISCUSSION**

Dr. Pepper moves to dismiss the complaint because (1) the Court lacks personal jurisdiction over it; (2) the plaintiffs fail to state a claim against it as to the advertising of Canada Dry Ginger Ale; and (3) all of the claims are preempted under federal law. The Court considers all of these arguments below.

**A. The Court Has Personal Jurisdiction Over Dr. Pepper as to the Claims of the Nationwide Class.**

Dr. Pepper moves to dismiss the complaint on the ground that the Court lacks personal jurisdiction over it, or at least over Dr. Pepper as to the non-California class members. Dkt. No. 74-1 at 12. Central to Dr. Pepper's motion is *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco*, 137 S. Ct. 1773 (2017). Dr. Pepper argues the Court should read *Bristol-Myers* as a bar to the class action here. Fitzhenry-Russell argues that *Bristol-Myers* is inapplicable because *Bristol-Myers* applies only to state courts, and because that case dealt with a mass action.

*Bristol-Myers* arose from a California state court mass action against Bristol-Myers for alleged injuries caused to the plaintiffs by the drug Plavix. 137 S. Ct. 1773. Bristol-Myers is a citizen of Delaware and New York, and it challenged the California court's personal jurisdiction over it. *Id.* at 1777-78. The United States Supreme Court rejected the California Supreme Court's application of the sliding scale approach to specific jurisdiction, under which "the strength of the requisite connection between the forum and

Case No. 17-cv-00564 NC 5

the specific claims at issue is relaxed if the defendant has extensive forum contacts that are unrelated to those claims." *Id.* at 1781. The problem with the California court's approach, the Supreme Court found, was the insufficient link between California and the non-resident plaintiffs. *Id.* (". . . the nonresidents were not prescribed Plavix in California, did not purchase Plavix in California, did not ingest Plavix in California, and were not injured by Plavix in California.") That the California plaintiffs suffered the same alleged injuries as the out of state plaintiffs—i.e., they "were prescribed, obtained, and ingested Plavix in California"—did not allow California to exert specific jurisdiction over Bristol-Myers as to the nonresident plaintiffs. *Id.* Lastly, the Supreme Court expressly left open the question of whether *Bristol-Myers'* limitation on the exercise of specific jurisdiction applied to federal courts. *Id.* at 1783-84 ("since our decision concerns the due process limits on the exercise of specific jurisdiction by a State, we leave open the question whether the Fifth Amendment imposes the same restriction on the exercise of personal jurisdiction by a federal court.").

Importantly, the Court notes that the disagreement here is not as to the satisfaction of the specific jurisdiction test of *Schwarzenegger v. Fred Martin Motor Co.*[2]; rather, the parties' disagreement is fundamentally about whether, as a matter of law, specific jurisdiction may be had over Dr. Pepper in a case like this one. 374 F.3d at 802.

Fitzhenry-Russell advances two arguments as to why *Bristol-Myers* does not apply to this putative class action. First, she argues, *Bristol-Myers'* holding does not apply to federal courts. Second, she asserts that *Bristol-Myers'* holding applies only to mass actions, not class actions. The Court rejects the first argument, and finds meritorious the second.

---

[2] The issue of whether Dr. Pepper is subject to the Court's personal jurisdiction based purely on the *Schwarzenegger* test is not before the Court, but it appears it would be satisfied because (1) Dr. Pepper advertised and sold Canada Dry in California over a long period of time; (2) the named plaintiffs bought Canada Dry in California and were injured when they discovered that Canada Dry did not contain ginger too, as alleged; and (3) it is reasonable to have personal jurisdiction over Dr. Pepper based on these allegations, and Dr. Pepper has never claimed otherwise except to the extent it objects to the nonresident plaintiffs bringing claims against it in California. 374 F.3d at 802.

