**BAKER BOTTS L.L.P.**
Jonathan A. Shapiro (SBN# 257199)
jonathan.shapiro@bakerbotts.com
101 California Street, Suite 3600
San Francisco, CA 94111
Telephone:	(415) 291-6204
Facsimile:	(415) 291-6304

Van H. Beckwith (*pro hac vice*)
van.beckwith@bakerbotts.com
Jessica E. Underwood (*pro hac vice*)
jessica.underwood@bakerbotts.com
2001 Ross Avenue, Suite 600
Dallas, TX 75201-2980
Telephone:	(214) 953-6500
Facsimile:	(214) 953-6503

Attorneys for Defendants
DR PEPPER SNAPPLE GROUP, INC.

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACKIE FITZHENRY-RUSSELL, ROBIN DALE, AND GEGHAM MARGARYAN individuals, on behalf of themselves, the general public and those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>DR PEPPER SNAPPLE GROUP, INC., DR PEPPER/SEVEN UP, INC., and DOES 1-50,<br><br>Defendants. | Case Nos. 5:17-cv-00564-NC (lead); 5:17-02341-NC (consolidated); 5:17-cv-04435-NC (consolidated)<br><br>**JOINT STATEMENT REGARDING COMMUNICATION DURING BREAK AT DEPOSITION** |

The parties have met and conferred in an attempt to resolve a dispute relating to a communication between Plaintiff Robin Dale and her counsel Adam Gutride during a break at her deposition. The parties dispute whether Mr. Gutride's conduct was proper, and respectfully request that the Court resolve their differences.

**DEFENDANTS' STATEMENT:**

Mr. Gutride should be sanctioned because he demanded a break, over objection, apparently to coach Ms. Dale to change her testimony on a critical case fact—when she last purchased the Canada Dry Ginger Ale product at issue in this case, and thus whether she even has standing to bring this case on behalf of a putative class.

Ms. Dale claimed in her complaint that she purchased the product from Safeway every two to three months over the last four years. *See* Dkt. 97 ¶ 64. However, the records of her club card purchases produced by Safeway did not reflect a single purchase of Canada Dry Ginger Ale during the class period, i.e., from December 28, 2012 to the present. *See* Decl. ¶ 4. At Ms. Dale's deposition, she testified unequivocally that she had not purchased the product since 2010:

> 6 Q When did you last buy Canada Dry Ginger
> 7 Ale?
> 8 A Prior to 2010.
> 9 MR. GUTRIDE: Wait.
> 10 Q (BY MR. BECKWITH) And where did you buy it
> 11 prior to 2010?
> 12 A It would have been at Safeway.

*See* Ex. A, Dale Tr. at 123:6-12. Immediately after this testimony, Plaintiffs' counsel demanded a break, twice—first in the middle of a *pending question* and then again, as defense counsel was preparing to continue his line of questioning. Plaintiffs' counsel took the break anyway, over objection:

> 13 Q Safeway. Okay. So that's why we don't
> 14 see it on this sheet, is because you didn't buy
> 15 Canada Dry Ginger Ale -- . . .
> 18 Q (BY MR. BECKWITH) -- during this time
> 19 period?
> 20 MR. GUTRIDE: I -- I object. Lacks
> 21 foundation; calls for speculation. You can answer.
> 22 **And I would like to take a break, please.**
> 23 A I don't recall, because it could have been
> 24 too long ago.
> 25 Q (BY MR. BECKWITH) Right. And so --
> 1 MR. GUTRIDE: **Let's take a break, please.**
> **2 Thanks.**
> 3 Q (BY MR. BECKWITH) Hang on. So --
> 4 MR. GUTRIDE: **No. Let's take a break.**
> 5 Let's -- I appreciate that. You'll have more time.
> 6 **Let's take a break now.**

> 7 THE VIDEOGRAPHER: Okay. And we are off
> 8 the record at --
> 9 MR. BECKWITH: Well, wait. I'm not
> 10 consenting to the break. I'm asking questions. . . .

*Id.* at 123:13-125:1 (emphasis added). When Ms. Dale returned several minutes later, Plaintiffs' counsel refused to let her say what was discussed, on privilege grounds. *Id.* at 125:7-18.

Minutes later, she announced that she needed to change her earlier testimony: she then stated that the last time she purchased the product was actually ***much later than 2010***: "I would like to say I made a mistake when I said 2010. I was continuing to buy Canada Dry Ginger Ale up until 2014." *Id.* at 133:8-10. When asked what made her realize the mistake, Ms. Dale answered, "Just my previous statements. I remember buying it up until 2014." *Id.* at 133:11-14. Ms. Dale could not explain, however, why the records of her Safeway purchases ***did not reflect any purchases of the drink from December 2012 forward***, even though that was where she claimed she purchased the drink. She claimed the Safeway records must not have "track[ed] . . . every time [she] purchase[d] something at Safeway," *id.* at 135:8-19, even though she earlier testified she tried to use her Safeway club card every time she visited the store, *id.* at 117:13-15.[1]

