UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACKIE FITZHENRY-RUSSELL and GEGHAM MARGARYAN,<br><br>Plaintiffs,<br><br>v.<br><br>KEURIG DR. PEPPER INC. and CANADA DRY MOTT'S INC.,<br><br>Defendants. | Case No.17-cv-00564-NC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO STRIKE EXPERT TESTIMONY**<br><br>Re: Dkt. No. 225 |

Defendants Keurig Dr. Pepper Inc. and Canada Dry Mott's Inc. move to strike plaintiffs Jackie Fitzhenry-Russell and Gegham Margaryan's experts' testimony. *See* Dkt. No. 225. Defendants also renewed their motion to exclude Dr. Dennis and Mr. Weir's expert testimony. Because Plaintiffs' experts occasionally testify regarding matters outside their area of expertise, the Court GRANTS in part and DENIES in part Defendants' motion.

**I.   Procedural Background**

On June 26, 2018, the Court granted class certification and denied Defendants' *Daubert* motion to exclude the testimony of Plaintiffs' experts: Dr. Michael Dennis and Mr. Colin Weir. *See* Dkt. No. 199. In their reply, Plaintiffs produced an expert report from Dr. Randolph Culp. *See* Dkt. No. 192-1. Dr. Culp was not subject to Defendants' *Daubert* motion.

On July 18, 2018, the Court extended various expert discovery deadlines. *See* Dkt. No. 216. In accordance with that Order, Plaintiffs produced two additional expert reports from Dr. Manoj Hastak and Ms. Annette Hottenstein.

Defendants now move to strike portions of Dr. Culp's expert testimony, as well as Dr. Hastak and Ms. Hottenstein's testimony in their entirety. Defendants also renew their previous *Daubert* motion to strike Dr. Dennis and Mr. Weir's testimony. *See generally*, Dkt. No. 225.

## II. Legal Standard

### A. Motion for Reconsideration

Federal Rule of Civil Procedure 60(b) permits a court to relieve a party from any prior order or decision for: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that could not have been discovered with reasonable diligence; and (3) any other reason that justifies relief.

Under Local Rule 7-9, "[n]o party may notice a motion for reconsideration without first obtaining leave of the Court to file a motion." The rule also limits motions for reconsideration to three enumerated grounds: (1) a material difference in fact or law exists that could not have been discovered with reasonable diligence at the time of the decision sought to be reconsidered; (2) the emergence of new material facts or change in law after the decision; and (3) a manifest failure by the Court to consider material facts or dispositive legal arguments. *See* N.D. Cal. Local Rule 7-9. Additionally, "[n]o motion for leave to file a motion for reconsideration may repeat any oral or written argument" previously made. *Id.*

### B. Motion to Strike Expert Testimony

Federal Rule of Evidence 702 permits opinion testimony by witnesses qualified as an expert by knowledge, skill, experience, training, or education if:

(1) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(2) the testimony is based on sufficient facts or data;

2

(3) the testimony is the product of reliable principles and methods; and

(4) the expert has reliably applied the principles and methods to the facts of the case.

"The duty falls squarely upon the district court to 'act as a gatekeeper to exclude junk science that does not meet Federal Rule of Evidence 702's reliability standards." *Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 463 (9th Cir. 2014) (quoting *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982 (9th Cir. 2011)). Rule 702 "assign[s] to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993). In *Daubert*, the United States Supreme Court identified "four factors that may bear on the analysis: (1) whether the theory can be and has been tested, (2) whether the theory has been peer reviewed and published, (3) what the theory's known or potential error rate is, and (4) whether the theory enjoys general acceptance in the applicable scientific community." *Murray v. S. Route Maritime SA*, 870 F.3d 915, 922 (9th Cir. 2017) (citing *Daubert*, 509 U.S. at 593–94.)

Importantly, the Court's duty is to evaluate the soundness of the expert's methodology, not the correctness of the expert's conclusions. *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010). "Shaky, but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." *Id.* The Court has broad discretion and flexibility in assessing an expert's reliability. *Estate of Barabin*, 740 F.3d at 463.

**III. Discussion**

    **A. Dr. Culp**

Defendants argue that two portions of Dr. Culp's expert report should be stricken because he disclaimed those opinions in his deposition. *See* Dkt. Nos. 225 at 7–8; 244 at 3–4. Specifically, Defendants argue that paragraphs 45 through 49 and 50 through 54 should be stricken. *See* Dkt. No. 244 at 3–4. Plaintiffs concede that two sentences within those paragraphs should be stricken. *See* Dkt. No. 235 at 18.

