UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACKIE FITZHENRY-RUSSELL and GEGHAM MARGARYAN,<br><br>Plaintiffs,<br><br>v.<br><br>KEURIG DR. PEPPER INC. and CANADA DRY MOTT'S INC.,<br><br>Defendants. | Case No.17-cv-00564-NC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO SEAL**<br><br>Re: Dkt. Nos. 224, 226, 228, 234, 236, 242, 243, 246 |

In this class action, plaintiffs Jackie Fitzhenry-Russell and Gegham Margaryan allege defendants Keurig Dr. Pepper Inc. and Canada Dry Mott's Inc.[1] defrauded California consumers by marketing their Canada Dry Ginger Ale ("Canada Dry") as "Made from Real Ginger." According to Plaintiffs, Dr. Pepper defrauds consumers because Canada Dry is made with a ginger derivative, ginger oleoresin, not ginger root. Plaintiffs also allege that Canada Dry contains less ginger than consumers are led to expect. Finally, Plaintiffs allege that Canada Dry's labeling deceives consumers about its health benefits.

Dr. Pepper moves for summary judgment on all three of Plaintiffs' theories, arguing that no reasonable consumer would be misled by Canada Dry's labeling.

---

[1] Though the Court recognizes that there are two related defendants in this action, the Court will refer to defendants collectively as "Dr. Pepper" in the singular.

Because the Court finds that there are genuine disputes of material fact, the Court GRANTS IN PART Dr. Pepper's motion for summary judgment with regards to Plaintiffs' claim that Dr. Pepper's "Made from Real Ginger" label is misleading as to the amount of ginger in Canada Dry. The Court DENIES IN PART Dr. Pepper's motion with regards to Plaintiffs' claim that Dr. Pepper's label is misleading as to the form of ginger in and health benefits of Canada Dry. The Court also GRANTS IN PART and DENIES IN PART the parties' motions to seal.

## I. Background

### A. Procedural Background

The operative complaint alleges claims under (1) the Consumer Legal Remedies Act, Cal. Civ. Code § 1750; (2) the false advertising law, Cal. Bus. & Prof. Code § 17500; (3) common law fraud; and (4) unlawful, unfair, and fraudulent business practices, Cal. Bus. & Prof. Code § 17200. Dkt. No. 97. On June 26, 2018, the Court certified a class of "[a]ll persons who, between December 28, 2012 and the present, purchased any Canada Dry Ginger Ale products in the state of California." Dkt. No. 199 at 37.

### B. Undisputed Facts

Canada Dry is a ginger ale made and sold by Dr. Pepper. Dr. Pepper makes Canada Dry using ginger extract and a few other ingredients to capture the traditional blend of "citrus and ginger" flavors. *See* Dkt. No. 227-5 ("Kramer Depo.") at 56:7–18. The ginger extract used by Dr. Pepper is "ginger oleoresin," which is made by Dr. Pepper's flavor manufacturer, Givaudan. *See* Dkt. No. 227-11 ("Hassel Depo.") at 12:4–15; 33:6–16; 38:16–17. Givaudan imports dry ginger root, grinds it, and mixes it with other compounds to "pull[] flavor out of" the ginger and create ginger oleoresin. *Id.* at 14:19–22; 23:18; 24:22–25:15. According to Mr. Hassel, a scientist working for Givaudan, the process for making ginger oleoresin is similar to creating vanilla extract or coffee. *Id.* at 24:22–24; 27:7–16. From 2012 to 2018, Givaudan processed around 1.5 million pounds of dry ginger root to create ginger oleoresin for Dr. Pepper. *Id.* at 50:13–21.

