UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACKIE FITZHENRY-RUSSELL and GEGHAM MARGARYAN, individuals, on behalf of themselves, the general public and those similarly situated,<br><br>　　　　Plaintiffs,<br><br>　　　v.<br><br>KEURIG DR PEPPER INC. and CANADA DRY MOTT'S INC.,<br><br>　　　　Defendants. | Case No.17-cv-00564-NC<br><br>**ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND SETTING FINAL APPROVAL HEARING**<br><br>Re: Dkt. No. 327 |

**INTRODUCTION**

Plaintiffs Jackie Fitzhenry-Russell and Gegham Margaryan ("Class Representatives") have moved the Court for preliminary approval of a proposed class action settlement with Defendants Keurig Dr Pepper Inc., f/k/a Dr Pepper Snapple Group, Inc., and Dr Pepper/Seven Up, Inc. ("Defendants"), the terms and conditions of which are set forth in the Settlement Agreement filed with the Court on January 4, 2019 ("Settlement Agreement"). Dkt. No. 327. The Court held a hearing on the Parties' Settlement Agreement on January 9, 2019. *See* Dkt. No. 332.

This case concerns the marketing and labeling of Canada Dry ginger ale ("Products") from December 28, 2012 to June 26, 2018 ("Class Period"), and it has been vigorously litigated for more than two years. As detailed below, this proposed settlement follows a Missouri state court's preliminary approval of a similar settlement in a similar class action. Although the history of this litigation is summarized in Part I of the Settlement Agreement, a brief summary is as follows.

This case was filed in California Superior Court in December 2016 and then removed to federal court. Defendants filed two motions to dismiss that Plaintiffs opposed. When the second was lost, Defendants filed a motion to take an interlocutory appeal, which Plaintiffs opposed and the Court denied. During the same time period, two similar cases were filed by other law firms in California causing motion practice relating to consolidating those actions with this one.

Once the motions to dismiss were denied and the cases were consolidated, substantial discovery was taken by both parties. Defendants produced to Plaintiffs' Counsel over 200,000 pages of documents. Plaintiff's counsel also conducted three depositions of Defendants' employees, requested and received written discovery responses from Defendants and several third parties, and conducted expert discovery from five experts on both sides. The parties filed several discovery disputes that led to multiple re-depositions on both sides. *See* Dkt. No. 238, 260.

On June 26, 2018, the Court certified a class to pursue the Made from Real Ginger

2

1 Allegations, of "All persons who between December 28, 2012 and [June 26, 2018] purchased any Canada Dry Ginger Ale products in the state of California" (the "California Class"). Dkt. No. 199. Plaintiffs' counsel filed additional cases in Massachusetts and New York to cover remaining states. The Parties then agreed to mediation with Robert A. Meyer, Esq., of JAMS in Los Angeles, California. Thereafter, on November 2, 2018, the Court granted in part and denied in part Defendants' motion for summary judgment, including finding that the Canada Dry Ginger Ale was literally "Made from Real Ginger." *See* Dkt. No. 261. The parties have since been preparing for a jury trial in January 2016, on the remaining theories of liability: (1) whether Defendants' "Made from Real Ginger" label falsely or misleadingly implies that its Products are made from ginger root; and (2) whether Defendants' "Made from Real Ginger" label falsely or misleadingly implies that its Products have health benefits.

On the eve of trial in this case, Defendants engaged in mediation with other counsel who had brought later-filed cases in various state courts, using another JAMS-mediator, retired United States District Judge Wayne Andersen. Once settlement was reached, those plaintiffs filed a 49-state class action (all states except California) in state court in Missouri on December 11, and obtained an order preliminarily approving a 49-state settlement on December 19, 2018. *See* Dkt. No. 321, Ex. A. In the Missouri Settlement, Defendants agreed to change the label of Canada Dry Ginger Ale to remove the challenged "Made from Real Ginger" claim consistent with the proposal Plaintiffs in this case claim they made during the August 2018, mediation in California. Defendants also agreed to provide refunds to class members of 40 cents per product unit, up to $5.20 (or 13 purchases) without proof of purchase, or $40.00 (or 100 purchases) with proof of purchase. *See* Dkt. No. 321, Ex. B ¶ 4.4.