Case No. 17-cv-00564 NC    6

### 1. Nothing in the *Bristol-Myers* Opinion Limits the Decision's Reasoning to State Courts.

The Court finds no merit in the plaintiffs' first argument that *Bristol-Myers* does not apply to federal courts. This is because federal courts routinely apply the specific jurisdiction analysis to defendants in cases that are before them solely on the basis of diversity. *See e.g.*, *Artec Grp., Inc. v. Klimov*, No. 15-cv-03449 RMW, 2015 WL 9304063 (N.D. Cal. Dec. 22, 2015) (applying specific jurisdiction analysis to complaint stating solely state law claims); *Prod. & Ventures Int'l v. Axus Stationary (Shanghai) Ltd.*, No. 16-cv-00669 YGR, 2017 WL 201703 (N.D. Cal. Jan. 18, 2017) (same); *Picot v. Weston*, 780 F.3d 1206 (9th Cir. 2015) (same, on review). Next, the Court disagrees that the last sentence in *Bristol-Myers* necessitates a finding that *Bristol-Myers'* holding is limited to state courts. Fitzhenry-Russell confuses the Supreme Court's leaving the issue of "whether the Fifth Amendment imposes the same restrictions on the exercise of personal jurisdiction by a federal court" open with the Supreme Court affirmatively stating that *Bristol-Myers* necessarily would not apply to federal courts. Because the *Bristol-Myers* fact pattern did not involve a federal court, there was no reason for the Supreme Court to confront that issue.

This case is solely before the Court on the basis of diversity jurisdiction. All of the claims presented are state law claims. In *Bristol-Myers*, the Supreme Court discussed the different interests at issue in determining if personal jurisdiction lay in California. One concern is the burden on defendant, which considers the "practical problems resulting from litigating in the forum," but also includes "the more abstract matter of submitting to the coercive power of a State that may have little legitimate interest in the claims in question." *Bristol-Myers*, 137 S. Ct. at 1780. These concerns do not disappear because the case is removed, like it was here.[3] Dkt. No. 1. Those concerns especially do not disappear here

---

[3] Fitzhenry-Russell cherry-picks irrelevant and out-of-circuit case law to support its argument that the territorial concerns animating the limitations on specific and general jurisdiction do not apply to federal courts. Such cases are irrelevant here because they rely on federal courts hearing federal claims, not state law ones. *See Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 369 (3d Cir. 2002).

Case No. 17-cv-00564 NC　　　　　7

where the substantive law of California applies, and California's long-arm statute is coextensive with federal law. Cal. Code Civ. Proc. § 410.10. It is hard to see how California's "coercive power" would not be exerted if the Court is applying solely California law, and is required to apply California law the way a state trial court would. *See Erie R.R. Co. v. Tomkins*, 304 U.S. 64 (1938).

Lastly, the Court considers what the Supreme Court was referring to in the last sentence of the *Bristol-Myers* decision. That sentence cited *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 102 n.5 (1987). In *Omni*, the Supreme Court reviewed the existence of personal jurisdiction in a case with Securities Exchange Act claims, Commodity Exchange Act claims, and pendant state law claims. *Id*. at 100. In the relevant footnote, the Supreme Court refused to address Omni's argument that "a federal court could exercise personal jurisdiction, consistent with the Fifth Amendment, based on an aggregation of the defendant's contact with the Nation as a whole, rather than on its contacts with the State in which the federal court sits." *Id*. at 102 n.5. The Court refused to answer the question in *Omni* because it was not properly before the Supreme Court, as it had not been in *Asahi Metal Indus. Co. v. Superior Court of California, Solano Cty*., 480 U.S. 102 (1987). *Id*. The upshot of the last sentence in *Bristol-Myers* is that the Supreme Court, by not opining on a question that was not properly before it, did not express an opinion that the *Bristol-Myers* reasoning would not apply to federal courts.