Mr. Gutride's decision to take a break, over objection, and then instruct the witness not to answer questions about what was discussed on the break was improper and is grounds for reopening the deposition. "Because a deposition generally proceeds as at trial, courts have held that once a deposition starts, counsel has no right to confer during the deposition except to determine if a privilege should be claimed." *See BNSF Ry. Co. v. San Joaquin Valley R. Co.*, No. 1:08-CV-01086, 2009 WL 3872043, at *3 (E.D. Cal. Nov. 17, 2009). Several Judges in this District have explicitly made this rule part of their own standing orders.[2] This Court has granted a motion to reopen a deposition when the circumstances indicated the deponent's counsel took a break to coach the witness, rather than for the permissible purpose of determining whether a

---

[1] Notably, her statement about having purchased the product last in early 2014 (over four years ago) is still flatly inconsistent with the live Complaint, which says she has purchased the product regularly, every two to three months, "[o]ver the last four years." *See* Dkt. 97 ¶ 64.

[2] *See* Judge William Alsup's Supplemental Order to Order Setting Initial CMC in Civil Cases ("Private conferences between deponents and attorneys in the course of examination, including a line of related questions, are improper and prohibited except for the sole purpose of determining whether a privilege should be asserted."); Judge Edward M. Chen's Standing Order (similar language); Judge Jeffrey White's Deposition Standing Order (similar language).

privilege should be asserted. *See In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 14-CV-2058-SC, 2015 WL 12942210, at *5 (N.D. Cal. May 29, 2015).

Ms. Dale's testimony after the break about ***a critical case fact***—a fact that controls whether she is even a member of the putative class—***changed*** after her counsel demanded a break, over objection. When Mr. Gutride demanded the emergency break, the pending question most assuredly did not call for privileged information, nor has Mr. Gutride claimed that it did.

This Court "may impose an appropriate sanction—including reasonable expenses and attorney's fees incurred by any party—on a person who impedes, delays, or frustrates the fair examination of the deponent." Fed. R. Civ. P. 30(d)(2). As sanctions for Mr. Gutride's behavior, Defendants ask that the Court either: (1) reopen the deposition, at Plaintiffs' expense, so Ms. Dale may testify regarding her conversation with counsel during the break, or (2) strike the inconsistent testimony after the break based on the record of coaching that already exists.[3]

**PLAINTIFFS' STATEMENT:**

These discovery dispute letters are the second volley in Defendants' effort to manufacture bogus challenges to the adequacy of the class representatives and their attorneys.[4] Because the Canada Dry "made from real ginger" labels, marketing, and formula have remained identical throughout the class period, Defendants know that common issues are predominant. They also know that their misrepresentation is material, as their marketing studies admit that their goal is to mislead consumers into believing that the soda contains real ginger root. This discovery dispute is a "coming attraction" of Defendants' remaining hope of defeating class certification—to convince the Court that Plaintiffs and their counsel cannot be trusted to look after the best interests of the class. Nothing could be further than from the truth.

Defendants attack Plaintiffs' counsel, Adam Gutride, for "improperly" demanding a break during a deposition and (2) "coaching" the witness. There was nothing improper about Mr. Gutride's conduct, no "coaching," and no basis for the requested relief. The transcript shows that

---

[3] If the Court reopens the deposition, Defendants simply seek their counsel's fees to take the deposition (not to travel to or prepare for the deposition), and the costs of airfare, hotel, court reporter, and videographer for the deposition.

[4] The first was Defendants' attack on Mr. McCrary and their "notice" of "potential issues" with pro hac vice application. (Dkt.## 120-121.)

Mr. Gutride took no breaks while any question was pending. He objected to one question and then said, "You can answer. And I would like to take a break, please." After the answer had been given, he took the break. The witness later made a simple correction, which was fully consistent with her prior and subsequent testimony. If anything, Mr. Gutride is to be commended for ensuring that his client testified truthfully. *See, e.g., Department of Forestry and Fire Protection v. Howell,* 18 Cal.App.5th 154 (2017) ("the trial court also castigated [] lead counsel for failing to intervene to stop its witnesses from testifying untruthfully.")

Defendants' counsel argue wrongly that that the "Local Rules" forbid a witness from taking a break during "a line of questioning." Mr. Beckwith (the worldwide head of litigation for Baker Botts), who took the depositions of all three Plaintiffs (none of whom had ever been deposed), used his incorrect belief to hold all three Plaintiffs hostage even after a question had been answered and they needed a break.[5] There is no rule allowing the questioning attorney to decide when a break may be taken. Defendant cites only to standing orders from three other judges. The only relevant rule prohibits a lawyer from "coach[ing] the deponent or suggest[ing] answers, whether through objections or other means," to which Plaintiffs' attorneys strictly adhered. N.D. Cal. Guidelines for Professional Conduct, § 9(i).[6] The same rule prohibits "harassing" the witness, *id.*, to which defense counsel's adherence was, at best, questionable.