3

Paragraphs 45 and 49 of Dr. Culp's expert report criticizes the report by Defendants' expert, Dr. Krueger, while paragraphs 46 through 48 of Dr. Culp's expert report discusses ginger ale recipes and commercial processes for making ginger ale. *See* Dkt. 225-2 ("Culp Report") ¶¶ 45–49. Plaintiffs concede that "Dr. Culp will not testify as to the source of the perceptible flavor in Canada Dry or Internet recipes for making ginger ale, as those facts fall more within Ms. Hottenstein's expertise." Dkt. No. 235 at 18. In his testimony, Dr. Culp conceded that he is personally unfamiliar with the ginger ale recipes referenced in paragraphs 46 through 48 of his report. *See* Dkt. No. 225-3 ("Culp Depo.") at 45:6–47:14. In light of Plaintiffs' concession, the Court strikes paragraphs 46 through 48.

In paragraphs 45 and 49, Dr. Culp opines that Dr. Krueger's analysis was flawed because Dr. Krueger failed to consider or test different methods for making ginger ale. *See* Culp Report ¶¶ 45, 49. Given that Dr. Culp did not review recipes or brewing processes for other ginger ales, these paragraphs lack foundation; Dr. Culp cannot criticize Dr. Krueger for failing to account for different brewing methods when he was also not aware of other brewing methods. Accordingly, the Court also strikes paragraphs 45 and 49 of Dr. Culp's expert report.

Paragraphs 50 to 54 of Dr. Culp's report discusses whether the concentration of ginger compounds in Defendants' ginger ale is sufficient to impart a "ginger flavor." *See* Culp Report ¶¶ 50–54. In light of Plaintiffs' concession that Dr. Culp will not testify as to the source of perceptible ginger flavor in Defendants' ginger ale, the Court strikes paragraphs 50 to 54 of Dr. Culp's report. In sum, the Court GRANTS Defendants' motion to strike Dr. Culp's testimony and strikes paragraphs 45 to 54.

**B. Dr. Hastak**

Dr. Hastak's report can be sorted into four categories: (1) consumer impressions associated with the "real ginger" claim (*see* Dkt. No. 225-4 ("Hastak Report") ¶¶ 12–20); (2) inferences about the amount of ginger in Defendants' ginger ale (*id.* ¶¶ 21–25); (3) inferences about the healthfulness of Defendants' ginger ale (*id.* ¶¶ 26–40); and (4) the

4

materiality of Defendants' "real ginger" claim (*id.* ¶¶ 41–50). Defendants contend that Dr. Hastak's report should be stricken in its entirety because it is cumulative or speculative. *See* Dkt. No. 225 at 8–10. The Court agrees.

The portions of Dr. Hastak's report that fall into the first and fourth categories simply repeat analysis done by Dr. Dennis and the contents of Defendants' internal documents. Dr. Hastak offers no additional analysis of his own for those two categories. Plaintiffs can simply call Dr. Dennis to testify as to his own analysis and enter Defendants' internal documents into evidence. These portions of Dr. Hastak's report are entirely cumulative.

The remaining portions of Dr. Hastak's report discusses high-level frameworks for understanding misleading advertising and labels. Dr. Hastak, however, does not tie any of his theories to available data or facts in this case. For example, in paragraphs 21 to 25, Dr. Hastak explains the concept of "inter-attribute misleadingness" but does not apply that concept to the facts of this case beyond a conclusory statement that "[m]ost consumers would assume that the [real ginger] claim would not be made . . . if the product did not contain a meaningful amount of ginger." Hastak Report ¶ 25. Dr. Hastak's failure to meaningfully engage with the facts and data of this case is insufficient for Rule 702. *See* Fed. R. Evid. 702(d) (expert opinion testimony is admissible if "the expert has reliably applied the principles and methods to the facts of the case.").

In paragraphs 26 to 28, Dr. Hastak discusses "inter-attribute misleadingness" and "exploitative misleadingness" as it relates to Plaintiffs' claim that Defendants' "real ginger" claim misleads consumers about the healthfulness of their ginger ale. In the following paragraphs, Dr. Hastak summarizes various internal marketing documents by Defendants that suggest they intended to capitalize on the "health halo" surrounding "natural" products. While Defendants' internal documents may be evidence that they intended to mislead consumers into believing that their ginger ale had health benefits, Dr. Hastak does not offer any analysis of how and whether Defendants' "real ginger" claim actually does so. Dr. Hastak simply summarizes documents that support Plaintiffs' health

5

1  claim; those documents can speak for themselves.

2  Accordingly, the Court GRANTS Defendants' motion and strikes Dr. Hastak's

3  expert testimony.

### C. Ms. Hottenstein

Defendants argue that Ms. Hottenstein's testimony regarding whether the ginger flavor in their ginger ale is from "real" ginger should be stricken because she is unqualified to calculate the sensory perceptibility of an ingredient using long-form math. *See* Dkt. No. 244 at 13. Defendants also argue that Ms. Hottenstein's testimony should be stricken to the extent she testifies that consumers perceive a ginger taste due to the drink's packaging. *See id.* at 15.