## II. Legal Standard

The parties agree on the legal standard that applies to this motion. Under Federal Rules of Civil Procedure 56(a), a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Under Rule 56, the moving party bears the initial burden to demonstrate the absence of a genuine issue of material fact. Once the moving party meets its burden, then the non-moving party must cite "particular parts of materials in the record" showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). A "genuine issue" exists if a reasonable jury could find for the non-moving party. *E.g.*, *Open Text v. Box, Inc.*, No. 13-cv-04910-JD, 2015 WL 428365, at *1 (N.D. Cal. Jan. 30, 2015). On summary judgment, the Court does not make credibility determinations or weigh conflicting evidence, as these determinations are left to the trier of fact at trial. *Bator v. State of Hawaii*, 39 F.3d 1021, 1026 (9th Cir. 1994). A party may move for summary judgment on an entire "claim or defense—or the part of each claim or defense." Fed. R. Civ. P. 56(a).

## III. Discussion

### A. Motion for Summary Judgment

"Courts generally consider claims under California's Unfair Competition Law (UCL), False Advertising Law (FAL) and Consumers Legal Remedies Act (CLRA) together." *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 982 (C.D. Cal. 2015). California law makes it unlawful for a business to "disseminate any statement 'which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading . . . .'" Cal. Bus. & Prof. Code § 17500; *see also* Cal. Civ. Code § 1750; Cal. Bus. & Prof. Code § 17200.

False advertising claims are governed by the "reasonable consumer" test. *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008). Under that standard, plaintiffs must "show that members of the public are likely to be deceived." *Id.* (internal citations and quotations omitted). California law prohibits "not only advertising which is false, but

3

also advertising which[,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public." *Kasky v. Nike*, 27 Cal. 4th 939, 951 (2002) (quoting *Leoni v. State Bar*, 39 Cal. 609, 626 (1985)).

The only representation at issue here is Dr. Pepper's claim that Canada Dry is "Made from Real Ginger." Plaintiffs allege that this statement is deceiving for three reasons: (1) it implies that Canada Dry is made from ginger root; (2) it implies that Canada Dry contains a significant amount of ginger; and (3) it misleads consumers about Canada Dry's health benefits.

### 1. Whether Dr. Pepper Implies Canada Dry is Made from Ginger Root

Canada Dry is literally made in part "from" real ginger—it is made using ginger oleoresin, which is made from ginger root.[2] Ginger root is the part of ginger that is normally consumed. *See Ginger Definition*, MERRIAM-WEBSTER., https://www.merriam-webster.com/dictionary/ginger ("a thickened pungent aromatic [root] that is used as a spice and sometimes medicinally"). Plaintiffs, however, argue that Dr. Pepper's label, "Made from Real Ginger," implies that Canada Dry is made using ginger root, not ginger oleoresin. *See* Dkt. No. 97 ("SAC") ¶ 29. Under California law, statements that are literally true may still be unlawful if they are likely to mislead the public. *See Kasky*, 27 Cal. 4th at 951. However, "[l]ikely to deceive implies more than a mere possibility that a [statement] might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." *Lavie v. Proctor & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003).

In *Colgan v. Leatherman Tools Group, Inc.*, 135 Cal. App. 4th 663, 683 (2006), the California Court of Appeal held that a tool manufacturer's representation that its products were "Made in U.S.A." was deceptive as a matter of law. Although the manufacturer's representations were literally true because parts of their products were made or assembled

---

[2] Plaintiffs argue that Dr. Pepper's "Made from Real Ginger" label is literally false. *See* Dkt. No. 237 at 27. The evidence before the Court does not support Plaintiffs' argument. It is undisputed that Dr. Pepper makes Canada Dry from ginger oleoresin, which is made from real ginger. *See, e.g.*, Kramer Depo. at 56:7–18.