After learning of the Missouri Settlement, Plaintiffs communicated with the two JAMS mediators, Robert Meyer and Judge Wayne Andersen. A series of mediated negotiations followed, which led to agreements to settle the California action on behalf of the previously certified California class.

Plaintiffs in this action have indicated throughout the case that the primary relief they sought was an injunction requiring Defendants to change their "Made from Real Ginger" label. In this Settlement, Defendants are stipulating to a California injunction requiring that change. Specifically, the Parties agree that Defendants must cease using the phrase "Made from Real Ginger" in any labeling of any Canada Dry Ginger Ale. *See* Dkt. No. 325 ¶ 3.1. Defendants must also include on the labels the words "taste," "extract," or "flavor" if they continue to use references to "ginger," "real ginger," or "natural ginger" on their label claims. *See id.* ¶¶ 3.2, 3.3.

Plaintiffs also sought to recover on behalf of the California class restitution of the "premium" price that is attributable solely to the "Made from Real Ginger" claim. Plaintiffs contended this premium was $10,778,477.16 for the California Class during the Class Period, representing an average of $.09 per product. Plaintiffs' price premium calculations were based on a methodology called "conjoint analysis," which uses a survey and market simulator to determine the value that consumers place on various product attributes. Defendants' experts criticized the analysis on several grounds, offered competing evidence of the absence of a price premium and instead "line pricing" of soft drinks, and concluded that damages were $0.00. In settlement, Defendants are agreeing to a payment of $0.40 per Unit purchased, with a guaranteed minimum payment of $2.00 for Valid Claims. Dkt. No. 325 ¶ 4.4. No Proof of Purchase is required to obtain a payment for up to 13 Units purchased (i.e., payments up to $5.20 per household); while Proof of Purchase is required to obtain a payment of more than $5.20 (i.e., for more than 13 Units purchased per household), up to a maximum of 100 Units (i.e., $40.00 per household). *Id.* Every claim will be paid at least $2.00 even if there were fewer than 5 purchases. *Id.* Even if Plaintiffs won at trial, class members would still need to make claim in order to receive compensation.

As part of the settlement, Plaintiffs' attorneys may apply to this Court to award them up to $2,250,000.00 inclusive of fees and costs from Defendant to pay their attorneys' fees and expenses, plus up to $5,000 from Defendant as a payment to the Class

4

Representatives. *See* Dkt. No. 325 ¶¶ 6.1, 6.2. Such amounts must be approved by the Court. Plaintiffs' attorneys will receive an additional $750,000 under a separate agreement if the 49-State Settlement is approved and upon dismissal of the Massachusetts and New York cases. *See* Dkt. No. 325, Ex. G at 4. The total amount of attorneys' fees and costs ($3 million) will cover less than 60% of Class Counsel's asserted lodestar, which Class Counsel estimates is $4,364,398.50. *See* Dkt. No. 331.

Notice is to be provided as described in the Settlement Agreement consistent with a notice plan designed by Heffler Claims Group, a well-known and experienced class action administrator. Heffler Claims Group also will receive and process Claim Forms. Defendant alone will pay the notice and administration costs associated with the settlement.

Defendants are permitted to terminate the Settlement Agreement if more than one million Valid Claims are submitted pursuant to the Settlement, regardless of the dollar amount of such claims. *See* Dkt. No. 325 ¶ 13.1. Claims submitted in the Missouri Settlement do not count towards this limit. *Id.*

Defendants deny that there is any factual or legal basis for Plaintiffs allegations. They contend that the labeling of the Products was truthful and non-misleading, and that purchasers did not pay a "premium" for the Products as the result of any misrepresentations. They also challenge the methodology and conclusions of Plaintiffs' experts. They also deny that Plaintiffs or any other purchasers have suffered injury as a result of the "Made from Real Ginger" representation or are entitled to monetary or other relief.

## FINDINGS AND CONCLUSIONS

Having considered all matters submitted to it at the hearing on the motion and otherwise, including the complete record of this action, and good cause appearing therefore, the Court hereby finds as follows:

1. The capitalized terms used in this Order have the same meaning as defined in the Settlement Agreement except as otherwise expressly provided.