### 2. The Court Does Not Extend *Bristol-Myers* to Class Actions.

The *Bristol-Myers* litigation was not a class action; it was a mass tort action. *See Bristol-Myers Squibb Co. v. Superior Court*, 1 Cal. 5th 783, 809 (2016), *rev'd by Bristol-Myers*, 137 S. Ct. 1773. Fitzhenry-Russell argues that this factor materially distinguishes this action from *Bristol-Myers* because in class actions, the citizenship of the unnamed plaintiffs is not taken into account for personal jurisdiction purposes. Dkt. No. 77 at 12-15. There is support for this position. *AM Tr. v. UBS AG*, 78 F. Supp. 3d 977, 986 (N.D. Cal. 2015), *aff'd*, 681 F. App'x 587 (9th Cir. 2017); *accord Senne v. Kansas City Royals Baseball Corp.*, 105 F. Supp. 3d 981, 1022 (N.D. Cal. 2015). These cases are all recent,

Case No. 17-cv-00564 NC 8

but none of them were decided knowing the outcome of *Bristol-Myers*. Indeed, Justice Sonia Sotomayor recognized that the majority in *Bristol-Myers* did not address the precise issue before this Court: whether the Supreme Court's opinion "would also apply to a class action in which a plaintiff injured in the forum State seeks to represent a nationwide class of plaintiffs, not all of whom were injured there." 137 S. Ct. at 1789 n.4 (Sotomayor, J., dissenting).

Thus, the Court must consider the difference between a class action and a mass tort action. In a mass tort action, like the one in *Bristol-Myers*, each plaintiff was a real party in interest to the complaints, meaning that they were named as plaintiffs in the complaints. *See Bristol-Myers Squibb Co. v. Superior Court*, 228 Cal. App. 4th 605 (2014), *rev'd by Bristol-Myers*, 137 S. Ct. 1773. In a putative class action, like the one before the Court, one or more plaintiffs seek to represent the rest of the similarly situated plaintiffs, and the "named plaintiffs" are the only plaintiffs actually named in the complaint. *See* Fed. R. Civ. P. 23.

All of the named plaintiffs in this case are California residents, and these named plaintiffs seek to represent a *nationwide* class of Ginger Ale purchasers. Dr. Pepper asserts, and Fitzhenry-Russell does not dispute, that 88% of the class members are not California residents. Dkt. No. 74-1 at 8. These numbers are decidedly lopsided, and the fact that the named plaintiffs are both California residents was undoubtedly done to distinguish this case from *Bristol-Myers*. Yet as the Supreme Court has found, "[n]onnamed class members . . . may be parties for some purposes and not for others. The label 'party' does not indicate an absolute characteristic, but rather a conclusion about the applicability of various *procedural rules that may differ based on context*." *Devlin v. Scardelletti*, 536 U.S. 1, 9-10 (2002) (emphasis added). The Supreme Court in *Devlin* specified some of these procedural rules, and all dealt with promoting expediency in class action litigation. 536 U.S. at 10 (e.g., tolling of the statute of limitations, only considering named plaintiffs' citizenship in determining diversity of citizenship). Perhaps this may be one of those contexts in which an unnamed class member should be considered as parties

Case No. 17-cv-00564 NC 9

given the language the Supreme Court chose to use in *Bristol-Myers*.

Yet the Supreme Court did not extend its reasoning to bar the nonresident plaintiffs' claims here, and *Bristol-Myers* is meaningfully distinguishable based on that case concerning a mass tort action, in which each plaintiff was a named plaintiff. The Court acknowledges Dr. Pepper's criticism that the plaintiffs manipulated the complaint so as to not run afoul *Bristol-Myers*. Dkt. No. 81 at 14 n.10. That fact does not change that the plaintiffs are the masters of their complaint. *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 398-99 (1987). For all of its arguments, Dr. Pepper has not presented the Court with persuasive argument—much less binding law—compelling the extension of *Bristol-Myers* to class actions.[4] Based on the parties' arguments, the Court is not persuaded to extend *Bristol-Myers* to the class action context on these facts. The Court has personal jurisdiction over Dr. Pepper as to the putative nationwide class claims.