Defendants' main complaint is that when he asked Ms. Dale "When did you last buy Canada Dry Ginger Ale," she mistakenly answered "2010." She was confused, and Mr. Gutride

---

[5] (Dale Trans. 124 (GUTRIDE: "Let's take a break, please. Thanks." BECKWITH: "Hang on. So" GUTRIDE: No. Let's take a break. Let's -- I appreciate that. You'll have more time. Let's take a break now. BECKWITH: Well, wait. I'm not consenting to the break. I'm asking questions."); Margaryan Trans. 93:13-94:25 ("take a lunch break now," BECKWITH: "a lunch break. No. We're going to keep going."; "Take a lunch break now. We're taking a break.", Mr. BECKWITH: "No, we're not."); Russell Trans. 85:24-86:12 ("Let's take a break." BECKWITH: "No, I need no."…"I'm in the middle of this line."). Mr. Beckwith even once asked a question while the witness had already removed the microphone and was walking out of the room to take a restroom break, so he could falsely accuse counsel and the witness of taking a break when a question was pending. (Russell. Trans. 85:24-88:1.)

[6] In the meet-and-confer, Defendants cited to *In re Cathode Ray Tube (CRT) Antitrust Litigation* (N.D. Cal., May 29, 2015, No. 14-CV-2058-SC) 2015 WL 12942210, where the parties had *agreed*, in advance, "not to allow breaks during a question or a line of questions," and the court criticized counsel who *admitted* to coaching the witness, in breach of the agreement. If a court finds that counsel has violated the Federal Rules, it will sometimes impose a "*Clifton* Order" to prohibit off-the-record conferences during depositions. *See, e.g., Vestin Realty Mortg. II, Inc. v. Klaas* (S.D. Cal., Oct. 25, 2010, No. CIV. 08CV2011 LAB) 2010 WL 4259946, at *3-4. But no such violation occurred, no such order has been entered, and none is needed.

JOINT STATEMENT            4            CASE NO. 3:17-cv-00564-NC

knew it, as she had already testfied that she reviewed and approved the Complaint that cites later purchases. (Dale Trans. 24:7-17, *see* Dkt.# 97 ¶ 64.) After she corrected her misstatement to 2014, defense counsel asked her to explain the change, and she testfied that she remembered purchasing until January 2014, which was shortly after she was hired to work at a natural foods store, and "they pointed out the reason they don't carry [Canada Dry]… They don't carry things that aren't … 100 percent natural." (Dale Trans. 134:1-5.) She had previously given fully consistent testimony that she began working for the natural food store in late 2013 and thereafter "start[ed] trying to avoid HFCS or high-fructose corn syrup in [her] diet." (Id. 53-54, esp. 54:21-22). She also previously had been asked about her purchases of "all kinds of ginger ales" and had answered "Prior to 2014?" (Id. 122:12).  Defense counsel asked "Why did you pick 2014?" and she answered That's when I started working at the natural food store – Q. Okay.  A. And I became more aware of labels." (Id. 122:13-17). After she corrected the misstatement from 2010 to 2014, defense counsel also asked, "So what about 2010 was so strong in your memory when you were giving testimony before you and your lawyer walked out of the room?"  She answered, "I -- I believe that year stuck in my head just because I noticed different labels at that point." (Id. 140:9-17.) Defense counsel continued: "In 2010, did the label change? A. I believe it has….It started saying "made from real ginger."" (Id. 145:17-20.) Not only was she correct that Canada Dry adopted the misleading label around 2010, but she had already testified that 2010 was when she noticed that change: "Q...[H]ad you ever considered whether the ginger ale you were buying was made from real ginger in some form or fashion, some ingredient or other?" A. It should say it on the label…I started looking at labels more after 2010." (Id. 28:4-15.) As to why the purchase does not appear in the Club Card records produced by Safeway, she explained that the records must not be complete, as she shops there on average every week and the records reflect far fewer visits. (Id. 222-23). No Safeway witness has testified about the authenticity or completeness of the records.

     In sum, Defense counsel already had a complete opportunity to ask about the correction. He has no right to inquire into the privileged communications that occurred during the break, when no question was pending, and no basis to obtain sanctions.

JOINT STATEMENT       5       CASE NO. 3:17-cv-00564-NC

| | |
|---|---|
| Dated: March 23, 2018 | Respectfully submitted, |
| | **GUTRIDE SAFIER LLP** |
| | */s/ Seth Safier* |
| | Attorneys for Plaintiffs |
| | **BAKER BOTTS L.L.P.** |
| | /s/ *Jonathan A. Shapiro* |
| | Attorneys for Defendants |

### ATTORNEY ATTESTATION

I, Jonathan Shapiro, hereby attest, pursuant to Civil Local Rule 5-1(i)(3) of the Northern District of California, that the concurrence to the filing of this document has been obtained from each signatory hereto.

*/s/ Jonathan A. Shapiro*
Jonathan A. Shapiro
jonathan.shapiro@bakerbotts.com
Counsel for Defendants
DR PEPPER SNAPPLE GROUP, INC. AND
DR PEPPER/SEVEN UP, INC.

### CERTIFICATE OF SERVICE

I hereby certify that on March 23, 2018, I electronically filed the above document with the U.S. District Court for the Northern District of California by using the CM/ECF system. All participants in the case are registered CM/ECF users who will be served by the CM/ECF system.

*/s/ Jonathan A. Shapiro*
Jonathan A. Shapiro