Ms. Hottenstein's report first summarizes the analyses conducted by Dr. Culp and Dr. Krueger, both of whom analyzed the amount of ginger compounds—gingerol and shogaols—in Defendants' ginger ale. *See* Dkt. No. 225-6 ("Hottenstein Report") at 13. Because the amount of gingerol and shogaols in a beverage can be used to approximate the amount of ginger oleoresin in that beverage, Ms. Hottenstein used Dr. Culp and Dr. Krueger's data in a series of calculations to determine the ginger oleoresin content of Defendants' ginger ale. *See id.* at 14–19. She then cross-referenced the ginger oleoresin levels in Defendants' ginger ale to a standard reference for flavor ingredients to determine whether the ginger flavor in Defendants' ginger ale can be attributed to ginger oleoresin. *See id.* at 19, 21–23. Ms. Hottenstein concludes that although the ginger oleoresin content in Defendants' ginger ale is within "taste threshold," the ginger oleoresin content is too low to be perceptible. *See id.* at 21.

Defendants concede that Ms. Hottenstein has a "long history" of sensory testing, but argue that she has no history of analyzing sensory perceptibility using math. *See* Dkt. No. 244 at 13. Indeed, Defendants point out that this is the first time Ms. Hottenstein has used this method to test perceptibility and, in her deposition, Ms. Hottenstein represented that taste tests are the best way to test perceptibility. *Id.* at 12–13.

These criticisms, however, go to the weight of Ms. Hottenstein's testimony, not its

6

admissibility. The fact that Ms. Hottenstein has apparently never done these calculations before does not undermine the reliability of her opinion. These calculations involve only basic arithmetic, using data produced by Defendants' own expert and ratios published by authorities that Defendants do not contest. Defendants do not suggest that Ms. Hottenstein's calculations were inaccurate or otherwise unreliable.

Similarly, the fact that Ms. Hottenstein's conclusion may be at odds with published taste thresholds is not sufficient grounds for striking her testimony. Ms. Hottenstein reasoned that the amount of ginger oleoresin in Defendants' ginger ales is too low to taste because the true taste threshold for ginger oleoresin in Defendants' ginger ales may be higher than normal. According to Ms. Hottenstein, this is because Defendants' ginger ales are carbonated, sweetened, consumed chilled, and flavored with other compounds. Ms. Hottenstein drew upon her own expertise as well as scholarship by other authorities to form her conclusions.[1] *See* Hottenstein Report at 21. Accordingly, the Court declines to exclude Ms. Hottenstein's testimony regarding the perceptibility of ginger oleoresin in Defendants' ginger ale.

Defendants also argue that Ms. Hottenstein's opinions regarding product packaging should be stricken because she has no expertise with regards to consumer psychology and packaging. The Court agrees. In her deposition, Ms. Hottenstein admitted that whether product packaging can influence consumer perception is beyond her area of expertise. *See* Dkt. No. 225-6 ("Hottenstein Depo.") at 174:17–175:3.

In sum, the Court GRANTS in part and DENIES in part Defendants' motion to exclude Ms. Hottenstein's testimony and strikes only paragraph 45.

---

[1] Defendants argue that the article cited by Ms. Hottenstein does not support her conclusion. According to Defendants, that article concludes that sugars, such as sucrose, can enhance the perceptibility of "fruity" and "berry-like" flavors. *See* Dkt. No. 244 at 14 n.14. While this partially contradicts Ms. Hottenstein's conclusion that the ginger oleoresin content of Defendants' ginger ales is too low to be tasted, it supports Ms. Hottenstein's other conclusion that it is likely Defendants' ginger ales contain non-ginger compounds designed to mimic the taste of ginger. *See* Hottenstein Report at 22. The fact that sugar enhances certain flavors lends credence to Plaintiffs' theory of the case— Defendants' ginger ales contain a miniscule amount of "real" ginger, but are able to "get away with it" via trickery (*e.g.*, by using sugar to amplify their ginger ale's ginger flavor).

7

### D. Reconsideration of Dr. Dennis and Mr. Weir's Testimony

Defendants' renewed motion to strike Dennis and Weir's testimony is a disguised motion for reconsideration. *See* Dkt. No. 225 at 13. Because Defendants identify no grounds for reconsideration, the motion is DENIED. *See* N.D. Cal. Local Rule 7-9(b).

## IV. Conclusion

The Court GRANTS in part Defendants' motion to strike expert testimony as follows:

1. GRANTS Defendants' motion to strike paragraphs 45–49 and 50–54 of Dr. Culp's expert report;
2. GRANTS Defendants' motion to strike Dr. Hastak's testimony in its entirety;
3. GRANTS Defendants' motion to strike paragraph 45 of Ms. Hottenstein's expert report.

Defendants' motion is otherwise DENIED. No costs or fees are awarded in connection with this Order.

**IT IS SO ORDERED.**

Dated: November 2, 2018

_____
NATHANAEL M. COUSINS
United States Magistrate Judge