4

in the United States, "[s]ignificant working parts of the tools were [made] in foreign countries." *Id.* at 673. Because "[a] reasonable consumer of Leatherman's products with the 'Made in U.S.A.' representation would not expect such foreign manufacturing[,]" the court concluded that the manufacturer's representations were deceptive. *Id.* at 682. The court also affirmed summary judgment against the manufacturer because the manufacturer "presented no evidence suggesting a lack of deception . . . [and] the evidence not in dispute establishes that a significant portion of the various parts of the products were manufactured abroad." *Id.*

Similarly, in *Consumer Advocates v. Echostar Satellite Corp.*, 113 Cal. App. 4th 1351, 1353 (2003), a satellite television provider was sued over its representation that its system allowed consumers to view schedules "up to 7 days in advance" and that 50 channels would be provided. Plaintiffs in *Echostar* argued that the representations were misleading because the system could only view schedules up to 3 days in advance and that less than 50 channels were available at all hours of the day. *Id.* at 1357. The television provider argued that the statement only meant that its system had the *capacity* to show schedules 7 days in advance. *Id.* at 1362. It also argued that its statement did not imply that 50 channels would be available at all times. *Id.* The California Court of Appeal conceded that the provider's arguments were "possible, if technical, interpretations of the statements," but reiterated that "[a] perfectly true statement couched in such a manner that it is likely to mislead or deceive the consumer, such as by failure to disclose other relevant information, is actionable." *Id.* (quoting *Day v. AT&T Corp.*, 63 Cal. App. 4th 325, 332–33 (1998)).

Here, Dr. Pepper's statement that Canada Dry is "Made from Real Ginger" is misleading under Plaintiffs' first theory if it is likely that reasonable consumers would understand that statement to imply that Canada Dry is made using ginger root, not ginger extract made from ginger root. The Court concludes that Plaintiffs have presented sufficient evidence creating a genuine dispute of material fact on this issue.

Plaintiffs presented survey results conducted by Dr. Michael Dennis. In his survey,

5

Dr. Dennis asked respondents "what is your understanding of the statement "***Made from Real Ginger***" on the Canada Dry Ginger Ale?" *See* Dkt. No. 237-25 ("Dennis Report") at 34. Respondents were given four choices:

1. Ginger root, which is part of the ginger plant, not an extract;
2. Ginger oil, which is extracted from the ginger root using steam;
3. Ginger oleoresin, which is extracted from the ginger root using solvent; and
4. None of these.

*Id.* Over 78% of respondents chose ginger root, while less than 5% of respondents chose ginger oleoresin. *Id.* Based on these responses, a reasonable jury could find that "Made from Real Ginger" means it is made directly from ginger root, not ginger extract.

Dr. Pepper's expert, Dr. Rene Befurt, also conducted a survey. In his report, Dr. Befurt replicated Dr. Dennis's survey using less biased answer choices and found that simply changing the language of the answer choices resulted in a 38-percentage-point swing away from the "ginger root" response. *See* Dkt. No. 237-39 ("Befurt Report") at 21–22. Specifically, Dr. Befurt asked the same question as Dr. Dennis, but gave respondents the following choices:

1. Ginger oil, which is a free-flowing liquid steamed from the ginger root;
2. Ginger extractive, which is a syrupy liquid obtained from the ginger root;
3. Ginger root, which is a coarse powder processed from the ginger plant; and
4. All of these/None of these/Don't know/Unsure.

*Id.* at 20. In Dr. Befurt's survey, only 40.59% of respondents chose "ginger root," while 21.34% of respondents choice "ginger extractive." *Id.* at 21. Dr. Befurt also ran the survey using hyper-technical language. *Id.* at 20. In that survey, the results favored a "don't know" response. *Id.* at 21.

Although Dr. Befurt's survey sheds much doubt on the validity of Dr. Dennis's survey results, it is not so overwhelming as to require summary judgment. Dr. Befurt's own survey suggests that anywhere from 11.54% to 40.59% of consumers may believe that "Made from Real Ginger" implies that Canada Dry is made using ginger root. Dr. Pepper

6

insists that Dr. Befurt's survey results simply shows that the survey methodology used by Dr. Dennis is too unreliable to sustain Plaintiffs' claim. However, as explained by the Court in is previous Order on class certification, this is a credibility and weight determination that must go before the trier of fact at trial. *See* Dkt. No. 199 at 10.