2. Per the Parties' representations at the January 9, 2019, hearing, the Court defines "Notice Date" as referenced in paragraph 2.33 of the Settlement Agreement as the date on which the Settlement Administrator disseminates the Class Notice online and via email for any Class Members for whom it has email addresses. The Notice Date is set for January 18, 2019. *See* Dkt. No. 334.

3. The Court preliminarily approves the Settlement Agreement as likely to be approved under Rule 23(e)(2) and as meriting notice to the Class for its consideration. Considering the factors set forth in Rule 23(e)(2), the Court preliminarily finds as follows:

   a. Class Representatives and Class Counsel have adequately represented the Class.
   b. The Settlement was negotiated at arm's length with the assistance of two private mediators.
   c. The relief provided to the class in the form of injunctive and monetary relief is adequate given the risks and uncertainty of trial; the monetary recovery offered by the Settlement is higher on a per Unit basis than Plaintiffs' proffered evidence for trial.
   d. The termination provision of the Settlement is reasonable to minimize the risk of fraud; and the likelihood of claims approaching the termination limit is remote. *See Kumar v. Salov N. Am. Corp.*, No. 14-cv-2411-YGR, 2017 WL 2902898, at *5 (N.D. Cal. July 7, 2017).
   e. The proposed award of attorneys' fees is reasonable given the litigation history, the result, and the fact that this settlement occurred on the eve of trial.
   f. The proposal treats all class members equally relative to each other.

4. The Settlement also complies with the Northern District of California's Procedural Guidance for Class Action Settlements, https://www.cand.uscourts.gov/ClassActionSettlementGuidance.

5. A Final Approval Hearing will be held before this Court at 2:00 p.m. on

1  April 10, 2019, in Courtroom 5, Fourth Floor, of the United States District Court for the
2  Northern District of California, 280 South First Street, San Jose, CA 95113, to address: (a)
3  whether the proposed settlement should be finally approved as fair, reasonable, and
4  adequate, and whether the Final Approval Order should be entered, and (b) whether Class
5  Counsel's application for attorneys' fees, costs, and a payment to the Class Representative
6  should be approved.

7        6.    The Court approves, as to form and content, the Claim Form and the
8  Notices, substantially similar to the forms attached as Exhibits A and B1 to B3 to the
9  Settlement Agreement. The Claim Form and all of the notices are written in plain English,
10 are easy to comprehend, and fully comply with the requirements of the Due Process Clause
11 of the United States Constitution, Rule 23 of the Rules of Civil Procedure, and any other
12 applicable law. The Parties have discretion to jointly make non-material minor revisions to
13 the Claim Form or Notices. Responsibility regarding settlement administration, including,
14 but not limited to, notice and related procedures, must be performed by the Claim
15 Administrator, subject to the oversight of the Parties and this Court as described in the
16 Settlement Agreement.

17       7.    The Court finds that the Parties' plan for providing notice to the Class (the
18 Notice Plan) is reasonably calculated to provide notice to the Class of the pendency of the
19 terms of the Settlement Agreement, the Final Approval hearing, and applicable deadlines,
20 and complies fully with the requirements of the Due Process Clause of the United States
21 Constitution, Rule 23 of the Rules of Civil Procedure, and any other applicable law. The
22 Parties and the Claim Administrator must comply with the Notice Plan and other deadlines
23 as set forth in the Settlement Agreement and this Order.

24       8.    Any member of the Class who desires to be excluded from the Settlement,
25 and therefore not be bound by the terms of the Settlement Agreement, must submit a
26 timely request for exclusion to the Claim Administrator, pursuant to the instructions set
27 forth in the Long Form Notice. The request must be received by the Claim Administrator
28 (not postmarked) no later than 11:59 p.m. March 19, 2019, or if mailed, must be delivered

1  to and received by, the Claim Administrator no later than March 19, 2019. No one is permitted to exercise any exclusion rights on behalf of any other person, whether as an agent or representative of another or otherwise, except upon proof of a legal power of attorney, conservatorship, trusteeship, or other legal authorization, and no one may exclude other persons within the Class as a group, class, or in the aggregate.

9.  No later than fourteen (14) days before the Final Approval Hearing, the Claim Administrator must prepare a list of the names of the persons who, pursuant to the Class Notice described herein, have excluded themselves from the Settlement Class in a valid and timely manner, and Plaintiff's Counsel must file that list with the Court. The Court retains jurisdiction to resolve any disputed exclusion requests.