### 3. The Motion to Strike is Denied.

Because the Court finds personal jurisdiction lies over Dr. Pepper as to the nationwide class, the motion to strike is DENIED AS MOOT.

### B. Federal Rule of Civil Procedure 9(b) Has Been Satisfied.

Dr. Pepper moves to dismiss the complaint on the ground that the plaintiffs have not satisfied the requirements for pleading fraud under Federal Rule of Civil Procedure 9(b). Dr. Pepper particularly targets Fitzhenry-Russell's allegations regarding its television commercials. This is significant because all of the other claims in the complaint are premised on Dr. Pepper's allegedly fraudulent advertisements that suggested Canada Dry

---

[4] In both its opening brief and reply, Dr. Pepper relies on *Plumbers' Local Union No. 690 Health Plan v. Apotex Corp.*, No. 16-cv-00665, 2017 WL 3129147, at *8-*9 (E.D. Pa. July 24, 2017), in which the district court dismissed the class claims of nonresident plaintiffs because the nonresidents had not bought defendant's drugs in Pennsylvania. Dr. Pepper is correct that *the outcome* of this case supports its position, but from the Court's review of the briefing on the motion to dismiss in *Plumbers'*, no analysis of *Bristol-Myers* or of the class action issue that was left open by *Bristol-Myers* was performed by the court or the parties. This failure was due to the timing of the briefing, which was complete before the Supreme Court's decision was handed down. The Court does not consider *Plumbers'* persuasive here. Dr. Pepper also cites *Ferrari v. Mercedes Benz USA, LLC*, No. 17-cv-00018 YGR, 2017 WL 3115198 (N.D. Cal. July 21, 2017). *Ferrari* is even less relevant than *Plumbers'* here because it merely cites *Bristol-Myers* and does not discuss it.

Case No. 17-cv-00564 NC  10

1    contained ginger root.  Fitzhenry-Russell argues that the allegations in the complaint are

2    sufficient to satisfy the requirements of Rule 9(b).

3         Federal Rule of Civil Procedure 9(b) provides: "In alleging fraud or mistake, a party

4    must state with particularity the circumstances constituting fraud or mistake."  "Averments

5    of fraud must be accompanied by 'the who, what, when, where, and how' of the

6    misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir.

7    2003) (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)).

8         Here, the "who" is Dr. Pepper, the "what" is the four commercials featuring "Jack's

9    Ginger Farm," the "when" is over the last five years, the "where" is throughout the United

10   States, and the "how" is that the statements and representations made in the commercials

11   suggested that Canada Dry Ginger Ale contained ginger root.  Plaintiffs' fraud allegations

12   are sufficient to satisfy Rule 9(b).  *Vess*, 317 F.3d at 1106.  Further, the Court agrees with

13   the plaintiffs that even though the plaintiffs cannot specify when each of the four

14   commercials began and ended airing, they do not need to provide such a level of

15   specificity because the date when the commercials began airing is within Dr. Pepper's

16   knowledge, as these advertisements were for Dr. Pepper's product.  *See Glen Holly Entm't,*

17   *Inc. v. Tektronix, Inc.*, 100 F. Supp. 2d 1086, 1095 (C.D. Cal. 1999) ("Rule 9(b) may be

18   relaxed as to matters peculiarly within the opposing party's knowledge." (citing 5 C.

19   Wright & A. Miller, Federal Practice and Procedure § 1297, at 416 & n.96 (1990)).  In

20   addition, taking allegations in the complaint as true, the airing of the commercials spans

21   the entire five-year class period and contain no gaps in the airing of commercials.  Dkt.

22   No. 66 at 12-13; *see Astiana v. Ben & Jerry's Homemade, Inc.*, No. 10-cv-04387 PJH,

23   2011 WL 2111796, at *6 (N.D. Cal. May 26, 2011) ("The 'when' is alleged as 'since at

24   least 2006,' and 'throughout the class period.'").