Defendants rely on several federal district court cases to support their argument that summary judgment is appropriate because the "Made from Real Ginger" claim is not misleading. All of those cases, however, are distinguishable.

For example, in *Ries v. Arizona Beverages USA LLC*, No. 10-cv-01139-RS, 2013 WL 1287416, at *1 (N.D. Cal. Mar. 28, 2013) plaintiffs challenged an iced tea company's "All Natural" labeling on their beverages because the drinks contained high fructose corn syrup and citric acid. There, the court granted summary judgment in favor of the iced tea company because the plaintiffs provided "neither intrinsic evidence that the labels are false (because HFCS and citric acid are not natural) *or* extrinsic evidence that a significant portion of the consuming public would be confused by them." *Id.* at *7. In contrast, Plaintiffs in this case *have* provided extrinsic evidence in the form of consumer surveys.

Similarly, in *Townsend v. Monster Beverage Corporation*, 303 F. Supp. 3d 1010, 1023 (C.D. Cal. 2018), the district court rejected a claim that a "Consume Responsibly— Max 1 can per four hours, with limit 3 cans per day" label on an energy drink was misleading. In that case, the plaintiffs argued that the label was misleading because consuming three cans per day could be unsafe and the label implied that three cans per day was a "safe level of consumption." *Id.* Instead of conducting a survey that tested the "Consume Responsibly" label, however, the plaintiffs conducted a survey testing a "safe consumption" label. *Id.* The district court rejected the survey because "the term 'safe consumption' is materially different from 'consume responsibly'" and "the exact words matter in false advertising claims." *Id.* at 1023–24. Here, Plaintiffs' survey tested the precise label at issue and specifically tested whether consumers read the "Made from Real Ginger" label to mean "ginger oleoresin, which is extracted from the ginger root using a solvent." *See* Dennis Report at 34.

In short, Plaintiffs have shown there is a genuine issue of material fact as to whether the "Made from Real Ginger" label misleadingly implies that Canada Dry is made with ginger root. Accordingly, the Court DENIES summary judgment on this claim.

### 2. Whether Dr. Pepper Implies Canada Dry Has More Than a Trace Amount of Ginger Oleoresin

Plaintiffs allege that the "Made from Real Ginger" label implies that Canada Dry contains more than a "trace amount" of ginger compounds. In support of their allegation, Plaintiffs rely on Dr. Manoj Hastak's opinion, where he discussed the concepts of "inter-attribute misleadingness" and concludes that consumers would believe that Canada Dry contains "an appreciable amount" of ginger. *See* Dkt. No. 227-4 ("Hastak Report") ¶¶ 23, 25. Plaintiffs also rely on Dr. Dana Krueger's expert report, where he found that Canada Dry contained between 0.19 mg/L and 1.44 mg/L of various ginger compounds (*see* Dkt. No. 227-3 ("Krueger Report") at 4–5) and Ms. Annette Hottenstein's expert opinion, where she concluded that the ginger content of Canada Dry is too low to be tasted. *See* Dkt. No. 228-6 ("Hottenstein Report") at 21–22. Dr. Pepper only discusses this theory in the context of Plaintiffs' health benefits claim and counters that Canada Dry's labeling contains no language regarding the quantity of ginger in the beverage.