10.  Any member of the Class who elects to be excluded will not receive any benefits of the settlement, will not be bound by the terms of the Settlement Agreement, and will have no standing to object to the settlement or intervene in the Litigation.

11.  If the Settlement is not approved, or if the Effective Date does not occur for any other reason, then the Litigation will continue on behalf of the Class.  Members of the Class who do not wish to be bound by a judgment in favor of or against the Class must exclude themselves from the Litigation. Any Class Member who does not submit a valid and timely request for exclusion may submit an objection to the Settlement Agreement ("Objection"). The Objection must satisfy the requirements set forth in the Long Form Notice and must be filed with the Clerk of the Court (not postmarked) no later than no later than March 19, 2019, or it will be rejected.

12.  Any Class Member has the right to appear and be heard at the Final Approval hearing, either personally or through an attorney retained at the Class Member's own expense. However, if the Class Member wishes to object to the Settlement at the Final Approval Hearing (either personally or through counsel), the Class Member must submit a timely written objection in compliance with the requirements referenced in the prior paragraph of this Order.

13.  Plaintiff must file any reply in support of Final Approval and for any

1  award of attorneys' fees, costs and a class representative payment (including responses to
2  objections) no later than March 27, 2019. All such filings and supporting documentation
3  must be posted to the Settlement Website within one day of filing.

4      14. Any Class Member wishing to make a claim must submit a Claim Form to
5  the Claim Administrator, pursuant to the instructions set forth in the Settlement Notice.
6  The request must be submitted online by no later than March 19, 2019, or, if mailed, it
7  must be delivered to, and received by, the Claim Administrator by no later than March 19,
8  2019.

9      15. Valid Claims can be made in both this Settlement and the Missouri
10  Settlement subject to the claim limitations in each settlement.

11      16. No later than March 27, 2019, the Claim Administrator must provide a
12  declaration to the Court regarding the provision of notice and as required by the Settlement
13  Agreement and as to the number and dollar amount of claims received.

14      17. In the event that the proposed settlement is not finally approved by the
15  Court, or in the event that the Settlement Agreement becomes null and void or terminates
16  pursuant to its terms, this Preliminary Approval Order and all orders entered in connection
17  herewith (including any order amending the complaint) are null and void, have of no
18  further force and effect, and may not be used or referred to for any purposes whatsoever in
19  this Litigation or in any other case or controversy. In such event, the Settlement Agreement
20  and all negotiations and proceedings directly related thereto will be deemed to be without
21  prejudice to the rights of any and all of the Parties, who will be restored to their respective
22  positions as of the date and time immediately preceding the execution of the Settlement
23  Agreement.

24      18. This Order may not be construed as an admission or concession by
25  Defendant of the truth of any allegations made by the Plaintiff or of liability or fault of any
26  kind.

27      19. The Court may, for good cause, extend any of the deadlines set forth in
28  this Order without further notice to Class Members, though such extensions must be posted

to the Settlement Website. The Final Approval Hearing may, from time to time and without further notice to Class Members beyond updates to the Court's docket and the Settlement Website, be continued by Order of the Court.

20. If the Court grants Final Approval to the Settlement Agreement, then Class Members who have not timely requested to be excluded including persons who objected to the Settlement Agreement or submitted a Valid Claim, will be deemed to have released their claims as set forth therein.

21. Counsel for the Parties are hereby authorized to utilize all reasonable procedures in connection with the administration of the settlement which are not materially inconsistent with either this Order or the terms of the Settlement Agreement.

All further proceedings and deadlines in this action are hereby stayed except for those required to effectuate the Settlement Agreement and this Order. Relevant deadlines are summarized as follows:

| **Deadline** | **Deadline** |
| --- | --- |
| Opt-out or Object to Proposed Settlement | March 19, 2019 |
| Submit Claim | March 19, 2019 |
| File Reply and Motion for Fee, Cost, or Representative Payment Award | March 27, 2019 |
| File Declaration Regarding the Number and Dollar Amount of Claims Received | March 27, 2019 |
| Final Approval Hearing | April 10, 2019 at 2:00 p.m. |

**IT IS SO ORDERED.**

Dated: January 10, 2019

_____
NATHANAEL M. COUSINS
United States Magistrate Judge