25        Lastly, as to Dr. Pepper's argument that because neither Fitzhenry-Russell nor Dale

26   ever visited the Canada Dry website they cannot state a claim against Dr. Pepper for the

27   contents of the website, the Court disagrees because Dr. Pepper misconstrues plaintiffs'

28   allegations. True, the complaint is devoid of any allegations that Fitzhenry-Russell or Dale

Case No. 17-cv-00564 NC    11

ever visited Canada Dry's website. *See* Dkt. No. 66 at 16-20. However, in carefully reading the complaint, the Court concludes that the allegations regarding the website were inserted to show that Dr. Pepper intended to deceive the public into believing Canada Dry contained ginger root. *Id.* at 11-12 ("Defendants' website and other marketing confirms that defendants intend[] to deceive consumers"); *see Duran v. Creek*, No. 15-cv-05497 LB, 2016 WL 1191685, at *5 (N.D. Cal. Mar. 28, 2016) (finding the same).

Thus, the plaintiffs' fraud, and fraud-related claims based on the Dr. Pepper's Canada Dry commercials survive this motion, and the allegations regarding the Canada Dry website may remain in the complaint because they go to Dr. Pepper's alleged intent to deceive the public.

### 4. The Jack's Ginger Farm Television Commercials Are Not, As a Matter of Law, Inactionable Puffery.

Dr. Pepper argues that the Court should dismiss any claims based on the television commercials because such commercials are "inactionable puffery." Dkt. No. 74-1 at 21. Plaintiffs rebut that the commercials are not puffery, and that Fitzhenry-Russell not only relied on the commercials, but that the commercials are also a longstanding advertising campaign. Dkt. No. 77 at 22-25. The Court agrees with the plaintiffs on both issues; and finds that Dr. Pepper's puffery arguments are blown out of proportion.

"The distinguishing characteristics of puffery are vague, highly subjective claims as opposed to specific, detailed factual assertions." *Haskell v. Time, Inc.*, 857 F. Supp. 1392, 1399 (E.D. Cal. 1994) (citing *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 246 (9th Cir. 1990)). "One test to determine if a statement is only puffery is to inquire whether a reasonable consumer would consider the statement to be true." *Stearns v. Select Comfort Retail Corp.*, No. 08-cv-02746 JF, 2009 WL 1635931, at *11 (N.D. Cal. June 5, 2009). At the pleading stage, the Court cannot conclude that Canada Dry commercials are mere puffery.

To take the most recent of the Canada Dry commercials for example, available at https://www.youtube.com/watch?v=-Y5TowjCdeU, the commercial opens at "Jack's

Case No. 17-cv-00564 NC  12

Ginger Farm," in which what appears to be ginger plants are growing. Next, a farmer is shown in the "ginger" field, and he observes plants being sucked into the ground and he grabs one. The farmer subsequently engages in a tug-of-war with an attractive woman at the other end of the plant, and the farmer is transported to the backyard barbeque the woman is attending. Lo and behold, the "root" of the "ginger" plant is an ice-cold bottle of Canada Dry, and the farmer has a new love interest. Admittedly, the events described in the last three sentences by themselves would be "inactionable puffery," but what happens next is not. The voice-over in the commercial states: "For refreshingly real ginger taste, grab a Canada Dry Ginger Ale. Real ginger, real taste. Real Ahh." The words "real ginger" also appear on the screen.

This voiceover, when combined with (1) the "Jack's Ginger Farm" sign, (2) the field that appears to be growing ginger, and (3) the words that appear on the screen at the end of the commercial, lead the Court to conclude that the commercial cannot simply be considered puffery. These factors could lead a reasonable consumer to believe that Canada Dry Ginger Ale contains ginger root. *Stearns*, 2009 WL 1635931, at *11. The question is not whether a reasonable and "minimally competent" human being would think cans of Canada Dry grow from fake ginger plants on Jack's fictional Ginger Farm. Dkt. No. 81 at 19 n.12. Obviously not. The question is whether the commercials lead reasonable consumers to believe Canada Dry contains ginger root. *See* Dkt. No. 77 at 24. Whether a drink does or does not contain ginger root is not a vague or subjective question, it is a clear fact-based question. *Haskell*, 857 F. Supp. at 1399. Either the drink contains ginger root, or it does not.