As a stand-alone claim, the Court concludes that Plaintiffs' have not raised a triable issue of fact as to whether the "Made from Real Ginger" label is misleading as to the amount of ginger in Canada Dry. The label makes no claims as to the amount of ginger in Canada Dry. And Plaintiffs presented no admissible evidence showing how much ginger reasonable consumers would expect Canada Dry to contain or even if reasonable consumers are even likely to expect a certain amount of ginger in the beverage. *See Chuang v. Dr. Pepper Snapple Group, Inc.*, No. cv-17-01875-MWF, 2017 WL 4286577, at *15 (C.D. Cal. Sept. 20, 2017) (dismissing claim that a fruit snack did not contain sufficient fruit when the "made with Real Fruit" label and packaging makes no claims as to the amount of fruit in the snack). Indeed, it is not even clear how much ginger Canada Dry must contain to pass muster under Plaintiffs' theory. Plaintiffs' opposition suggests that

8

consumers expect Canada Dry to contain more than a "trace amount" (*see* Dkt. No. 237 at 25–26), while Ms. Hottenstein's opinion suggests it must contain enough ginger such that consumers can taste the ginger (*see* Hottenstein Report at 21–22), and Dr. Hastak's opinion argues for "an appreciable amount." However, nowhere did Plaintiffs point to any evidence that *consumers* would expect a certain amount of ginger.

The only evidence Plaintiffs provide to support their allegation that consumers would likely expect a certain amount of ginger is Dr. Hastak's opinion. However, Dr. Hastak's opinion does not engage with the facts of this case. He simply concludes that consumers "do not believe that a marketer would make such a claim that a product is 'made from' or 'contains' and ingredient . . . if the product contained only trace amounts of the promoted ingredient" without any evidence. *See* Hastak Report ¶ 24. This high-level theory of consumer behavior is nothing more than *ipse dixit*. Without Dr. Hastak's opinion, Plaintiffs offer no evidence to link Dr. Pepper's label to consumer expectation.

The evidence that is available refutes Plaintiffs' stand-alone theory. For example, in Dr. Pepper's internal studies regarding the label, respondents expressed skepticism about the amount of ginger in Canada Dry after being exposed to Dr. Pepper's advertising. *See, e.g.*, Dkt. No. 237-12 at 12, 16. This suggests that reasonable consumers are not misled about the amount of ginger in the beverage.

Accordingly, the Court GRANTS summary judgment on this stand-alone claim.

### 3. Whether Dr. Pepper Implies Canada Dry Has Health Benefits

Plaintiffs allege that the "Made from Real Ginger" label implies that Canada Dry has health benefits or is "better for you" than other sodas. The parties do not dispute that Canada Dry does not provide any measurable health benefit. The Court concludes that Plaintiffs have raised a dispute of material fact for trial.

Plaintiffs produced internal documents by Dr. Pepper's marketing team showing that Dr. Pepper intended to take advantage of the health benefits associated with ginger. *See, e.g.*, Dkt. No. 237-22 at 15. These documents strongly suggest that Dr. Pepper not only intended to take advantage of the health halo of ginger, but also relied on a perceived

link between "awareness that [Canada Dry] is from real ginger" and health. *See, e.g.*, Dkt. No. 237-12 at 16 (consumer responded that "[i]t is very important (to know that Canada Dry has real ginger in it) because you know there are health benefits so that when you make you're [sic] choices when it comes to soft drink [sic], you might as well enjoy something that has some benefits."). Indeed, at least one document, an internal memorandum by Dr. Pepper's advertising team, concluded that conveying to consumers that Canada Dry was made from real ginger "implied that Canada Dry Ginger Ale was healthier because it contained real ginger." *See* Dkt. No. 237-13 at 3.

The evidence listed above distinguishes this case from cases cited by Dr. Pepper in support of their argument. In *Chuang*, for example, the court dismissed a false advertising claim alleging that packaging misled consumers into thinking a fruit snack was healthy by claiming it was "made with Real Fruit." 2017 WL 4286577, at *1. The packaging, however, also stated that the snacks were "not intended to replace fruit in the diet." *Id.* at *15. By contrast, in this case, Plaintiffs are not simply alleging that the "Made from Real Ginger" label leads consumers to believe that Canada Dry is "healthy," but that the "Made from Real Ginger" claim implies that Canada Dry is healthier than other sodas. Plaintiffs are not relying solely on the label, but also rely on Dr. Pepper's own documents suggesting that "Made from Real Ginger" implies that Canada Dry is healthier than other sodas.