### 5. Because Dr. Pepper's Television Commercials Constitute A Longstanding Campaign, the Plaintiffs Need Not Allege That They Personally Relied On The Commercials.

The plaintiffs also argue against the motion to dismiss their fraud and fraud-related claims by asserting they pled a longstanding advertising campaign, which means they would not be required to plead that they had actually relied on Dr. Pepper's commercials. Dkt. No. 77 at 22; *Opperman v. Path, Inc.*, 87 F. Supp. 3d 1018, 1047 (N.D. Cal. 2014).

Case No. 17-cv-00564 NC    13

The Court in *Opperman* listed six factors for a Court to consider in determining if a campaign should be considered longstanding. These factors are (1) that a plaintiff must plead she actually viewed or heard the advertisement; (2) the campaign "should be sufficiently lengthy in duration, and widespread in dissemination, that it would be unrealistic to require the plaintiff to plead each misrepresentation she saw and relied upon"; (3) the complaint must describe and "preferably attach" "a 'representative sample'" of the advertisements to provide notice to the defendant "of the precise nature of the misrepresentation claim—that is, what, in particular, the defendant is alleged to have said, and how it was misleading"; (4) "the degree to which the alleged misrepresentations contained within the advertising campaign" are similar or identical to each other; (5) if there are no "specific misrepresentations, a complaint subject to Rule 9(b)'s requirements should plead with particularity, and separately, when and how each named plaintiff was exposed to the advertising campaign"; and (6) "the court must be able to determine when a plaintiff made her purchase or otherwise relied in relation to a defendant's advertising campaign, so as to determine which portion of that campaign is relevant." *Id*. at 1048-51.

Fitzhenry-Russell easily satisfies the first four factors: (1) she saw the commercials; (2) the commercials have been airing at different times throughout the class period; (3) the complaint attaches URLs linking to the commercials on Youtube;[5] and (4) each of the commercials contains certain key commonalities, namely the "Jack's Ginger Farm" sign, the setting of the ginger field, and identical voiceovers at the end of the commercials stating "Real Ginger, Real Taste." The Court need not dive deeply into the fifth factor, because the "specific misrepresentation" alleged to be in the commercials is the statement "Real Ginger," meaning that Canada Dry contained actual ginger root. Named plaintiff Dale's failure to allege he saw or heard the commercials does not mean that the fifth

---

[5] The Court was unable to access the video at https://www.youtube.com/watch?v=nvQKChf_ooc, as it has now been marked as private on Youtube. The plaintiffs described the video with substantial detail, and the Court accepts those facts as true for purposes of this motion. Plaintiffs are cautioned, however, that they will have to locate an available copy of the commercial if they wish to use it at a later time in the proceedings.

1 element of *Opperman* is not met. As for the sixth element, reliance, Fitzhenry-Russell
2 alleges she bought one case of Canada Dry per year over the past two years. Dkt. No. 66
3 at 16. Fitzhenry-Russell further alleges that "on at least five occasions over the past five
4 years, [she] saw the TV advertisements . . . . She does not recall the exact dates or times
5 she viewed the advertisements, although she recalls seeing the advertisement with the 'root
6 of relaxation' voiceover at least one time approximately one year ago." *Id*. at 17. Lastly,
7 Fitzhenry-Russell alleges that Dr. Pepper's "advertisements made her want to purchase
8 Canada Dry ginger ale, and, in fact, she did purchase Canada Dry Ginger Ale after viewing
9 the advertisements and in reliance upon the truthfulness of the claims in the
10 advertisement." *Id*. These allegations are sufficient to plead reliance by Fitzhenry-
11 Russell.