Furthermore, Dr. Pepper's internal marketing documents strongly suggest that Dr. Pepper's push to get consumers to associate Canada Dry with ginger-related health benefits may have been successful. *See, e.g.*, Dkt. No. 237-24. In a 2014 study, Dr. Pepper's third-party consultant concluded that over 30% of consumers who increased their ginger ale consumption did so because of the perceived health benefits. *Id.* at 32. That study, as well as Dr. Pepper's other internal marketing documents, did not specifically look at the "Made from Real Ginger" label to draw its conclusions and it is possible that broader advertising efforts by Dr. Pepper, not the label, is responsible for consumer perceptions about the health benefits of Canada Dry. That possibility, however, is a factual consideration that must be resolved by the trier of fact at trial. Simply put, it would be odd

10

for the Court to conclude that Dr. Pepper's advertisements do not affect consumer expectations regarding Canada Dry, when Dr. Pepper itself believes that it had.

Accordingly, the Court DENIES summary judgment on this claim.

**B. Administrative Motions to Seal**

Both parties move to seal portions of various exhibits or portions of their briefing on this motion and the related motion to strike expert testimony. *See* Dkt. No. 224, 228, 234, 236, 242, 243, 246. The proposed redactions are based on information relating to the formulation of Canada Dry.

There is a presumption of public access to judicial records and documents. *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978). Access to motions and their attachments that are "more than tangentially related to the merits of a case" may be sealed only upon a showing of "compelling reasons" for sealing. *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1101–02 (9th Cir. 2016). Conversely, filings that are only tangentially related to the merits may be sealed upon a lesser showing of "good cause." *Id.* at 1097. "In general, 'compelling reasons' sufficient to outweigh the public's interest in disclosure and justify sealing court records exist when such 'court files might have become a vehicle for improper purposes,' such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets." *Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006) (quoting *Nixon*, 435 U.S. at 598).

Under Rule 26(c), a trial court has broad discretion to permit sealing of court documents for, among other things, the protection of "a trade secret or other confidential research, development, or commercial information." Fed. R. Civ. P. 26(c)(l)(G). The Ninth Circuit adopted the definition of "trade secrets" set forth in the Restatement of Torts, finding that "[a] trade secret may consist of any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it." *Clark v. Bunker*, 453 F.2d 1006, 1009 (9th Cir. 1972) (quoting Restatement (First) of Torts § 757 cmt. b).

11

Here, the Court addresses a motion to seal exhibits to Dr. Pepper's motion to strike expert testimony and motion for summary judgment. The sealed portions are more than tangentially related to the merits of the case. Therefore, the compelling reasons standard applies to this sealing motion. *Foltz v. State Farm Mut. Auto Ins. Co.*, 331 F.3d 1122, 1136 (9th Cir. 2003) (applying the compelling reasons standard at summary judgment).

Moreover, sealing motions must be "narrowly tailored to seek sealing only of sealable material." Civil L.R. 79-5(b). A party moving to seal a document in whole or in part must file a declaration establishing that the identified material is "sealable." Civil L.R. 79-5(d)(1)(A). Merely stating that a party designated material as confidential under a protective order is insufficient by itself to seal a document. *Id.*

Based on the Court's review of Dr. Pepper and Plaintiffs' representations, the Court finds compelling reasons sufficient to outweigh the public interest in disclosure to seal the highlighted portions of the following:[3]

| Document | Location of Sealable Material |
|---|---|
| Declaration of Monica Smith in support of Dr. Pepper's motion to strike expert testimony | • Exhibit 5 – Hottenstein Report<br>　○ Page 7<br>　○ Page 8<br>　○ Page 9<br>　○ Page 10<br>　○ Page 16<br>　○ Page 17<br>　○ Page 18<br>　○ Page 19<br>　○ Page 23<br>• Exhibit 6 – Hottenstein Deposition Transcript<br>　○ Page 348, line 19–21 |