Thus, the plaintiffs need not further allege reliance on the commercials as to fraud.

### C. The Claims In The Complaint Are Not Preempted.

Dr. Pepper moves to dismiss all of the claims in the complaint as preempted because the plaintiffs seek to add additional food labeling requirements in violation of the Federal Food, Drug & Cosmetic Act (FDCA). Dkt. No. 74-1 at 22-23. The plaintiffs disagree with Dr. Pepper's characterization of their claims because the FDCA and its implementing regulations does not expressly require or permit Dr. Pepper to use the phrase "Made From Real Ginger" in its packaging. Dkt. No. 77 at 25.

The purpose of the FDCA is to "protect the health and safety of the public at large." *POM Wonderful LLC v. Coca-Cola Co.*, 134 S. Ct. 2228, 2234 (2014). To that end, the "FDCA prohibits the misbranding of food and drink." *Id.* "Congress amended the FDCA by enacting the Nutrition Labeling and Education Act ('NLEA') to 'clarify and strengthen [the FDA's] authority to require nutrition labeling on foods . . . .'" *Sciortino v. Pepsico, Inc.*, 108 F. Supp. 3d 780, 796 (N.D. Cal. 2015) (quoting *Nat'l Council for Improved Health v. Shalala*, 122 F.3d 878, 880 (10th Cir. 1997)). "The purpose of the NLEA was 'primarily to establish a national uniform labeling standard[.]'" *Id.* (quoting *In re Farm Raised Salmon Cases*, 42 Cal. 4th 1077, 1091 n.12 (2008)).

Case No. 17-cv-00564 NC           15

1    To create this uniform labeling standard, the NLEA preempted state laws on misbranding, codified at 21 U.S.C. § 343-1(a). *POM Wonderful*, 134 S. Ct. at 2234. The NLEA contains two express preemption clauses, and there is a presumption against preemption, so the preemption clauses must be construed narrowly. *Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111, 1118 (N.D. Cal. 2010) ("Section 343-1(a)(4) expressly preempts any state or local 'requirement for nutrition labeling of food that is not identical to the requirement of section 343(q).' Section 343-1(a)(5), in turn, preempts state or local governments from imposing any requirement on nutrient content claims made by a food purveyor 'in the label or labeling of food that is not identical to the requirement of section 343(r).'").

"Courts in this district generally find express preemption under the FDCA only when: (1) the FDA requirements with respect to a particular food label or package is clear; and (2) the product label or package at issue is in compliance with that policy, such that plaintiff necessarily seeks to enforce requirements in excess of what the FDCA, NLEA, and the implementing regulations require." *Ivie v. Kraft Foods Glob., Inc.*, No. 12-cv-02554 RMW, 2013 WL 685372, at *8 (N.D. Cal. Feb. 25, 2013) (citing *Lam v. General Mills, Inc.*, 859 F. Supp. 2d 1097, 1102-03 (N.D. Cal. 2012)). Essentially, the rule is that if the content of some label is expressly permitted, a state may not forbid it, as that would lead to inconsistencies in the law of food labeling. However, if the requirements the state seeks to impose are *different* than those covered by the FDCA, a state is not precluded from creating law on that issue.

For purposes of this motion, the Court is not persuaded that the plaintiffs' claims are preempted. Plaintiffs do not seek to change the labeling on Canada Dry from describing its flavors as "natural" to being described as "artificial," as Dr. Pepper suggests. Dkt. No. 81 at 21. Plaintiffs seek to enjoin Dr. Pepper from printing the "Made From Real Ginger" statement on cans of Canada Dry Ginger Ale. Dkt. No. 66 at 30-31. Dr. Pepper relies on 21 U.S.C. § 343(k), which deals with misbranded artificial flavors, and provides that if a product contains artificial flavors, that fact must be disclosed. Dr. Pepper then

Case No. 17-cv-00564 NC          16

directs the Court to 21 C.F.R. § 101.22, which discusses the difference between artificial and natural flavors. Dr. Pepper's argument misses the mark.