---

[3] Except for deposition transcripts, all page numbers refer to the automatically generated CM/ECF page numbers.

| | |
|---|---|
| | - Page 349, line 1, 7–8<br>- Page 350, line 19<br>- Page 351, 14–16, 20–21 |
| Declaration of Monica Smith in support of Dr. Pepper's motion for summary judgment | - Motion for Summary Judgment<br>  - Page 10, line 3, 6, 9–10, 14, 26 – 27<br>  - Page 11, line 1, 7–9<br>- Exhibit 2 – Hottenstein Report<br>  - Page 7<br>  - Page 8<br>  - Page 9<br>  - Page 10<br>  - Page 16<br>  - Page 17<br>  - Page 18<br>  - Page 19<br>  - Page 23<br>- Exhibit 5 – Kramer Deposition Transcript<br>  - Page 47, line 1, 3, 5–8<br>  - Page 48, line 4, 12–15, 20, 22<br>  - Page 49, line 1–8, 11, 13–14, 21–22<br>  - Page 55, line 2–4<br>  - Page 98, line 4–5<br>  - Page 99, line 12<br>  - Page 100, line 3–4, 8, 12, 19, 23–24<br>  - Page 155, line 4, 6<br>  - Page 156, line 3, 8<br>  - Page 157, line 1, 2, 19<br>- Exhibit 6 |

| | |
|---|---|
| | - Exhibit 7
- Exhibit 11 – Hassel Deposition Transcript
  - Page 13, line 6–10
  - Page 14, line 15–18
  - Page 15, line 3–4, 6–7, 9, 12, 14
  - Page 17, line 11
  - Page 18, line 10–11
  - Page 24, line 20–21, 23–25
  - Page 25, line 21, 23, 25
  - Page 26, line 1–2, 5–6, 10–11, 13, 15–18, 20
  - Page 27, line 1–2, 25
  - Page 32, line 12, 14, 17–20
  - Page 34, line 24–25
  - Page 35, line 1, 13
  - Page 36, 11–13, 16–20
  - Page 37, 16, 21–25
  - Page 38, line 1–4, 18–23
  - Page 39, line 2, 12, 16–18
  - Page 40, line 13–14, 20
  - Page 50, line 23
  - Page 58, 1–2
  - Page 59, line 24
  - Page 60, line 13, 15
- Exhibit 14 |
| Plaintiffs' Opposition to Dr. Pepper's motion to strike expert testimony | - Page 9, line 19, 21, fn. 2
- Page 10, line 8–10, 12, fn. 3
- Page 20, line 21–22, 24–26 |

| | |
|---|---|
| Declaration of Matthew McCray in support of Plaintiffs' opposition to Dr. Pepper's motion for summary judgment | <ul><li>Opposition to Motion for Summary Judgment<ul><li>Page 5, line 11–12</li><li>Page 6, line 4–8</li><li>Page 11, line 25–26</li><li>Page 12, line 2–3, 5, 13–15, fn. 4</li><li>Page 17, 8–10</li><li>Page 21, line 26–27</li><li>Page 22, 1–3</li><li>Page 26, line 23</li><li>Page 27, line 19</li></ul></li><li>Exhibit 1 – Norris Declaration<ul><li>Page 7, fn. 7</li><li>Page 8, line 21–22, 24–25</li><li>Page 9, line 2, 8</li><li>Page 13, line 19–22, fn. 18, 19, 20, 21</li><li>Page 14, line 1, 3–12, 14–16, 21, fn. 22–27</li><li>Page 15, line 2–6</li><li>Page 18, line 7–9, 12–13</li><li>Page 22, line 3–4, 13–14, 22</li><li>Page 23, line 1–2</li><li>Page 24, line 6–7, 14–15, 17, fn. 60</li><li>Page 26, line 14</li></ul></li><li>Exhibit 7 – Email and "BMC Presentation Deck" PowerPoint<ul><li>Page 17</li><li>Page 20</li></ul></li><li>Exhibit 22</li></ul> |