The Canada Dry Nutrition Facts label states that the ginger ale contains "natural flavors," and the plaintiffs have never argued anything to the contrary. *See* Dkt. No. 66 at 2. The plaintiffs do not object to the information on the Nutrition Facts label. The plaintiffs *do* take issue with the statement on the front of the can: "Made From Real Ginger." This is a dispute about the ingredients in the can, not the flavor. This is because the claims against Dr. Pepper all arise from the plaintiffs' belief that they were deriving health benefits from the ginger root that was supposedly in Canada Dry. At bottom, this case is not about disgruntled Canada Dry buyers suing because the gingery flavor in Canada Dry turned out not to come directly from actual ginger root, as opposed to being derived from actual ginger root.

Other courts have considered similar claims. For example, in *Red v. Kraft Foods, Inc.*, the court considered claims stating that Vegetable Thins were "Made With Real Vegetables," and another claim stating that Ginger Snaps were "Made with Real Ginger & Molasses." 754 F. Supp. 2d 1137, 1143 (C.D. Cal. 2010). As to the former, the court found that the statement that the Vegetable Thins were made with real vegetables "appears to refer to the products' supposed constituent ingredients and not to flavor," and so the claims were not preempted. *Id*. at 1142-43. As to the second claim in *Red*, the court found that the "Made With Real Ginger & Molasses" language arguably referred to *characterizing flavor*, and because it dealt with flavor, claims arising from that language would be preempted by 21 C.F.R. § 101.22(i).[6] Judge George Wu then went on to discuss the difficulty in distinguishing claims based on flavoring as opposed to those based on ingredients. *Id*. The Court shares Judge Wu's ambivalence on this issue, especially where the parties neglected to fully brief the issue. Because the Court must construe preemption

---

[6] Interestingly, neither party discusses preemption under 21 C.F.R. § 101.22(i), which deals directly with how natural and artificial flavors must be described on products. Because this issue was not briefed, the Court will not give it more attention here.

Case No. 17-cv-00564 NC      17

narrowly, and because the plaintiffs' claims appear to be based on ingredients rather than flavor, the Court does not find the plaintiffs' claims preempted based on the arguments in Dr. Pepper's motion. However, the Court warns plaintiffs that insofar as their claims are based on flavoring, they must be ready to confront 21 C.F.R. § 101.22.

Under the test identified in *Ivie*, the FDA requirements with respect to Ginger Ale must be clear, and the packaging must be in compliance with that policy, so that the plaintiffs are demanding the instituting of requirements exceeding what the regulations require. 2013 WL 685372, at *8. But this test does not apply here, because Dr. Pepper has not identified the requirements that the plaintiffs are expanding on.

Lastly, the Court agrees with Dr. Pepper that the plaintiffs have not shown that the Canada Dry labeling violates any regulations under the FDCA or the NLEA. Dkt. No. 66 at 28 (alleging that Dr. Pepper violated "FDA regulations, including but not limited to 21 C.F.R. 101.3, 101.4, 101.13, 101.14, and 101.22"). However, Dr. Pepper did not bring a motion to dismiss as to plaintiffs' allegations that these specific regulations were violated in any detail. *See* Dkt. No. 74-1 at 24. The Court will not guess what alleged regulatory violations Dr. Pepper is challenging.

## IV. CONCLUSION

For the reasons stated above, the Court DENIES Dr. Pepper's motion to dismiss for lack of personal jurisdiction, and DENIES Dr. Pepper's motion to dismiss under Rule 12(b)(6). Dr. Pepper must file an answer to the complaint by October 6, 2017.

**IT IS SO ORDERED.**

Dated: September 22, 2017   _____
NATHANAEL M. COUSINS
United States Magistrate Judge