- Exhibit 24 – Dennis Report
  - Page 6, ¶ 12
  - Page 7, ¶ 12
  - Page 11, fn. 7
  - Page 17, fn. 12
- Exhibit 25
- Exhibit 26
- Exhibit 27
- Exhibit 28 – Kramer Deposition Transcript
  - Page 47, line 1–8
  - Page 48, line 20
  - Page 49, line 10–25
  - Page 50
  - Page 51
  - Page 57, line 2
  - Page 58
  - Page 163, line 6–12, 22–25
- Exhibit 29 – Hassel Deposition Transcript
  - Page 56, line 5, 16, 20
- Exhibit 33 – Email Chain Between Dr. Pepper Employees
  - Page 2, email by Steve Kramer
  - Page 4, line 8–9
- Exhibit 43
- Exhibit 44

| | |
|---|---|
| Declaration of Monica Smith regarding Exhibit 15 to Plaintiffs' motion for class certification | • Dkt. No. 180-18 (Exhibit 15)[4] |
| Declaration of Monica Smith in support of Dr. Pepper's reply to Plaintiffs' opposition to Dr. Pepper's motion to strike expert testimony | • Dr. Pepper's reply brief to Plaintiffs' opposition to Dr. Pepper's motion to strike expert testimony<br>   o Page 15, fn. 13<br>• Exhibit 7 – Hottenstein Deposition Transcript<br>   o Page 298, line 19–20<br>   o Page 299, line 10–11, 14 |
| Declaration of Matthew McCray in support of Plaintiffs' Objection to Dr. Pepper's Reply Evidence | • Hottenstein Deposition Transcript<br>   o Page 182, line 9–20<br>   o Page 350, line 18–21 |

Except for the excerpts cited in the table above, the motion to seal is DENIED as being not sufficiently narrowly tailored, and as not satisfying the compelling reasons standard. For the most part, the Court denied requests to seal portions of deposition transcripts that did not discuss trade secrets or other confidential information. The Court also denied the parties' request to seal Ms. Leslie Norris's declaration (*see* Dkt. No. 236-1) in its entirety as significant portions of her declaration discusses non-confidential matters, such as generally applicable principles of flavor science (*see, e.g.*, *id.* ¶¶ 33–40).

The parties must file revised redacted versions of the deposition transcripts and Ms. Norris's declaration within seven days of this order. *See* N.D. Cal. Local Rule 79-5(f)(3).

---

[4] This exhibit was submitted in support of Plaintiffs' motion for class certification. It is the same exhibit as Exhibit 7 of McCray's Declaration submitted in support of Plaintiffs' opposition to Dr. Pepper's motion for summary judgment. *See* Dkt. No. 237-8. Accordingly, the Court seals Dkt. No. 180-18 in the same manner.

17

## IV. Conclusion

The Court GRANTS Dr. Pepper's motion for summary judgment with respect to Plaintiffs' claim that the "Made from Real Ginger" label misleads consumers as to the amount of ginger in Canada Dry. The Court DENIES summary judgment on all other claims presented in Dr. Pepper's motion. The claims to be tried are Plaintiffs' remaining claims under the CLRA, FAL, UCL, and common law against Dr. Pepper:

1. Whether the "Made from Real Ginger" label misleads consumers as to the form of ginger in Canada Dry; and
2. Whether the "Made from Real Ginger" label misleads consumers as to the health benefits of Canada Dry.

Additionally, the Court GRANTS IN PART and DENIES IN PART Dr. Pepper and Plaintiffs' motions to seal. The parties must file revised redacted versions of the deposition transcripts and Ms. Norris's declaration within seven days.

**IT IS SO ORDERED.**

Dated: November 2, 2018

_____
NATHANAEL M. COUSINS
United States Magistrate Judge